IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| O. GENE BICKNELL, | ) | |
| | ) | Case No. 25-cv-383-SEH-SH |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RICHARD M. SILANSKAS JR., | ) | |
| LARRY K. WILHITE, and | ) | |
| STEPHEN D. HEDRICK, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT HEDRICK'S MOTION TO DISMISS**

Amelia A. Fogleman
Joseph W. Lang
GABLEGOTWALS
110 N. Elgin Avenue, Suite 200
Tulsa, Oklahoma 74120
(918) 595-4800

Michael S. Nadel
Sagar K. Ravi
Rachel M. Peltzer
Theresa M. Babendreier
MCDERMOTT WILL & SCHULTE LLP
500 North Capitol Street, N.W.
Washington, D.C. 20001
(202) 756-8000

Attorneys for Plaintiff O. Gene Bicknell

**TABLE OF CONTENTS**

Introduction ...................................................................................................................................1

Facts..............................................................................................................................................2

Legal Standard..............................................................................................................................4

Argument in Opposition ...............................................................................................................5

    I.     It is immaterial that Plaintiff's money passed through other entities before enriching Hedrick. ...........................................................................................................6

    II.    Hedrick cannot support his assertion that "unjust enrichment does not lie where compensation was provided for services under a business arrangement."...........................9

    III.   Plaintiff has no remedy against Hedrick for breach of contract. ......................................10

    IV.   Plaintiff has alleged injustice..............................................................................................12

Conclusion ..................................................................................................................................13

## TABLE OF AUTHORITIES

Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..................................................................................5

*Assocs. Disc. Corp. v. Clements*, 321 P.2d 673 (Okla. 1958) ..............................................12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)..................................................................5

*Carts & Parts, Inc. v. Rosales*, 225 P.3d 1 (Okla. Civ. App. 2009)......................................12

*Cherokee Nation v. McKesson Corp.*, 529 F. Supp. 3d 1225 (E.D. Okla. 2021) ....................5

*Childs v. Unified Life Ins. Co.*, 781 F. Supp. 2d 1240 (N.D. Okla. 2011).............................8

*Dollar Rent a Car Systems, Inc. v. P.R.P. Enterprises*, No. 01-cv-698-JHP-FHM,
    2006 WL 1266515 (N.D. Okla. May 8, 2006) ........................................................9, 10, 11

*Horton v. Bank of Am., N.A.*, 189 F. Supp. 3d 1286 (N.D. Okla. 2016) ..............................10

*I.P.I.C., GSP, S.L. v. Ruhrpumpen, Inc.*, No. 08-cv-0510-CVE-PJC,
    2009 WL 484355 (N.D. Okla. Feb. 24, 2009)..................................................................5

*Lapkin v. Garland Bloodworth, Inc.*, 23 P.3d 958 (Okla. Civ. App. 2000) ...................7, 8, 10, 11

*McAnulty v. Standard Ins. Co.*, 81 F.4th 1091 (10th Cir. 2023) ...........................................8

*McNeely v. Nat'l Mobile Health Care, LLC*, No. 07-cv-933-M, 2008 WL 2944933
    (W.D. Okla. July 25, 2008) ..............................................................................................5

*Miller v. Miller*, 956 P.2d 887 (Okla. 1998)..........................................................................9

*Minter v. Prime Equip. Co.*, 451 F.3d 1196 (10th Cir. 2006) ..............................................13

*Northmarq Cap., LLC. v. Kabani*, No. 24-cv-00073-SH, 2024 WL 4467522
    (N.D. Okla. Oct. 10, 2024) ..........................................................................................4, 13

*Okla. Dep't of Sec. ex rel. Faught v. Blair*, 231 P.3d 645 (2010) .....................................6, 12

*Peterson v. Grisham*, 594 F.3d 723 (10th Cir. 2010) ...........................................................4

*Pope v. Fulton*, 310 P.3d 1110 (Okla. Civ. App. 2013).........................................................7

*Quarles v. Little River Energy Co.*, No. 00-cv-913-GKF-PJC, 2008 WL 185715
    (N.D. Okla. Jan. 18, 2008)............................................................................................6, 7

*Randle v. City of Tulsa*, 556 P.3d 612 (Okla. 2024)..............................................................6

*Roberson v. PaineWebber, Inc.*, 998 P.2d 193 (Okla. 1999)...............................................11

*Tillman v. Camelot Music Inc.*, 408 F.3d 1300 (10th Cir. 2005) .......................................8, 9

Miscellaneous

6 Am.Jur.2d *Restitution and Implied Contracts* § 12 (2001) ............................................6, 7

Fed. R. Civ. P. 8......................................................................................................................4

## INTRODUCTION

Plaintiff O. Gene Bicknell respectfully opposes the motion filed by Defendant Stephen D. Hedrick to dismiss Plaintiff's claim against him for unjust enrichment. Doc. 43. Plaintiff has met the requirements to state a claim for unjust enrichment against Hedrick.

The Complaint details Hedrick's active and willing participation in the campaign of deception to defraud Plaintiff and coerce him into sinking more than $60 million into the design and construction of the American Heartland Theme Park (the "Project"). Rather than alert Plaintiff to the fraud or even simply refuse to be part of the scheme and walk away, Hedrick advanced the activities of the criminal enterprise and reaped its benefits, taking at least $1.5 million of Plaintiff's money for himself and his family members. Hedrick has money in his hands that, in equity and good conscience, he should not be allowed to retain. Plaintiff brings a claim of unjust enrichment to hold Hedrick accountable and disgorge his ill-gotten gains.

Hedrick's motion rests on inapposite cases and fundamental misstatements of law. First, Hedrick objects that the alleged transfers of funds to him did not come directly from Plaintiff; Plaintiff transferred his money to the Project, which in turn transferred money to Hedrick and his family. But that fact does nothing to undermine Plaintiff's claim. All that is required is that Hedrick be wrongfully enriched by Plaintiff's money. Hedrick's assertion that a payment must be "direct," from a plaintiff to a defendant, is spun from whole cloth.

Second, Hedrick argues that "unjust enrichment does not lie where compensation was provided for services under a business arrangement." Doc. 43 at 6. But Hedrick has no support for that proposition. The authorities he cites do not say that. To the contrary, under Oklahoma law, unjust enrichment claims can proceed notwithstanding a business arrangement for compensation.

<u>Third</u>, Hedrick argues that Plaintiff cannot sue Hedrick for unjust enrichment because Plaintiff has a adequate remedy at law: a breach of contract claim. But Hedrick *simultaneously* asserts that Plaintiff is "[w]ithout a viable breach of contract claim." *Id.* at 7. Indeed, the Complaint does not allege the existence of any contract between Hedrick and Plaintiff. Nor does Hedrick even contend in his motion that such a contract existed.

<u>Fourth</u>, Hedrick argues that Plaintiff fails to allege the injustice necessary for equitable relief. But the Complaint describes a quintessential injustice—a complex fraudulent scheme against an elderly man in which Hedrick was a key participant.

Each of Hedrick's arguments is meritless. Equity does not permit Hedrick to sail off into the sunset with over $1.5 million that he wrongly obtained as a result of the appalling fraud on Plaintiff.

## FACTS

Hedrick teamed up with Defendants Larry K. Wilhite and Richard M. Silanskas Jr. to operate a criminal enterprise that defrauded Plaintiff and duped him into sinking $60 million into the attempted development of the American Heartland Theme Park (the "Project")—a project that was to rival the size and scope of Disney World, but in Vinita Oklahoma. *Complaint* (Doc. 1) ¶¶ 2, 9, 68, 75, 76, 77, 204, 205, 208. Wilhite and Silanskas embarked on a years-long campaign of psychological and spiritual abuse. They tricked Plaintiff by impersonating God and religious figures purportedly communicating "God's" directives in hundreds of electronic messages targeted at Plaintiff. They caused Plaintiff to believe that "God" was commanding him to finance the Project. *Id.* ¶ 6. Meanwhile, Hedrick supplied Plaintiff with false information to support and facilitate the psychological manipulation. *Id.* ¶¶ 5-7, 205. Hedrick knew that Plaintiff was making decisions based on communications purportedly from God—*i.e.*, that the campaign of deception was working—but said nothing to Plaintiff. *Id.* ¶¶ 75, 84, 91. Instead, Hedrick falsely portrayed

2

the Project as a feasible and economically sound undertaking to induce Plaintiff to inject more money into the Project. *Id.* ¶¶ 68, 75, 76, 208. Hedrick knew the information he was providing Plaintiff was false. *Id.* ¶¶ 68, 75.

For example, as the Project ramped up, Hedrick provided Plaintiff with an economic analysis purportedly conducted by an economic research firm. *Id.* ¶ 68. The analysis stated, among other things, that (i) the Project "is of transformative quality"; (ii) "[t]here is a clear market opportunity for the project" and it is "consistent with attracting an anticipated 3.9 million visitors annually"; (iii) it would "become one of the state's anchor tourist destinations"; (iv) the "proposed location can support the resort and market"; and (v) the "facility will generate approximately $500 million in annual spending." *Id.* Hedrick knew that those conclusions were baseless and that the economic analysis was unreliable at best, yet he nonetheless promoted the analysis to Plaintiff. *Id.* The fraudulent report induced Plaintiff to infuse millions in additional funding into the Project, which meant more money for Hedrick. *See id.* ¶¶ 69-74.

Hedrick continued to tell Plaintiff more false information regarding the feasibility of the Project, even claiming that the Project was akin to "plopping a Universal Studios in the middle of the US" which would draw visitors from all over the country. *Id.* ¶ 75. And again, Hedrick did this because he knew it would lead to Plaintiff providing even more money to the Project—and thus to him. *Id.* ¶¶ 76-78.

Further, Hedrick inflated and misrepresented his expertise and qualifications to lead a project of this magnitude in order to secure Gene's trust, employment for himself, and funding for the Project. *Id.* ¶ 204.

Hedrick also convinced Plaintiff that Hedrick had assembled "the dream team of all dream teams," consisting of more than a dozen former Disney engineers and designers to work on the

Project. *Id.* ¶ 77. But few, if any, of them substantially participated in the Project. *Id.* That was another of the many falsehoods Hedrick told Plaintiff to keep the money flowing.

Hedrick paid himself handsomely and retained the money Plaintiff provided to the Project for himself and his family. *Id.* ¶ 7. Hedrick received approximately $900,000 in consulting fees alone. *Id.* ¶ 181. Hedrick did not submit any accounting of the work he did. *Id.* Hedrick also received another $250,000 for various and often extravagant expenses, including rent for an apartment and office space in the Los Angeles area and regular travel to California for purported meetings related to the Project. *Id.* Additionally, Hedrick siphoned off funding from Plaintiff to set up his two sons with purported work on the Project. *Id.* ¶ 181, 216. Hedrick's sons received more than $400,000 from this work. *Id.* ¶ 181. All of these funds to Hedrick and his family were ultimately paid by Plaintiff for no corresponding benefit. *Id.* ¶¶ 82, 181. The very fact of Hedrick's work for the Project—and the reason he got money—was a product of the fraud scheme he helped perpetrate. *Id.* ¶¶ 2, 5.

## LEGAL STANDARD

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the [pleading] alone is legally sufficient to state a claim for which relief may be granted." *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)). The Court accepts all well-pleaded allegations as true and views them in the light most favorable to Bicknell, the nonmoving party. *Northmarq Cap., LLC v. Kabani*, No. 24-cv-00073-SH, 2024 WL 4467522, at *3 (N.D. Okla. Oct. 10, 2024).

"A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy Rule 8,

4

detailed factual allegations are not required, but a plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). This is more than "labels and conclusions" or "a formulaic recitation of the elements" of the claim. *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Determining whether a complaint contains a sufficiently plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## ARGUMENT IN OPPOSITION

"A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another." *I.P.I.C., GSP, S.L. v. Ruhrpumpen, Inc.*, No. 08-cv-0510-CVE-PJC, 2009 WL 484355, at *3 (N.D. Okla. Feb. 24, 2009). "[E]quity eschews mechanical rules" and "requires courts to exercise flexibility," and courts should "assess all relevant facts and circumstances and tailor appropriate relief on a case by case basis." *McNeely v. Nat'l Mobile Health Care, LLC*, No. 07-cv-933-M, 2008 WL 2944933, at *2 (W.D. Okla. July 25, 2008) (citations omitted).

Unjust enrichment typically consists of (1) the unjust (2) retention of (3) a benefit received (4) at the expense of another. *Cherokee Nation v. McKesson Corp.*, 529 F. Supp. 3d 1225, 1240 (E.D. Okla. 2021). The facts alleged satisfy those elements and establish that Hedrick "has money

5

in [his] hands that, in equity and good conscience, [he] should not be allowed to retain." *Okla. Dep't of Sec. ex rel. Faught v. Blair*, 231 P.3d 645, 658 (2010).

Hedrick offers four arguments in favor of dismissal. Each fails.

### I. It is immaterial that Plaintiff's money passed through other entities before enriching Hedrick.

Hedrick does not dispute that the money he received originated with a single source: Plaintiff. Rather, Hedrick argues that because that money passed through entities used to fund the Project before coming to him, payments to Hedrick were "***not made by Plaintiff personally***" so Plaintiff is foreclosed from bringing an unjust enrichment claim. Doc. 43 at 4 (emphasis by Hedrick). That is wrong as a matter of law.

The elements of unjust enrichment under Oklahoma law are "relatively broad" and "an unjust enrichment claim primarily exists where an exchange or transaction occurs resulting in one party substantially and unjustly benefitting at the expense of another." *Randle v. City of Tulsa*, 556 P.3d 612, 620 (Okla. 2024). The Complaint sufficiently alleges this—"Defendants received many benefits as a result of their fraudulent scheme" in the form of "funds [that] were ultimately paid by [Plaintiff] in return for no corresponding benefit." *Complaint* ¶¶ 181, 249-252.

Hedrick purports to recite the elements of unjust enrichment, writing:

> To state a claim for unjust enrichment in Oklahoma, Plaintiff must show: (1) enrichment to the defendant; (2) impoverishment to the plaintiff; (3) a ***direct*** connection between the enrichment and the impoverishment; (4) an absence of justification for the enrichment; and (5) an absence of an adequate remedy at law. Quarles v. Little River Energy Co., 2008 WL 185715, at *1-2 (N.D. Okla. 2008); see also 66 Am.Jur.2d Restitution and Implied Contracts § 12 (2001).

Doc. 43 at 4-5 (emphasis added). Then Hedrick argues that the claim fails because there is no "Direct Connection" between "Hedrick's Compensation" and "Plaintiff's Alleged Loss." *Id.* at 5.

6

Hedrick's recitation of the elements is puzzling. Hedrick states that there must be "(3) a *direct* connection between the enrichment and the impoverishment," Doc. 43 at 4 (emphasis added). For that proposition, Hedrick cites *Quarles v. Little River Energy Co.*, No. 00-cv-913-GKF-PJC, 2008 WL 185715, at *1-2 (N.D. Okla. Jan. 18, 2008) and 66 Am.Jur.2d *Restitution and Implied Contracts* § 12 (2001)). But *Quarles* and Am.Jur.2d just say there must be "a connection." Absent from *Quarles* and Hedrick's Am.Jur.2d citation is any mention of a "*direct*" connection. The word "direct" does appear in either source. 2008 WL 185715, at *2; 66 Am.Jur.2d *Restitution and Implied Contracts* § 12. Hedrick's insertion of a requirement that the connection be "direct" serves his argument, but it is unsupported by the law he cites.

In any event, the benefit Hedrick received *is* directly connected to Plaintiff's impoverishment. Hedrick protests that the "source of all payments was project entities funded by Plaintiff's investments, **not Plaintiff personally**." Doc 43 at 3 (emphasis by Hedrick). The distinction is immaterial. It does not matter if the benefit passes through another individual or entity. For example, in *Pope v. Fulton*, 310 P.3d 1110 (Okla. Civ. App. 2013), the plaintiff expended money and time on vehicles owned by his mother and step-father, with the expectation that he would receive the vehicle when his step-father died. *Id.* at 1113. But the step-father transferred the vehicles from joint ownership to the step-father's sole ownership, and then to his daughter from a different marriage—and then he died. *Id.* The plaintiff sued the daughter for unjust enrichment. Plaintiff prevailed, and the Court of Appeals affirmed. It was no obstacle that the vehicles had been transferred to her by someone other than the plaintiff (the step-father). The daughter was unjustly enriched to the plaintiff's detriment, so she was liable for unjust enrichment. *Id.* at 1114. Likewise, in *Lapkin v. Garland Bloodworth, Inc.*, 23 P.3d 958 (Okla. Civ. App. 2000), the court held that the plaintiff could prevail on his unjust enrichment claim against his attorneys

7

even though the attorneys had received their check from plaintiff's insurer, not plaintiff. *Id.* at 962. So too here. Plaintiff was the sole financial backer of the Project; that is not in dispute. Hedrick was enriched by Plaintiff's funds. *See Complaint* ¶¶ 7, 82. That is all that is required to state a claim for unjust enrichment. It does not matter which accounts the money passed through.

The Tenth Circuit has expressly rejected Hedrick's contention that a direct connection is necessary. In *McAnulty v. Standard Insurance Co.*, 81 F.4th 1091 (10th Cir. 2023), the Tenth Circuit explained: "Most instances of unjust enrichment result from two-party transactions in which benefits in the form of property or services—whether conferred or 'taken'—move from the [plaintiff] to the defendant. … Two-party transactions, however, are not the only context in which restitution may be available; the requirement that the benefit to defendant come 'at the expense of' the plaintiff, *does not mean that the plaintiff must have directly conferred that benefit on the defendant.*" *Id.* at 1097-98 (emphasis added). Thus, "[i]f a third person makes a payment to the defendant to which (as between [the plaintiff] and defendant) the [plaintiff] has a better legal or equitable right, the [plaintiff] is entitled to restitution from the defendant as necessary to prevent unjust enrichment." *Id.*[1]

Hedrick's reliance on *Tillman v. Camelot Music Inc.*, 408 F.3d 1300 (10th Cir. 2005), is misplaced. Doc. 43 at 5-6. In *Tillman*, the court dismissed an unjust enrichment claim that sought to recover the proceeds of a corporate-owned life insurance ("COLI") policy paid to defendant

---

[1] *McAnulty* applied Colorado law, and its holding is predicated upon the Restatements (First and Third) of Restitution. Oklahoma courts would reach the same conclusion. "First, Oklahoma and Colorado share virtually identical requisites for a claim of unjust enrichment." *Childs v. Unified Life Ins. Co.*, 781 F. Supp. 2d 1240, 1246 (N.D. Okla. 2011). "Second, like Colorado courts, Oklahoma courts have cited to previous versions of the Restatement of Restitution, indicating a likelihood that the tentative draft of Restatement (Third) of Restitution and Unjust Enrichment § 32(2) would similarly be cited with approval by Oklahoma courts." *Id.* at 1247.

8

where neither the plaintiff decedent nor his estate paid any of the insurance premiums. *Id.* at 1308-09. The court found that because "all of the premiums for the COLI policy on [plaintiff's] life" were paid by defendant, there was no "advantage enuring to [defendant's] benefit at [plaintiff's] expense." *Id.* at 1309. That fact pattern has no application here, where Plaintiff did in fact fund the payments to Hedrick. *Complaint* ¶¶ 7, 68, 75, 76, 77, 82, 181, 204, 205.

Hedrick actively participated in the fraud and induced Plaintiff to make contributions to the Project as its sole financial backer (*i.e.*, an impoverishment). *Id.* ¶¶ 68, 75, 76, 77, 82, 204, 205. Hedrick then paid himself handsomely and took Plaintiff's money for himself and his family (i.*e.*, an enrichment). *Id.* ¶¶ 7, 181, 216. Plaintiff has sufficiently alleged a connection between the enrichment to Hedrick and the impoverishment to him.

> II. **Hedrick cannot support his assertion that "unjust enrichment does not lie where compensation was provided for services under a business arrangement."**

Hedrick next argues that "[c]ourts in this District have held that unjust enrichment does not lie where compensation was provided for services under a business arrangement." Doc. 43 at 6. For this proposition about "courts," Hedrick cites a single case, *Dollar Rent a Car Systems, Inc. v. P.R.P. Enterprises*, No. 01-cv-698-JHP-FHM, 2006 WL 1266515 (N.D. Okla. May 8, 2006). Hedrick's citation to *Dollar*, like his prior citations to *Quarles* and Am.Jur.2d, is curious, because there is no reasonable way to read *Dollar* to support the proposition for which Hedrick cites it. *Dollar* involved franchisees who failed to make the required payments to the franchisor under the parties' License Agreements and Master Lease Agreement. *Id.* at *27. The franchisees brought an unjust enrichment counterclaim against the franchisor after the franchisor terminated the agreements. *Id.* The *Dollar* court denied the claim because the franchisor "was justified in terminating" the agreements, there was no evidence that the franchisor had been unjustly enriched, and the franchisees had unclean hands. *Id.* In doing so, the court did *not* "emphasiz[e] that equity

9

will not intervene when compensation arises from an express agreement." Doc. 43 at 7. That idea is nowhere in the opinion.

In the end, Hedrick provides no authority to support his assertion about what "[c]ourts in this District" hold. *See id.* at 6. A defendant *may* be unjustly enriched pursuant to a "business arrangement" for "compensation." *See, e.g.*, *Lapkin*, 23 P.3d at 963-64. Hedrick was.

### III. Plaintiff has no remedy against Hedrick for breach of contract.

Hedrick contends that Plaintiff cannot assert an unjust enrichment claim because he has an adequate remedy at law. Hedrick writes: "If Plaintiff believed that Hedrick failed to perform his contractual obligations or that his work was inadequate, the remedy would be a breach of contract claim." Doc. 43 at 6. But it is impossible to square that argument with Hedrick's statements on the next page:

> Here, Plaintiff does not allege that Hedrick breached any contract with Plaintiff. Nor could he, because the Complaint itself acknowledges that Hedrick was retained to perform services and paid pursuant to that retention with the 'Project' which was allegedly funded by entities owned or controlled by Wilhite and/or Silanskas.

*Id.* at 7. And in fact, the Complaint contains no allegation that there was any contract between Hedrick and Plaintiff, or between Hedrick and anyone else. Plaintiff has not brought a breach of contract claim.

Hedrick's reliance on *Horton v. Bank of America, N.A.*, 189 F. Supp. 3d 1286 (N.D. Okla. 2016), misses the mark. In *Horton*, unlike here, the plaintiff brought a claim for breach of contract. *Id.* at 1288. And the plaintiff "contested neither the validity of the parties' … contract nor the applicability of that contract to the dispute at issue in [the] case." *Id.* at 1290. Here, the contrast is stark. Hedrick himself writes that Plaintiff is "[w]ithout a viable breach of contract claim." Doc.

43 at 7. That is fatal to Hedrick's argument that Plaintiff has an adequate remedy at law in the form of a breach of contract claim.

Hedrick then returns to the *Dollar* case, writing: "Likewise, in *Dollar Rent A Car*, the court emphasized that equity will not intervene when compensation arises from an express agreement." *Id.* (citing 2006 WL 1266515, at *27). But, as with Hedrick's previous citations, *Dollar* says nothing like that. The whole concept is uterrly absent from the case.

Moreover, Oklahoma law is contrary to Hedrick's position. As the court held in *Lapkin*, "an express contract between parties does not preclude recission and a finding of unjust enrichment where equity demands such a result." 23 P.3d at 964. Here, Plaintiff's unjust enrichment claim is *not* about whether "Hedrick failed to perform his contractual obligations." Doc. 43 at 6. But even where "there is an express written contract between these parties on this subject matter"—and here, there was not—a claim of unjust enrichment is "a question for the jury to determine" when the enrichment allegedly results from "fraud, manipulation, and misrepresentation." *Roberson v. PaineWebber, Inc.*, 998 P.2d 193, 200 (Okla. 1999).

Finally, even if a breach of contract claim were an "adequate remedy at law" for Plaintiff, that would not preclude Plaintiff's unjust enrichment claim from going forward at this stage. "Federal procedural law allows for the pleading of alternative or inconsistent claims, and Oklahoma substantive law allows for alternative remedies, as long as double recovery is avoided." *Northmarq Cap.*, 2024 WL 4467522, at *10. "This district has dismissed equitable claims where it was undisputed that an express contract governed the dispute, but it has allowed such claims to be alternatively pled where the contract's validity or applicability is disputed." *Id.* (citing cases). Here, no contract is alleged to exist. Thus, an unjust enrichment claim can proceed.

11

### IV. Plaintiff has alleged injustice.

Hedrick argues that Plaintiff fails to allege the injustice necessary for equitable relief. Doc. 43 at 7. But Hedrick mischaracterizes the Complaint and invites the Court to ignore the great bulk of Plaintiff's allegations. The Complaint does *not* allege "at most that Hedrick was overpaid for services rendered." *Id.* This case does *not* present "a question of contractual adequacy." *Id.* The Complaint alleges that Hedrick assisted Silanskas and Wilhite in operating a criminal enterprise that defrauded Plaintiff and duped him into sinking his remaining fortune into the Project. *Complaint* ¶ 2. Hedrick was an active participant in the enterprise's fraud, as as result of which Hedrick received many benefits without any correspondent benefit to Plaintiff. *See, e.g., id.* ¶ 68, 75, 84, 204, 205, 208, 214, 249-251. Such misconduct is redressible through an unjust enrichment claim. *See Assocs. Disc. Corp. v. Clements*, 321 P.2d 673, 678 (Okla. 1958) ("If, before receiving the money from the plaintiffs, [defendants] had known the true state of facts, and had participated in Abbott's fraud, they would have been liable to refund the money."). Indeed, Hedrick's enrichment would be redressible even if there were no allegations of wrongdoing on his part—which there are. *See Carts & Parts, Inc. v. Rosales*, 225 P.3d 1, 3 (Okla. Civ. App. 2009) ("In order to prevent unjust enrichment, a constructive trust may be imposed on property that passed to a third party even though there was no fraud, deceit, subterfuge, or any wrongdoing on the third party's part.").

At bottom, Hedrick "has money in [his] hands that, in equity and good conscience, [he] should not be allowed to retain." *Fought*, 231 P.3d at 658. Hedrick's enrichment, at Plaintiff's expense, under the horrifying circumstances described in the Complaint, is a grave injustice that this Court can remedy.

## CONCLUSION

For the above reasons, Plaintiff respectfully requests that the Court deny Hedrick's motion.

In the alternative, Plaintiff requests that the Court grant him leave to file an amended Complaint. Where a party so requests, such leave should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). This is because "[t]he purpose of the Rule is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006); *Northmarq Cap.*, 2024 WL 4467522, at *10.

October 3, 2025

Respectfully submitted,

/s/ *Michael S. Nadel*

Amelia A. Fogleman, OBA No. 16221
Joseph W. Lang, OBA No. 33019
GABLEGOTWALS
110 N. Elgin Avenue, Suite 200
Tulsa, Oklahoma 74120
(918) 595-4800

Michael S. Nadel
Sagar K. Ravi
Rachel M. Peltzer
Theresa M. Babendreier
MCDERMOTT WILL & SCHULTE LLP
500 North Capitol Street, N.W.
Washington, D.C. 20001
(202) 756-8000

Attorneys for Plaintiff O. Gene Bicknell

**CERTIFICATE OF SERVICE**

I certify that on October 3, 2025, I caused a copy of the foregoing to be filed using the CM/ECF system, thereby providing notice to all counsel of record and pro se parties, including:

Counsel for Defendant Larry K. Wilhite:

> J. Christopher Davis, Esq.
> Deric McClellan, Esq.
> Crowe & Dunlevy, P.C.
> 222 N. Detroit Avenue, Suite 600
> Tulsa, Oklahoma 74120
>
> Evan G.E. Vincent, Esq.
> Crowe & Dunlevy, P.C.
> Braniff Building
> 324 North Robinson Avenue, Suite 100
> Oklahoma City, Oklahoma 73102

Counsel for Defendant Stephen D. Hedrick:

> Lysbeth George, Esq.
> Liz George and Associates
> 8101 S. Walker, Suite F
> Oklahoma City, Oklahoma 73139

Defendant Richard M. Silanskas, Jr.:

> Richard M. Silanskas, Jr.
> 1338 Peace in the Valley Road
> Blue Eye, Missouri 65611

/s/ *Michael S. Nadel*
Michael S. Nadel
