**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| O. GENE BICKNELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 25-cv-00383-SH |
| RICHARD M. SILANSKAS, JR., LARRY | ) | |
| K. WILHITE, and STEPHEN D. | ) | |
| HEDRICK, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>OPINION AND ORDER</u>

Before the Court is Plaintiff's motion for a protective order, seeking to prevent the deposition of his lead trial counsel by Defendant Larry Wilhite.  Such an order is necessary, Plaintiff argues, because Wilhite cannot satisfy the factors set out in *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986), as applied in this Circuit by *Boughton v. Cotter Corp.*, 65 F.3d 823, 830 (10th Cir. 1995).  Wilhite argues *Shelton* does not apply and, in any event, the criteria are satisfied.

The Court finds that the *Shelton* factors apply, Wilhite has not satisfied them, and a protective order should be granted.

### Background

Michael S. Nadel ("Nadel") currently serves as an attorney for Plaintiff Gene Bicknell ("Bicknell").  (Dkt. No. 19.)  Bicknell's company first engaged Nadel's firm to work on matters central to the claims in this case—the American Heartland Project—on December 21, 2024.  (Dkt. No. 129-2 ¶ 5.)  Before that, starting in May 2024, Nadel's firm

was engaged not by Bicknell, but by his family, "for the purpose of, among other things, investigation of and possible litigation concerning the" project.[1]  (*Id.* ¶ 2.)

Nadel initially met with Bicknell on October 1, 2024, at Bicknell's home in Pittsburg, Kansas.  (*Id.* ¶ 3; *see also* Dkt. No. 129-3 at 91:17–23.[2])  At the time, Nadel was not Bicknell's attorney and was still acting on behalf of Bicknell's family.  (Dkt. No. 129-1 ¶ 3; Dkt. No. 129-3 at 92:11–15.)  The subject of the meeting was a loan Bicknell was attempting to obtain from his family to cover debt.  (Dkt. No. 129-3 at 91:18–92:10.)  Others were present at this meeting, mostly other attorneys who did not work at Nadel's firm.  (Dkt. No. 129-1 ¶ 3; Dkt. No. 129-3 at 91:17–23, 92:22–93:7.)

From October 1 through mid-October, Nadel and Bicknell communicated by email, primarily regarding the details of a proposed $22 million loan.  (Dkt. No. 129-1 ¶ 4; Dkt. No. 135-1.)  These communications were often contentious and adversarial.  (*See, e.g.*, Dkt. No. 135-1 at 10 (Bicknell, concluding an email to Nadel: "I won't talk to you. No offense intended.").)

In the midst of this discussion, Bicknell asked Nadel for his position on the American Heartland Project. (Dkt. No. 135-1 at 9; Dkt. No. 129 at 7.)  On October 8, 2024, Nadel responded that his law firm had been investigating the project for months.  (Dkt. No. 135-1 at 8; Dkt. No. 129 at 7.)  Nadel then stated, "I think the project is a con by Larry and Rick and perhaps others to take money from you.  The theme park will never be built." (Dkt. No. 135-1 at 8; Dkt. No. 129 at 7.)  Nadel also indicated, "I believe that the emails

---

[1] During the months of investigation, Nadel states he came to opinions "that have informed and continue to inform" his work as trial counsel.  (*Id.* ¶ 2.)

[2] Citations to page numbers refer to the court-provided header, with the exception of depositions, where the Court uses the page:line numbering from the deposition transcript itself.

you have received from Heavenly Word and Sister Catherine do not reflect the words of God and are instead written by [Defendants Wilhite and Silanskas] or someone acting at their direction." (Dkt. No. 135-1 at 8; Dkt. No. 129 at 7.)

Bicknell disagreed with this analysis, telling Nadel, "We are now opponents . . . ." (Dkt. No. 135-1 at 8; Dkt. No. 129-3 at 96:20–97:15.)  After some back-and-forth, the discussion returned to the loan. (Dkt. No. 135-1 at 2–8.)  The communications remained contentious. (*E.g.*, *id*. at 3 (Bicknell: "We don't like each other and no problem for me.").)

Wilhite wants to depose Nadel about these pre-representation exchanges. (Dkt. No. 135.)  Particularly, Wilhite seeks discovery into Nadel's "pre-retention investigation, communications, and accusations regarding the American Heartland Project," as he argues Nadel's pre-representation role renders him a "fact witness" who "helped shape the narrative that led to the filing of suit before any engagement existed . . . ." (*Id*. at 14.)  Wilhite further intends to elicit testimony "concerning what information Mr. Nadel reviewed, what investigation he claims to have conducted, why he grouped Mr. Wilhite together with other alleged wrongdoers, and what facts—if any—supported those conclusions at the time they were communicated to Plaintiff." (*Id*. at 10.)

Bicknell now brings this motion for a protective order. (Dkt. No. 129.) *See* Fed. R. Civ. P. 26(c).

## Analysis

### I.    Depositions and Rule 26

A party may, generally, depose any person.  Fed. R. Civ. P. 30(a).  Nowhere in the Federal Rules is there an explicit prohibition on taking the deposition of opposing counsel.  *Shelton*, 805 F.2d at 1327.  Instead, a party may seek discovery into "any nonprivileged matter that is relevant to any party's claim or defense and proportional to

the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Evid. 401 (evidence is relevant if it has any tendency to make a fact of consequence in the action "more or less probable than it would be without the evidence").

That said, a court must limit discovery it determines "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Further, a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by forbidding discovery or limiting it to certain matters. Fed. R. Civ. P. 26(c)(1). Traditionally, the "party seeking a protective order has the burden of showing good cause for its issuance." *Okla. ex rel. Edmondson v. Tyson Foods, Inc.*, No. 05-CV-329-GKF-PJC, 2009 WL 10694083, at *2 (N.D. Okla. Apr. 24, 2009).

## II.    Deposing Opposing Counsel—Generally

While not explicitly barred by the Federal Rules, taking the "deposition of an opponent's attorney . . . often encumbers the case with burdensome collateral issues which unnecessarily increase the cost of litigation and delay" case progress. *Auto. Consulting Res., Inc. v. Interstate Nat'l Dealer Servs., Inc.*, No. 17-CV-225-JED-FHM, 2019 WL 1379937, at *1 (N.D. Okla. Mar. 27, 2019). When determining whether Rule 26(c) should preclude the deposition of opposing counsel, district courts in the Tenth Circuit generally apply the criteria set forth in *Shelton*, 805 F.2d at 1327. *See, e.g., Auto. Consulting*, 2019 WL 1379937, at *1–2; *Stockton v. HouseCalls Home Health Servs., Inc.*, No. 06-CV-357-GKF-PJC, 2007 WL 9782747, at *6 (N.D. Okla. June 15, 2007); *Roadbuilders Mach. & Supply Co. v. Sandvik Mining & Constr. USA, LLC*, No. 2:22-CV-2331-HLT-TJJ, 2023 WL 3790691, at *3 (D. Kan. June 2, 2023); *Stanisavljevic v.*

4

*Standard Fire Ins. Co.*, No. 1:22-CV-03287-RM-SBP, 2024 WL 517869, at *9 (D. Colo. Feb. 9, 2024).

When crafting the *Shelton* criteria, the Eighth Circuit recognized that circumstances in which opposing counsel is deposed "should be limited to where the party seeking to take the deposition has shown (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton*, 805 F.2d at 1327 (citation modified). Such considerations were necessary, the court reasoned, because

> [t]aking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation. It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony. Finally, the practice of deposing opposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent. Moreover, the "chilling effect" that such practice will have on the truthful communications from the client to the attorney is obvious.

*Id.* The Tenth Circuit later cited this reasoning in full and noted that Rule 26(c) "is broader in scope than the attorney work product rule, attorney-client privilege and other evidentiary privileges" and was not designed "just to protect confidential communications." *Boughton*, 65 F.3d at 829–30. The Tenth Circuit adopted the *Shelton* factors and held "that ordinarily the trial court at least has the *discretion* under Rule 26(c) to issue a protective order against the deposition of opposing counsel when any one or more of the three *Shelton* criteria . . . are *not* met." *Id.* at 830; *see also Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1112 n.15 (10th Cir. 2001) ("*Shelton* was adopted by this court in *Boughton*").

There has since been widespread adoption of these criteria by district courts in this circuit. *See, e.g.*, *Holick v. Burkhart*, No. 16-1188-JWB-KGG, 2018 WL 4052154, at *2 (D. Kan. Aug. 24, 2018) ("courts in this district have almost universally applied the *Shelton* criteria" (citation modified)).  Even so, Wilhite argues the factors do not apply. He urges that *Shelton* relied on the "assumption that the attorney to be deposed is both opposing counsel in the case at hand ***and*** was counsel for the party when the attorney obtained the information sought"; that the *Shelton* "standard does not apply where an attorney is a fact witness to the operative events rather than a participant in litigation strategy";[3] and that the "core focus of *Shelton*" was to determine whether the deposition of counsel invades attorney-client privilege or circumvents traditional means of discovery.  (Dkt. No. 135 at 12–13, 15.)  For the reasons explained below, the Court, in its discretion, declines to read the issue so narrowly and applies the *Shelton* factors to this case.

### III.    Whether *Shelton* Applies

Wilhite emphasizes that Nadel's interactions with Bicknell prior to being engaged as counsel render him a "necessary fact witness." (*Id.* at 6.)  This, according to Wilhite, is a widely recognized carve-out to courts' general acceptance of the *Shelton* criteria.  (*Id.* at 13 ("Courts have repeatedly recognized that *Shelton's* heightened standard does not apply where an attorney is a fact witness").)  The Court is unpersuaded.

---

[3] As discussed below, Wilhite has provided no information indicating that Nadel was a first-hand witness to the operative events, rather than someone who learned about those events through subsequent investigation.

### A.      Wilhite's Reading Lacks Support

#### 1.      Tenth Circuit cases

First, Wilhite overstates the purported carve-out in arguing that *Shelton* never applies when opposing counsel can be classified as a fact witness.

For instance, in *Boughton*, plaintiffs "were over 500 individuals alleging exposure . . . to hazardous emissions of a uranium mill owned by the defendant corporation, Cotter Corporation (Cotter)." *Boughton*, 65 F.3d at 825.  At issue was plaintiffs' attempt to depose defendants' outside counsel regarding "his role as spokesperson for Cotter Corporation before regulatory agencies and the press and . . . his involvement in helping Cotter prepare its various license applications and giving 'business advice' to Cotter on the location of a new mill on the site of the old one."  *Id*. at 828.  While some of this testimony may have touched on the attorney's participation in litigation, much of it related to the attorney's role in the underlying events—*e.g.*, the "decision to construct a new uranium mill," "the construction and licensing of the new mill," defendant's "environmental program," and "the basis of the statements [the attorney] made to the public, the media, and various governmental agencies . . . ."  *Id*. at 829.  Yet, the Tenth Circuit upheld the district court's application of *Shelton*.[4]

#### 2.      District court cases

Meanwhile, district courts have consistently applied the *Shelton* criteria when considering requests to depose opposing counsel as a "fact witness."  *See, e.g.*, *Stockton*,

---

[4] In another Tenth Circuit case, *Thiessen*, no party appeared to dispute the applicability of *Shelton*, and the Tenth Circuit readily applied the test despite the attorney's involvement in the underlying events.  267 F.3d at 1111–12 (applying *Shelton* to deposition of attorney "regarding her investigation of the [at issue discriminatory] policy and the alleged purging of corporate documents pertaining to the . . . policy.").

2007 WL 9782747, at *1, *5–6 (counsel had undertaken "an independent investigation of the allegations"); *NCO Fin. Sys., Inc. v. Vogle*, No. 07-CV-214-TCK-FHM, 2007 WL 9782796, at *1–2 (N.D. Okla. Sept. 17, 2007) (plaintiff argued "attorney is a fact witness with relevant information concerning this case and is the only witness who can provide testimony regarding particular areas"); *Holick*, 2018 WL 4052154, at *1, *3–4 (plaintiff maintained defendant's attorneys were "directly involved in events preceding the filing of the action," as they discussed the underlying state court petition-for-stalking with defendant and "subsequently represented her after she filed a petition"); *Ed Tobergte Assocs. Co. v. Russell Brands, LLC*, 259 F.R.D. 550, 553–55 (D. Kan. 2009) (counsel was listed as fact witness in initial disclosures and defendant argued "her testimony is highly relevant to" its defenses); *Est. of Ratley v. Awad*, No. CIV-19-265-PRW, 2022 WL 4316160, at *1–3 (W.D. Okla. Sept. 19, 2022) (plaintiff categorized opposing counsel of record as a fact witness due to his early investigation of the accident); *Unit Drilling Co. v. E.E.O.C.*, No. 2:14MC436, 2014 WL 2800755, at *1–3 (D. Utah June 19, 2014) (request to depose the EEOC's attorney regarding factual information contained in the EEOC's underlying position statement); *Harris v. Euronet Worldwide, Inc.*, No. 06-2537-JTM-DWB, 2007 WL 1557415, at *1–3 (D. Kan. May 29, 2007) (attorney was witness to statements considered "central to Plaintiff's theory of her case and crucial to the preparation of Defendants' case" (citation modified)).

The Court views Wilhite's deposition request more akin to these cases than those distinguishing opinions cited by Wilhite in his response brief.

For instance, in *Fish v. Kobach*, the court declined to apply the *Shelton* criteria when the proposed attorney deponent was the named party in the lawsuit. 320 F.R.D. 566, 578 (D. Kan. 2017). Meanwhile, in *United Phosphorus, Ltd. v. Midland Fumigant,*

*Inc.*,[5] the parties agreed that the attorney's deposition was appropriate, and the only issue was the scope of the deposition inquiry.  164 F.R.D. 245, 247, (D. Kan. 1995).

Other cases where district courts have declined to apply the *Shelton* criteria are similarly inapposite.  *See, e.g.*, *Perez v. Alegria*, No. 15-MC-401-SAC, 2015 WL 4744487, at *1, *4 (D. Kan. June 24, 2015) (attorney deponent was also 1/3 member of entity being investigated), *R&R adopted*, No. 15-MC-401-SAC, 2015 WL 4744480 (D. Kan. Aug. 11, 2015); *Fugett v. Sec. Transp. Servs., Inc.*, No. 14-2291-JAR, 2015 WL 419716, at *1 (D. Kan. Feb. 2, 2015) (attorney deponent was listed as witness on his client's own disclosures); *Willmore v. Savvas Learning Co. LLC*, 344 F.R.D. 546, 557–58 (D. Kan. 2023) (attorney deponent was not trial or litigation counsel); *OL Priv. Couns., LLC v. Olson*, No. 2:21-CV-00455, 2023 WL 6391507, at *7–8 (D. Utah Oct. 2, 2023) (same); *P.J. by & through Barbara v. Utah*, No. 2:05CV739, 2007 WL 9809168, at *3 (D. Utah May 2, 2007) (no suggestion the attorney deponent "would personally try this case").

Here, Nadel serves as trial counsel, is not a named party, and was not a participant in the events forming the basis of Bicknell's claims.  None of these district court cases convince the Court that *Shelton* should be disregarded.

### B.    The "Core Focus" of Shelton

The Court also rejects Wilhite's argument that the "core focus of *Shelton*" is the protection of attorney-client and work product information.  (Dkt. No. 135 at 15–17.)

The protection of privileged or protected information is neither the sole nor "core" focus of *Shelton*.  As noted above, the Eighth Circuit stated that deposing opposing counsel disrupts the adversarial system, lowers the standards of the profession, adds to

---

[5] Issued three months after *Boughton*.

the time and cost of litigation (including by requiring resolution of privilege objections), requires resolution of collateral testimonial issues, and detracts from the quality of client representation by having a "chilling effect" on representation based on a "fear of being interrogated by his or her opponent." *Shelton*, 805 F.2d at 1327. Though matters of privilege are certainly a consideration, they are not the "principal rationale." The Tenth Circuit recognized as much in *Boughton*: "[I]n the context of this case, the critical issue is not whether the plaintiffs sought privileged information or how such a privilege should be asserted, the question is whether the trial court abused its discretion in attempting to protect the defendants from an unnecessary burden." *Boughton*, 65 F.3d at 830.

Indeed, if the sole consideration was privilege, the *Shelton* criteria would be superfluous. A deep and wide body of attorney-client privilege and work product law answers such questions. But privilege is not the sole consideration. Matters of case-disruption and advocacy are of equal importance under *Shelton*. These considerations remain whether or not the attorney to be deposed represented the opposing party or another party during the relevant timeframe.

For these reasons, the Court will apply the *Shelton* criteria in exercising its discretion under Rule 26(c).

## IV.   Application of the Shelton Factors

Prior to addressing the factors, the Court notes that the parties' dispute where the burden lies on this motion. Both *Shelton* and *Boughton* place the burden on Wilhite. *See Shelton*, 805 F.2d at 1327 (depositions "limited to where <u>the party seeking to take the deposition has shown</u> [the factors]" (emphasis added)); *Boughton*, 65 F.3d at 830 n.10 (stating, the "burden is on the plaintiffs to establish that the *Shelton* criteria are met, and we need not search the record to substantiate plaintiffs' claim"). Even if the traditional

Rule 26(c) burden remained on Bicknell to establish good cause, however, the Court finds Bicknell has done so, as discussed below.

The Court now turns to the factors.

### A.     No Other Means to Obtain Information

First, the Court considers whether any other means exist to obtain the information Wilhite seeks through Nadel's deposition. *Shelton*, 805 F.2d at 1327.  The Court finds they do.

As discussed above, Nadel was not involved in the underlying events at issue.  As such, any information he learned through his firm's subsequent investigation can likewise be learned through discovery of those same facts and without interrogating counsel.

But Wilhite argues he also wants to explore Nadel's role in "shaping the narrative" that led Bicknell to file this lawsuit, which he says is relevant to the "causation, motive, and the origin of Plaintiff's claims." (Dkt. No. 135 at 18.)  Even if the origin of Bicknell's decision to file this lawsuit was relevant, Wilhite could seek this information from Bicknell himself—and Wilhite has had the opportunity to do so. (*See, e.g.*, Dkt. No. 129-3 at 97:16–99:6 (deposition questions regarding email exchange between Bicknell and Nadel, as well as Nadel's characterization of the American Heartland Project), 104:6–109:10 (questions regarding what made Bicknell change his mind about the nature of the project), 117:25–118:11 (questions regarding whose idea it was to file a lawsuit), 123:12–124:4 (questions regarding who supplied the facts that the lawyers relied on to draft the complaint and who conducted the underlying investigation).  There is also nothing preventing Wilhite from seeking discovery into the underlying facts.  Wilhite has already obtained the unprivileged written communications between Nadel and Bicknell and he could also seek information from others who witnessed the oral pre-representation communications between Wilhite

and Bicknell.  As it currently stands, other means exist to obtain the information Wilhite seeks.[6]  The first *Shelton* factor has not been met.

> **B.      Relevant Information Crucial to the Preparation of Wilhite's Case**

Next, the Court addresses the second and third *Shelton* factors—whether the information sought is relevant and crucial to the preparation of the case.[7]  *Shelton*, 805 F.2d at 1327.  Wilhite again focuses on "how and why" Bicknell decided to accuse Wilhite of fraud, including whether such accusations "arose organically" from Plaintiff as opposed to being introduced to him by a third party.  (Dkt. No. 135 at 20.)  And, again, Wilhite points to the "broader issues of causation, motive, and the origin of Plaintiff's claims." (*Id*. at 19.)  The Court finds this information is of doubtful relevance and is not crucial to Wilhite's preparation of the case.

As noted above, relevance is about information that makes more or less probable a fact "of consequence in determining the action."  Fed. R. Evid. 401(b).  A fact is "of consequence" when "its existence would provide the fact-finder with a basis for making some inference, or chain of inferences, about an issue that is necessary to a verdict." *United States v. McVeigh*, 153 F.3d 1166, 1190 (10th Cir. 1998).

Wilhite discusses the relevance of the evidence he seeks from Nadel only in the vaguest of terms—"causation, motive, and the origin of Plaintiff's claims."  Causation is often relevant, but usually it refers to whether the alleged wrongful acts caused a plaintiff's

---

[6] Wilhite argues that only Nadel can testify as to what he "intended to convey" or what he was trying to persuade Bicknell to do.  (Dkt. No. 135 at 19.)  Such information is far removed from any potential relevance.  Wilhite has identified no legally cognizable defense that turns on, or could even be affected by, this information.

[7] As Wilhite fails to show the evidence is relevant and crucial, the Court need not consider whether it is also nonprivileged.

damages.  Wilhite does not explain how Nadel's role, if any, in convincing Bicknell he was defrauded relates to the issue of whether Wilhite was the cause of Bicknell's damages.  For example, Wilhite does not assert that Bicknell learned of the fraud earlier than he alleges, such that he could not have relied on the alleged false statements, or otherwise failed to mitigate his damages.  Wilhite further does not provide any legal authority for an alternative type of causation or explain its applicability to this case.

Motive can also be relevant.  But again, its most common usage is not that pushed by Wilhite.  Motive can help explain why one individual is more likely to have performed a wrongful act than another individual.  Motive can also help explain why a witness might lie.  But the motive Wilhite appears to seek is Bicknell's motive in deciding to sue him and, more tangentially, how Nadel might have influenced that motive.  Wilhite does not provide a logical or legal connection from this motive to an issue that will be decided at trial.

Finally, as for the "origin of Plaintiff's claims," Wilhite does not explain where the "origin" fits in to a jury's determination of whether the elements or those claims have been met, or whether Wilhite has a viable defense.

Regardless, nothing in the information Wilhite seeks appears to be crucial to his preparation of the case.  What matters most in this case is what matters in every tort case—what happened during the underlying events and their result.  *See, e.g.*, *Evans v. Atwood*, No. CIV.A. 96-2746(RMU), 1999 WL 1032811, at *5 (D.D.C. Sept. 29, 1999) (allowing deposition of USAID agency counsel who had been involved in the underlying matter at issue—a reduction in force).  Nadel was not a witness to the alleged fraud and is not thought to have first-hand personal knowledge of facts regarding such alleged fraud. *See Holick*, 2018 WL 4052154, at *4 (merely "because the attorneys discussed the filings

13

of a . . . petition with Defendant at some point and subsequently represented her after she filed a petition does not make them fact witnesses to the underlying events"). Wilhite's vague statements fail to show that the information sought is relevant and crucial to his preparation of the case.

The Court, thus, returns to the issues raised in *Shelton* and highlighted in *Boughton*. Considering these issues, the Court finds that the proposed deposition will likely disrupt the adversarial system, including by creating side issues regarding work product protections arising from Nadel's prior representation of Bicknell's family; regarding the separation (if any) of that work product from current litigation strategy; and regarding Nadel's ability to act as trial counsel. *See Boughton*, 65 F.3d at 829. And for what? It will not help discover any facts relating to the underlying events or the alleged resulting damages. In fact, as currently briefed, there appears to be little, if any, benefit to the eventual factfinder.

In these circumstances, the Court finds that any relevant information can be obtained from sources that are more convenient and less burdensome, and that there is good cause to enter a protective order to avoid, among other things, annoyance, undue burden, and expense.

### Conclusion

IT IS THEREFORE ORDERED that *Plaintiff's Motion for Protective Order Preventing Defendant Wilhite's Deposition of Opposing Counsel* (Dkt. No. 129) is GRANTED. Defendant Larry K. Wilhite may not depose Michael S. Nadel.

ORDERED this 13th day of May, 2026.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT