**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **(1) O. GENE BICKNELL,**<br><br>**Plaintiff**<br>**v.**<br><br>**(1) RICHARD M. SILANSKAS JR.,**<br>**(2) LARRY K. WILHITE, and**<br>**(3) STEPHEN D. HEDRICK**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No.: 4:25-CV-00383-SH** |

**DEFENDANT STEPHEN D. HEDRICK'S OPENING MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT VIII (UNJUST ENRICHMENT) AND OPENING BRIEF IN SUPPORT UNDER FEDERAL RULE OF CIVIL PROCEDURE 56**

# TABLE OF CONTENTS

MOTION FOR PARTIAL SUMMARY JUDGMENT……………………………………..……..1

BRIEF IN SUPPORT……………………………………………………………………..…….1

STATEMENT OF UNDISPUTED MATERIAL FACTS ("UMFs")……………….…………2

A. Hedrick's role and compensation………………………………………………...2

B. Vendors Engaged and Supervised………………………………………………..4

C. Plaintiff's experts do not establish that Hedrick unjustly retained any benefit…..…..10

ARGUMENT…………………………………………………………………...……..12

I. HEDRICK IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF CANNOT ESTABLISH ANY ESSENTIAL ELEMENT OF HIS UNJUST-ENRICHMENT CLAIM……………………………..……..12

A. Standard for Summary Judgment……………………………..…….12

B. Implied Contract Creates Obligation to Pay……………………………..13

C. Hedrick's Compensation Was Equitable…………………………...…14

II. PLAINTIFF'S UNJUST-ENRICHMENT CLAIM IS BARRED BECAUSE AN ADEQUATE REMEDY AT LAW GOVERNS HEDRICK'S COMPENSATION…………………………………………………….….17

III. PLAINTIFF'S CLAIM ALSO FAILS BECAUSE HEDRICK'S COMPENSATION WAS PAID AND RECEIVED IN EXCHANGE FOR SERVICES…………………………...……………….18

CONCLUSION………………………………………………………………..………21

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Adler v. Wal-Mart Stores, Inc.*,
144 F.3d 664 (10th Cir. 1998)……………………………………………………………..12, 13

*Am. Biomedical Grp., Inc. v. Techtrol, Inc.*,
2016 OK 55, 374 P.3d 820………………………………………………………….....17

*Celotex Corp. v. Catrett*, 4
77 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)……………………………….. 12, 13, 16

*Church v. Hofer, Inc.*,
1992 OK CIV APP 148, 844 P.2d 887…………………………………………..……….19

*EFLO Energy v. Devon Energy Corp.*,
66 F.4th 775 (10th Cir. 2023)…………………………………………………………... 17

*French Energy, Inc. v. Alexander*,
1991 OK 106, 818 P.2d 1234……………………………………………………….. 18-19

*Great-W. Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002)…………………………………… 17

*Harvell v. Goodyear Tire & Rubber Co.*,
2006 OK 24, 164 P.3d 1028…………………………………...………14, 15, 16, 17, 18, 20

*Krug v. Helmerich & Payne, Inc.*,
2013 OK 104, 320 P.3d 1012……………………………………………..………..17-18

*Lapkin v. Garland Bloodworth, Inc.*,
2001 OK CIV APP 29, 23 P.3d 958…………………………………….…..…...15, 18, 20

*Metro. Life Ins. Co. v. Bradshaw*,
450 F. Supp. 3d 1258 (W.D. Okla. 2020)……………………………………………..17

*N.C. Corff P'ship, Ltd. v. OXY USA, Inc.*,
1996 OK CIV APP 92, 929 P.2d 288……………………………………………………...14-15

*Oklahoma Dep't of Sec. ex rel. Faught v. Blair*,
2010 OK 16, 231 P.3d 645……………………………………………………………... .1, 16

*Orthman v. Premiere Pediatrics, PLLC*,
2024 OK CIV APP 7, 545 P.3d 124……………………………………………………… 15, 20

*Parkhill Truck Co. v. Reynolds*,
1961 OK 42, 359 P.2d 1064…………………………………………………………..14, 19

*Popplewell v. Gregory*,
1947 OK 375, 199 Okla. 681, 189 P.2d 941 (2024 OK 40)……………………………..…..14

*Robinson v. Southerland*,
2005 OK CIV APP 80, 123 P.3d 35……………………………………………………17, 18

*Schulenberg v. BNSF Ry. Co.*,
911 F.3d 1276 (10th Cir. 2018)……………………………………...……………12, 13, 16

*Sholer v. State ex rel. Dep't of Pub. Safety*,
1995 OK 150, 945 P.2d 469…………………………………………………………...17, 18

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56……………………………………………………………………………. 1

LCvR 56.1 (N.D. Okla.)……………………………………………………………….. 1, 2

**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Stephen D. Hedrick, pursuant to Federal Rule of Civil Procedure . and LCvR 56.1, respectfully moves the Court for partial summary judgment in his favor and against Plaintiff O. Gene Bicknell on Count VIII (Unjust Enrichment) of the Verified Complaint [Dkt. 01] (the only claim asserted against Hedrick) on the ground that there is no genuine dispute as to any material fact and Hedrick is entitled to judgment as a matter of law.

As set forth in greater detail in this Motion and Opening Brief in Support, Unjust enrichment is an equitable claim that requires Plaintiff to prove not merely that Hedrick received money, but that Hedrick holds a benefit that "in equity and good conscience" he should not be allowed to retain. In this instance, after over a million documents produced and over twenty-five (25) depositions taken, Plaintiff falls woefully short.

**BRIEF IN SUPPORT**

Oklahoma law defines the claim narrowly. Unjust enrichment is "(1) the unjust (2) retention of (3) a benefit received (4) at the expense of another," and relief lies only where "a reasonably equivalent value has not been exchanged." *Okla. Dep't of Sec. ex rel. Faught v. Blair*, 2010 OK 16, ¶¶ 22–24, 231 P.3d 645, 659. Because Hedrick gave full value—years of Project development services—for the fees he was paid (although he was never paid in full), the "unjust" element is absent, and the claim fails as a matter of law.

It is undisputed that:

1. Hedrick was the American Heartland Theme Park and Three Ponies RV Park's (collectively, the "Project") Vice President of Project Development;
2. Hedrick performed work overseeing the Project's development; and
3. The compensation Hedrick received was paid for services rendered.

Plaintiff cannot show that Hedrick's retention of compensation earned for that work is inequitable. Plaintiff's forensic financial expert, J. Donald Fancher ("Fancher"), does no more than tally the dollars paid. But Fancher does not, and cannot, state that the monies Hedrick received were not for real value he provided. None of Plaintiff's other experts, which include a psychiatrist, an investigator, and a digital-forensics analyst, offer any opinion that Hedrick was enriched, let alone unjustly so.

**STATEMENT OF UNDISPUTED MATERIAL FACTS ("UMFs")**

Pursuant to Local Civil Rule 56.1, Hedrick sets forth the following material facts as to which there is no genuine dispute for purposes of this motion.

**A. Hedrick's role and compensation**

1. Hedrick agreed to attend an initial set of meetings at the Mansion Theatre in Branson, Missouri in late April 2022. During his visit from April 27-30, 2022, he visited the site that had been selected near Vinita, Oklahoma, met with Plaintiff who discussed his desire to build a legacy theme park, and conducted blue sky brainstorming sessions. *See* Deposition Transcript Excerpts of Stephen Hedrick taken June 3, 2026 ("Hedrick Trans.") attached hereto as Exhibit 1 at 44:13-45:14; 47: 9-24.

2. Hedrick was appointed the Project's Vice President of Project Development in 2022. *See* Expert Report of Donald J. Fancher ("Fancher Report") dated July 9, 2026 attached hereto as Exhibit 2[1], at ¶33 citing GB00191279 (Jun. 17, 2022, email with "VP Project

[1] Certain of the exhibits attached to this motion bear a "Confidential" stamp. Prior to the filing of this Motion, undersigned counsel conferred with counsel for all parties and received confirmation that such confidentiality designations on the specific documents referenced herein are withdrawn for purposes of submitting this Motion to the Court and need not be filed under seal.

Development" in Hedrick's signature) attached hereto as Exhibit 3; and GB00013943 (Copy of Hedrick's Business Card as of July 26, 2023) attached hereto as Exhibit 4.

3. Hedrick was responsible for overseeing development of the Project. *See* Fancher Report, Ex. 2 at ¶34 citing GB0002957 (Steve Hedrick Indeed Biography) attached hereto as Exhibit 5.

4. Hedrick's consulting fees for the Project began at a rate of $1,200 per day and later increased to $2,000 per day. *See* Fancher Report at ¶34 citing Deposition Transcript Excerpts of Larry Wilhite ("Wilhite Trans.") attached hereto as Exhibit 6 at 124:1-15; 126:9-12.

5. As part of his role as the Project's Vice President of Project Development, Hedrick coordinated and oversaw individuals and vendors on the project team including, but not limited to: Engineers, Architects, Construction Companies, and Design Teams the likes of which included Tom Turley, Andy Burden, Don Hilsen, and John Sorenson who were former Disney or Walt Disney Imagineering employees. *See* Gene B Phase II Presentation (HEDRICK035265-035283) attached hereto as Exhibit 7; List of Vendors attached hereto as 8; *see also* Deposition Transcript Excerpts of Gene McComb ("McComb Trans.") attached hereto as Exhibit 9 at 123:8-11.

6. During 2022, Hedrick made multiple trips to the Project site in Vinita to assist in coordinating Project vendors. *See* E-Mail from Hedrick to Silanskas and Wilhite with flight information dated June 7, 2022 (LW25266) attached hereto as Exhibit 10; E-mail from Hedrick to Wilhite and Mansion Accounting containing Invoice No. 6 dated July 15, 2022 (GB00122084) attached hereto as Exhibit 11; Text Messages between Hedrick and Gene McComb dated June 6, 2022 through June 6, 2024 (Hedrick 060370-060426) attached hereto as Exhibit 12; E-mail between Hedrick and Tom Turley dated July 4, 2022 regarding Tulsa Trip (GB00189763) attached

hereto as Exhibit 13; E-mail between Hedrick to Wilhite and Silanskas dated July 13, 2022 (GB00140872) attached hereto as Exhibit 14.

**B. Vendors Engaged and Supervised**

7. In order to receive bids from design firms, Hedrick developed a Request for Proposal ("RFP"), which was presented to Plaintiff. *See* Emails from Hedrick to Wilhite/Silanskas dated May 3, 2023 forwarding RFPs (LW024881), Emails from Hedrick to Wilhite/Silanskas dated May 5, 2022 regarding RFPs to present to Bicknell (LW036015-LW036016), and Presentation of Mansion Studios Request for Proposal (RFP) Initial Design of Theme Park (LW0016787-0016824) attached hereto as Exhibit 15.

8. On June 16, 2022, Hedrick attended a meeting with the Oklahoma Governor along with Mr. Bicknell, Wilhite, and McComb. *See* Hedrick Trans. Ex. 1, at 262:1-21. Plaintiff was actively involved in the discussion with the Governor and his staff, and Hedrick presented an overview of the Project. After the meeting, Hedrick sent Plaintiff a copy of the presentation that was used. *See* Email between Hedrick to Plaintiff dated June 16, 2022 (GB00012780) attached hereto as Exhibit 16 referencing Mansion TP and StudiosGOV.pdf (Hedrick043072) attached hereto as Exhibit 17.

9. On August 3, 2022, Hedrick led a Zoom meeting which Plaintiff and his son Marty Bicknell ("Marty") attended from the Mansion Theatre in Branson. *See* Email from Hedrick to Silanskas dated August 2, 2022 (GB00425334) attached hereto as Exhibit 18. During the meeting, Hedrick used three separate slide decks, which were emailed to Wilhite the next day. *See* Email from Hedrick to Wilhite dated August 4, 2022 (GB00423736) attached hereto as Exhibit 19 referencing Heartland TP MB.pdf (Hedrick043459-4Hedrick03494) attached hereto as Exhibit 20, Mansion Studios MB pres.pdf (Hedrick043175-Hedrick043215) attached hereto as Exhibit 21, and

RV Park Phase 1 (Hedrick05591-Hedrick055920) attached hereto as Exhibit 22. The presentations estimated the initial cost of the projects to be about $1.1 billion for the theme park, about $450 million for the studios, and about $20 million for the first phase of the RV park. *Id.*

10. To begin the development of the Project, Hedrick insured the requisite foundational site work was performed, which included FEMA coordination, Blue Line Stream Protection, US Army Corp of Engineers permitting, and 20 drilled hole borings into the proposed site to evaluate soil and rock conditions. *See* KLH Environmental & Geological Consulting, LLC Desktop Research Project (McComb 0019656-002004) attached hereto as Exhibit 23; USGS Topographical Map Vinita Oklahoma 2023 (McComb 003106-003153) attached hereto as Exhibit 24; Custom Soil Resource Report Soil Map (McComb 002618-002648) attached hereto as Exhibit 25; GFAC Engineering Geotechnical Desktop Study Proposed Vinita Development September 2, 2022 (McComb 002585-002614) attached hereto as Exhibit 26; U.S. Army Corps of Engineers Wetland Determination Data Sheet Sampling Date May 2, 2023 (McComb 002125-002170) attached hereto as Exhibit 27; Beacon Wetland and Waterway Investigation May 2023 (McComb 002064-002093) attached hereto as Exhibit 28; Email from Charlotte Howe to Gene McComb June 28, 2023 (McComb 000665-000666) attached hereto as Exhibit 29; Email from Hedrick to McComb and Wilhite dated May 11, 2023 (McComb 000651-000654) attached hereto as Exhibit 30; Traffic Impact Analysis completed by Traffic Engineering Consultants dated September 2023 (McComb 000585-000610) attached hereto as Exhibit 31; Email from Hedrick to McComb dated April 28, 2023 (McComb 000177-000178) attached hereto as Exhibit 32; Email from McComb to Wilhite (McComb 005010) attached hereto as Exhibit 33; MEG Site Satellite Map USGS July 11, 2022 (McComb 000410-000419) attached hereto as Exhibit 34.

11. Hedrick engaged the services of Peter Alexander ("Alexander") with Themed Future Concepts to conduct a Feasibility Study. *See* Themed Future Concepts Feasibility Study Contract dated June 8, 2022, attached hereto as Exhibit 35.

12. On December 10, 2022, Hedrick led a Zoom meeting with Plaintiff. *See* Email from Hedrick to Wilhite/Silanskas dated December 9, 2022 (GB00115531) attached hereto as Exhibit 36 referencing Gene B phase II Presentation1.pdf (Hedrick035265-035283), Ex 7. Hedrick addressed the schedule for "Phase II," January to June 2023, explaining that this stage would transition from pretty pictures to detailed design. *See* Ex. 7 at Hedrick035271-72. Hedrick also proposed to engage Cuningham as the architects for the theme park design, FORREC as the architects for the master plan and resort areas, and local Oklahoma City architect ADG Blatt for the RV park and campgrounds. *See id.* at Hedrick035278. Hedrick explained that the cash flow required included $6 million in January, $8 million in February, $10 million in March, $12 million in April, and $18 million in both May and June. *See id.* at Hedrick035281

13. On April 10, 2023, the Film and Television Studio Development Assessment was completed and forwarded to Wilhite. *See* Email Hedrick to Wilhite dated April 10, 2023 (GB00113318) attached hereto as Exhibit 37 attaching Giant Entertainment & Management Mansion Entertain Group Film & Television Studio Development Assessment April 10, 2023 (GB00113319-GB00113401) attached hereto as Exhibit 38. Hedrick highlighted that the assessment was "not so rosy for our location." *See* Ex. 37. The assessment concluded that "the combination of available incentives, current inventory of stage space, proposed remote location, absence of crew and lifestyle amenities at the proposed location, cost to build compared with assumed operating income, all suggest exercising caution before committing to development." *See*

Ex. 38 at GB00113323. After further discussion, this report led to the deferral of any studio development.

14. Hedrick engaged the services of ADG Blatt Architects who provided a proposal for their services. *See* ADG Blatt Program Management Proposal dated March 11, 2023 (Hedrick 027908-027909) attached hereto as Exhibit 39.

15. ADG Blatt performed various architectural, engineering, and development services on the American Heartland Three Ponies RV Park and Campground. *See* Email from Anthony Blatt to Gene Bicknell October 14, 2024 (GB00581292-GB00581293) attached hereto as Exhibit 40.

16. Hedrick engaged the services of The Hettema Group ("THG") to lead the design of the theme park within the Project. *See* E-mail from Marc Epstein to Steve Hedrick dated July 12, 2022 with THG Proposal for Concept and Master Plan Development attached hereto as Exhibit 41; and E-mail from Danny Rasib to Ezra Perez dated September 28, 2023, with THC Executed Final Contract Attached attached hereto as Exhibit 42.

17. Hedrick engaged the services of PCL Construction Company, experienced in theme park construction, to review and advise on the constructability of the designs; but PCL did not receive payment for its first invoice. *See* Email from Hedrick to Bicknell/Wilhite dated January 5, 2024 (GB00027305) attached hereto as Exhibit 43.

18. Hedrick engaged the services of Forrec to assist in the design of the theme park, hotel, backstage areas, Project master plan and the roads and other infrastructure required for development of the Project; Forrec created a Master Plan-Phase 1. *See* Master Plan Phase 1 (McComb 000644-000650) attached hereto as Exhibit 44.

19. In addition to overseeing the development and design of the Project, Hedrick provided the necessary documentation to obtain the desired funding and incentives from the

Oklahoma Government. *See* Email from Hedrick to McComb/Wilhite with Mansion Documents attached (McComb 00211-000221) attached hereto as Exhibit 45.

20. On July 26, 2023, Hedrick emailed outlining three scenarios based on whether the past due invoice amounts could be paid that week and whether the $100 million needed for the next quarter would be available. Hedrick suggested that unless Plaintiff was confident about funding, the Project should be paused. Plaintiff responded "This is receiving so much press that we will have all financing within the tome [sic] frame. We do have a plan and we have the necessary contacts. The $10 mil today and the first branding in place. Think positive.! Steve, please include me on all matters. We work as a trio and you are an amazing developer. We will hope not to put you in this position again." Hedrick responded, "Thank you, Gene. It's very encouraging to know a plan is in place and we can move forward with this amazing project. I'll keep you in the loop." *See* Email from Hedrick to Bicknell dated July 26, 2023 (GB00109899-GB00109900) attached hereto as Exhibit 46.

21. After Plaintiff made the payments necessary to keep the architects and consultants moving forward, on July 29, 2023, Hedrick sent an email to Plaintiff outlining the expenses to date, and an estimate of what was needed for the rest of the year. Hedrick explained that the costs from April-July were over $20 million, and that expected costs for August to December were over $118 million. The charts in the email included a monthly breakdown of the amounts needed through the end of the year. *See* Email Hedrick to Bicknell/Wilhite dated July 29, 2023 (LW_017960-LW017961) attached hereto as Exhibit 47.

22. The same day, Plaintiff responded "Steve. I'm not concerned about the funding." *See* Email from Bicknell to Hedrick dated July 29, 2023 (GB00013977-GB00013979) attached hereto as Exhibit 48.

23. On August 12, 2023, Hedrick emailed Plaintiff a proposal from THG and two other companies that proposed to work together on the rides for the Project. *See* Email from Hedrick to Bicknell/Wilhite dated August 12, 2023 (GB00117892) attached hereto as Exhibit 49 attaching American Heartland Theme Park & Resort Creative Integrated Delivery Solution (GB00117893-GB00117938) attached hereto as Exhibit 50. Mr. Bicknell responded with reference to the prior day's correspondence, stating "We won't be long in getting all paid. Appreciate you. Must get tax incentives in place also." *See* Email from Bicknell to Hedrick dated August 12, 2023 (GB00157081) attached hereto as Exhibit 51.

24. On September 1, 2023, Hedrick forwarded a potential outside investor opportunity to Plaintiff. On September 2, 2023, Plaintiff responded: "Thanks, Steve. I think we will be funded soon. Sorry for your having to go through the delays we've had." *See* Emails between Hedrick and Bicknell dated September 2 and 3, 2023 (GB00170216-GB00170217) attached hereto as Exhibit 52.

25. On September 15, 2023, Plaintiff texted Hedrick "Hope to get rid of all the back invoices soon. You have hung with us. Didn't expect the long delay. The firms doing the work are getting a good profit so we need to get them paid." Text messages continued with Plaintiff promising payment was coming. *See* text messages between Bicknell and Hedrick dated September 15, 2023 (Hedrick 000228-000231) attached hereto as Exhibit 53.

26. While Hedrick was working on developing Plaintiff's dream, Plaintiff knew there were issues with obtaining his money, but he didn't want to let Hedrick know. *See* Text message from Bicknell to McComb dated September 25, 2023 (McComb 0013161) attached hereto as Exhibit 54.

27. Plaintiff was embattled in a several months long fight with his adopted son, Marty, regarding getting what he felt was his own money out of his trusts to pay for the Project development. *See* Text message from Bicknell to McComb dated June 27, 2024 (McComb 012227) attached hereto as Exhibit 55; text message from Bicknell to McComb (McComb 013134) attached hereto as Exhibit 56; e-mail from Bicknell to Emily Ingle dated December 27, 2024 (McComb 007435) attached hereto as Exhibit 57; text message from Bicknell to Cindy Morris dated May 9, 2024; and May 30, 2024 (GB00636995-GB00636997) attached hereto as Exhibit 58.

28. The result of this family disagreement, meant Hedrick was left holding the bag and Plaintiff decided Hedrick was not getting paid. *See* text message from Bicknell to McComb, Wilhite, Kristy Adams, Sanlantis [sic] (McComb 008735) attached hereto as Exhibit 59.

**C. Plaintiff's experts do not establish that Hedrick unjustly retained any benefit**

29. Hedrick submitted a total of 48 invoices for the work he performed facilitating and leading the Project. *See* Invoices 1-16; April 2022-December 2022 from Stephen Hedrick (Hedrick 000202-000264) attached hereto as Exhibit 60; Invoices 17- 32 December 28, 2022-November 1, 2023 (Hedrick 000170-000185) attached hereto as Exhibit 61; Invoices 33-48 November 21, 2023-July 2024 (Hedrick000186-Hedrick000201) attached hereto as Exhibit 62.

30. Hedrick still has not been paid for seven (7) invoices totaling $131,215.45. *See* Unpaid invoice sheet of dates and amounts (Hedrick 000265) attached hereto as Exhibit 63.

31. Plaintiff's forensic financial expert, Fancher, opined that “Total Defendant Project Payments” tied to Hedrick equaled $1,599,850 across 2022–2024, broken down by recipient (Stephen Hedrick; Aaron Hedrick; Nathaniel L. Hedrick). *See* Fancher Report, Ex. 2, at ¶61.

32. Fancher opined that of the $1,599,850 included as “Total Project Payments Related to Hedrick”, $260,686.00, was attributable to Aaron Hedrick. *Id.*

33. Fancher could not attribute any money received by Aaron Hedrick went to Stephen Hedrick. *See* Deposition of J. Donald Fancher taken August 26, 2026 ("Fancher Trans.") 171:1-10 attached hereto as Exhibit 64.

34. Fancher opined that of the $1,599,850 included as Total Project Payments Related to Hedrick, $141,318.00, was attributable to Nathaniel L. Hedrick. *See* Fancher Report, Ex. 2, at ¶61.

35. Fancher could not attribute any money received by Nathaniel Hedrick went to Stephen Hedrick. *See* Fancher Dep. Ex. 64, at 171:17-172:1.

36. Fancher noted that he did not account for out-of-pocket expenses in the $1,197,846.00, and those out-of-pocket expenses would not have been retained by Hedrick. *Id* at 172: 3-16.

37. Fancher assumed that services were rendered and expressly disclaimed any assessment of value, stating that he "ha[d] not independently assessed whether the amounts paid to each Project Vendor were reasonable or commensurate with the services rendered." *See* Francher Report, Ex. 2. at ¶ 19.

38. No Plaintiff expert opines that the compensation Hedrick received exceeded the value of the services he provided, or that Hedrick retained any benefit that, net of the work he performed, is inequitable for him to keep. *See* Francher Report, Ex. 2; *see also* Francher Trans., Ex. 64, 173:18-21; 174:18-2 (Fancher confirmed the point at deposition: the only funds he ties to Hedrick are "related to the invoices that Mr. Hedrick submitted for the work that he was hired to do for the project," and he has "no opinion as to the work that was performed by the vendors); *see also* Plaintiff Expert Report of Jeff Watts dated July 9, 2026, attached hereto as Exhibit 65; Plaintiff Expert Report of Joseph Pochron dated July 9, 2026, attached hereto as Exhibit 66; and E-mail

between Counsel for Hedrick and Counsel for Plaintiff stating Plaintiff does not dispute that "Dr. Gill does not opine as to the value of the services provided by Steve Hedrick, any benefit retained by Steve Hedrick, or the net of the work performed by Steve Hedrick"[2] attached hereto as Exhibit 67.

## ARGUMENT

### I. HEDRICK IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF CANNOT ESTABLISH ANY ESSENTIAL ELEMENT OF HIS UNJUST-ENRICHMENT CLAIM

#### A. Standard for Summary Judgment

Summary judgment "is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *See Schulenberg v. BNSF Ry. Co*., 911 F.3d 1276, 1287 (10th Cir. 2018). The rule "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"; in that situation, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Where, as here, the nonmovant (Plaintiff) bears the burden of proof at trial, the movant "need not negate the nonmovant's claim" and "may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *See Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 671 (10th Cir. 1998). The movant's burden "may be discharged by 'showing' […] that there is an absence of evidence to

[2] In order to avoid filing under seal the lengthy confidential report of Dr. Reagan Gill which opines on other issues irrelevant to Plaintiff's Unjust Enrichment Claim, the parties agreed that the statement set forth in Ex. 67 is non-disputed.

support the nonmoving party's case." *See Celotex Corp.* at 325. The nonmovant must then "set forth specific facts that would be admissible in evidence . . . from which a rational trier of fact could find for [it]," and "mere speculation be not allowed to do duty for probative facts." *See Schulenberg,* 911 F.3d at 1286. A movant may obtain summary judgment on a single count by attacking one essential element of it, because a failure of proof on that element results in all other facts becoming immaterial." *See Adler,* 144 F.3d at 670.

In the present case, what is clearly demonstrated by the Undisputed Material Facts is that Hedrick was appointed as the Project's Vice President of Project Development. *See* UMF 2. Hedrick performed the foundational work of the project. *See* UMF 10. Hedrick then engaged in significant due diligence for the Project development which included feasibility studies. *See* UMF 11. These studies showed success whereas one study did not, which Hedrick dutifully brought to Plaintiff's attention and that portion of the Project was scrapped. *See* UMF 13. Hedrick's decision not to proceed with the portion of the Project that the feasibility study determined was unlikely to succeed demonstrates his focus on developing a viable and successful project. To continue the development of the Project, Hedrick engaged the services of Theme Park developer giants to include THG and Forrec and local help through ADG Blatt. *See* UMFs 14, 16, and 18. In taking Hedrick's work in totality, and viewing the work produced it is clear, Hedrick was not unjustly enriched, he was merely compensated for legitimate work actually performed (although never paid in full).

**B. Implied Contract Creates Obligation to Pay**

According to the Oklahoma Supreme Court,

> A contract, express or implied, forms the basis of, and is generally essential to, recovery for work and labor performed. Even in the absence of an antecedent agreement, the law will raise an implied contract to pay for services rendered when they were performed

> under such circumstances as to give the recipient thereof some reason to think they are not gratuitous, not performed for some other person, but with expectation of compensation from the recipient to whom the service is beneficial. If one merely accepts or knowingly avails himself of the benefit of services rendered for him without his authority or request, he becomes liable therefor. It therefore follows that an obligation arises when, as in the instant cause, services beneficial to the party, are procured with his knowledge, consent and approval and upon his express promise to pay compensation therefor.

*Parkhill Truck Company v Reynolds,* 1961 OK 42 ¶7, 359 P.2d 1064, 1066-67 *citing Popplewell v. Gregory*, 1947 OK 375, 189 P.2d 941. The undisputed facts satisfy each predicate of that implied obligation here: Hedrick rendered extensive services on the Project (UMFs 2-3,5-19,23), and Plaintiff procured and accepted those services with his knowledge, consent, and approval and upon repeated express promises to pay. *See* UMFs 20–25. Hedrick does not, on this motion, seek to enforce any contract or recover for the work; the point is narrower and dispositive. Because an agreement, express or implied, governed Hedrick's compensation for his services, his retention of what he was paid rests on that bargain rather than on any inequity, and quasi-contractual recovery does not lie where a contract covers the same subject matter. *See infra* Argument §§ II–III.

### C. Hedrick's Compensation Was Equitable

Under Oklahoma law, which governs this diversity claim, unjust enrichment is "a condition which results from the failure of a party to make restitution in circumstances where it is inequitable; i.e. the party has money in its hands that, in equity and good conscience, it should not be allowed to retain." *See Harvell v. Goodyear Tire & Rubber Co*., 2006 OK 24, ¶ 18, 164 P.3d 1028, 1035. Critically, "[b]efore a party will be entitled to recover for unjust enrichment . . . there must be enrichment to another coupled with a resulting injustice." *See N.C. Corff P'ship, Ltd. v. OXY USA,*

*Inc.*, 1996 OK CIV APP 92, ¶25, 929 P.2d 288, 295 (internal citations omitted). Enrichment alone is not enough; Plaintiff must prove that Hedrick's retention of the benefit is itself unjust.

Plaintiff cannot make that showing. It is undisputed that Hedrick served as the Project's Vice President of Project Development, was responsible for overseeing the Project's development, and was paid consulting fees for that work. *See* UMFs 2–4. Compensation genuinely earned for services rendered is not unjust enrichment. In Oklahoma, a defendant who received a fee for services would not be unjustly enriched where the fee reflects work actually performed. *See Lapkin v. Garland Bloodworth, Inc.*, 2001 OK CIV APP 29, ¶ 13, 23 P.3d 958, 963. Oklahoma courts reject unjust-enrichment claims on precisely these facts. In *Orthman v. Premiere Pediatrics, PLLC*, 2024 OK CIV APP 7, ¶¶ 30–32, 545 P.3d 124, 137, the court affirmed dismissal of an unjust-enrichment claim because the plaintiffs "paid for . . . services" and the defendant "ha[d] not unjustly retained any benefit of value." The same is true here: Plaintiff paid for development services, and Hedrick provided them. Notably, the record contains no evidence that the basis for Hedrick's compensation—the thirty (30) months of Project development and direction—was illusory. *See* UMFs 1–28, 32. To the contrary, Hedrick performed the work of his position, and even Plaintiff's own allegations acknowledge that he received "consulting fees" for it. *See* Verified Complaint at ¶ 53.

Plaintiff's own experts confirm the absence of proof on the "unjust" element. Fancher, Plaintiff's forensic financial expert, did no more than quantify the gross dollars paid; he offered no opinion that the compensation Hedrick received exceeded the value of the services Hedrick provided. To the contrary, Fancher assumed that services were rendered and expressly disclaimed any assessment of value, stating that he "ha[d] not independently assessed whether the amounts paid to each Project Vendor were reasonable or commensurate with the services rendered." UMF

37. A quantification of gross payments that assumes value was given, and offers no opinion on whether the payments exceeded that value, cannot establish that Hedrick holds anything "in equity and good conscience" he should not retain. *See Harvell,* 2006 OK 24, ¶ 18, 164 P.3d at 1035. Relief requires that "a reasonably equivalent value has not been exchanged," *Faught*, 2010 OK 16, ¶ 24, 231 P.3d at 659, and Plaintiff has no evidence of that imbalance. Fancher confirmed the point at deposition: the only funds he ties to Hedrick are "related to the invoices that Mr. Hedrick submitted for the work that he was hired to do for the project," and he has "no opinion as to the work that was performed by the vendors." UMF No. 38. Plaintiff's remaining experts—a forensic psychiatrist, an investigator, and a digital-forensics analyst—offer no opinion on Hedrick's enrichment at all. *See* UMF 38. On this record, Plaintiff cannot carry its trial burden on an essential element, and summary judgment is required. *See Celotex Corp.*, 477 U.S. 317; *Schulenberg,* 911 F.3d 1276.

Fancher's own sworn testimony independently narrows and defeats the claim in three respects. First, of the $1,599,850 Fancher attributes to "Mr. Hedrick," $260,686 was paid to Aaron Hedrick and $141,318 to Nathaniel L. Hedrick—$402,004 paid to third parties. Fancher admitted he had no "indication that [the money paid to Aaron Hedrick] was actually received by Stephen Hedrick," and "no[] . . . awareness one way or the other" as to the funds paid to Nathaniel. UMFs 32–35. A benefit must be *retained by the defendant* to be recoverable, *see Faught*, 2010 OK 16, ¶¶23-24, 231 P.3d at 659, and sums paid to others are not a benefit Hedrick holds. Second, Fancher acknowledged that the remaining $1,197,846 attributed to Stephen Hedrick includes "out-of-pocket expenses that Mr. Hedrick included in his invoices," and agreed that, assuming those expenses were legitimate, they were "repayment of expenses and not money that he kept." UMF 36. Reimbursed costs are not a retained benefit. Third, Hedrick remains unpaid on seven invoices

totaling $131,215.45 for work he performed. *See* UMF 30. A defendant who is a net creditor for his own services does not hold money that, "in equity and good conscience," he "should not be allowed to retain." *Harvell*, 2006 OK 24, ¶ 18, 164 P.3d at 1035.

**II. PLAINTIFF'S UNJUST-ENRICHMENT CLAIM IS BARRED BECAUSE AN ADEQUATE REMEDY AT LAW GOVERNS HEDRICK'S COMPENSATION**

Unjust enrichment is a gap-filling equitable remedy. "The long-standing rule in Oklahoma is that a plaintiff may not pursue an equitable remedy when the plaintiff has an adequate remedy at law." *Krug v. Helmerich & Payne, Inc.*, 2013 OK 104, ¶ 34, 320 P.3d 1012, 1021. Thus where the plaintiff has "an adequate remedy at law, equity will not intervene in his behalf. *Id.* at ¶ 34, 320 P.3d at 1022. "A party is not entitled to pursue a claim for unjust enrichment when it has an adequate remedy at law for breach of contract." *EFLO Energy, Inc. v. Devon Energy Corp.*, 66 F.4th 775, 794 (10th Cir. 2023) (applying Oklahoma law and quoting *Am. Biomedical Grp., Inc. v. Techtrol, Inc.*, 2016 OK 55, 374 P.3d 820, 828).

That rule forecloses Count VIII against Hedrick. Plaintiff's grievance is that he paid Hedrick too much for his services, which is, in substance, a demand for the return of an alleged overpayment. Oklahoma affords an adequate remedy at law for precisely that. An action for money had and received "lies whenever one has money of another and *no* corollary right of retention," is "triable to a jury," and is implied in law—available to recover an overpayment even absent any express written contract. *Sholer v. State ex rel. Dep't of Pub. Safety*, 1995 OK 150, ¶ 29 & n.4, 945 P.2d 469. Restitution of an overpayment is thus a remedy at law—"essentially [an] action[ ] at law for breach of contract (whether the contract was actual or implied)." *Metro. Life Ins. Co. v. Bradshaw*, 450 F. Supp. 3d 1258, 1265, n .45 (W.D. Okla. 2020) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002)). Because that legal remedy is available, equity will not intervene. In *Robinson v. Southerland*, a client who alleged he had paid for services

not rendered could not maintain an unjust-enrichment claim because he had an adequate legal remedy for breach of contract.2005 OK CIV APP 80, ¶ 40, 123 P.3d 35, 45; *accord Krug*, 2013 OK 104, ¶¶ 34, 43, 320 P.3d at 1021, 1023–24 (equitable claims "cannot be recognized" where a legal remedy for breach makes the plaintiff whole, lest "remedies for breaches of contract . . . be swallowed by equitable claims"). Critically, this bar does not turn on whether Plaintiff signed any particular written contract with Hedrick: the obligation to repay money that in good conscience should not be retained is implied in law, and the resulting action lies at law. *See Sholer*, 1995 OK 150, ¶ 29 & n.4, 945 P.2d 469. The record establishes that Hedrick was paid for his services under an agreed arrangement (*see* UMFs 2–4; Argument § I.B, *infra*); any claim that he was overpaid therefore sounds at law, and the equitable unjust-enrichment claim cannot proceed.

## III. PLAINTIFF’S CLAIM ALSO FAILS BECAUSE HEDRICK'S COMPENSATION WAS PAID AND RECEIVED IN EXCHANGE FOR SERVICES

Oklahoma courts recognize that "the effect of the existence of an express contract governing the transaction" is a defining consideration in an unjust-enrichment analysis, and quasi-contractual recovery is disfavored where an actual, bargained-for exchange governs the same subject matter. *See Harvell,* 2006 OK 24, ¶ 20 164 P.3d at 1036. A defendant who provides services in exchange for the compensation he receives is not unjustly enriched, because the payment is supported by the value he gave in return. *See Lapkin,* 2001 OK CIV APP 29, ¶ 13, 23 P.3d at 963. That is precisely this case: Hedrick was engaged in a defined role at an agreed rate and performed the work for which he was paid. UMFs 2–4, 19, 23.

Oklahoma law does not support an unjust-enrichment claim merely because a party later contends that the amount paid for services was excessive. In *French Energy, Inc. v. Alexander*, the Oklahoma Supreme Court expressly distinguished between consideration paid for a transaction that failed and compensation paid for services actually performed. The Court held that “[h]ad the

$500 been for legal services, Dorothy should have been allowed to retain her fee in that she did perform a service." 1991 OK 106, ¶14, n.16, 818 P.2d 1234. The Court required restitution only because the $500 was determined not to be a fee for services, but rather additional consideration for the lease, and the underlying transaction failed. *Id*. at. ¶ 14. Here, by contrast, Hedrick's compensation was a fee paid for consulting services actually performed over the life of the Project. *See* UMFs 4, 19, 23.

Likewise, in *Parkhill Truck Co,* the Oklahoma Supreme Court recognized that compensation for work and labor is tied to services actually rendered and held that an obligation to compensate arises when beneficial services are performed with the recipient's knowledge, consent, and approval. 1961 OK at ¶ 7, 359 P.2d at 1066-67; *see generally Church v. Hofer, Inc.*, 1992 OK CIV APP 148, 844 P.2d 887 (applying *Parkhill* and recognizing that compensation for services depends upon the circumstances under which the services were performed). Those circumstances cannot be disputed here: Plaintiff knew of, consented to, and approved Hedrick's work, and repeatedly promised to pay for it. *See* UMFs 20–25. Plaintiff was not only aware of the work Hedrick was performing as Hedrick engaged directly with the Plaintiff from the outset of the Project from the very first meeting (UMF 1) at which he specifically requested to be included on all matters. UMF 20. Further demonstrating Plaintiff's complete participation with the Project and knowledge of Hedrick's work, Plaintiff personally engaged, and participated with Hedrick regarding State funding, vendor deliverables, and payment to vendors. UMFs 20–25. No later than August 2022, both Plaintiff and his son Marty were aware of the estimated cost of the Project (UMF 9), and Plaintiff continued to be updated on projected costs. UMFs 12, 20, and 21.

Where the undisputed evidence establishes that the defendant actually performed the services for which he received payment (UMFs 1–19, 23), the mere assertion that the services were

too expensive or that the amount charged was unreasonable does not, standing alone, establish unjust enrichment. Certainly not where Plaintiff was fully apprised of the costs and continued to spur work be performed on his promise of payment. UMFs 12, 20–25. The relevant equitable inquiry is whether the defendant received and retained a benefit that, under the circumstances, it would be inequitable to retain—not whether Plaintiff now disagrees with the amount paid for services that were in fact performed. To the extent Plaintiff attempts to assert that Hedrick's $1,200 and $2,000 daily rate was excessive (UMF 28), he offers no evidentiary support, and it is undisputed that Hedrick performed the services for which he was only partially paid.

Plaintiff's own account, as outlined in his records, of the dealings confirms a direct, bargained-for arrangement: Plaintiff communicated with Hedrick regarding the work to be performed, promised payment, and Hedrick performed in reliance on those assurances. *See* UMFs 20–25. Indeed, far from being overpaid, Hedrick was not fully compensated for the work performed and invoices remain unpaid. *See* UMFs 29–30. Where compensation is exchanged for services actually performed, the recipient's retention of that compensation is not "unjust," and the doctrine of unjust enrichment provides no basis for recovery. *See Lapkin*, 2001 OK CIV APP 29, ¶ 13, 23 P.3d at 963 *Harvell.*, 2006 OK 24, ¶ 18, 164 P.3d 1028, 1035; *Orthman*, 2024 OK CIV APP 7, ¶¶ 30–32, 545 P.3d 124.

Oklahoma's most recent statement of the doctrine confirms the point. Unjust enrichment "requires an allegation of some active wrongdoing on the part of the person against whom recovery is sought such as fraud, abuse of confidence, or unconscionable conduct," or else a contractual or quasi-contractual relationship with that defendant. *Randle v. City of Tulsa*, 2024 OK 40, ¶¶ 26, 31–33, 556 P.3d 612, 620–21. Plaintiff pleaded no claim of fraud, conversion, or other wrongdoing against Hedrick (Counts I through VII are asserted only against Silanskas and Wilhite) and the sole

claim against Hedrick is this equitable one. To the extent any relationship with Hedrick could support recovery, it is the compensation arrangement for his services, which is governed by contract principles and forecloses quasi-contractual relief. *See* Argument § II, *supra*. Plaintiff cannot use the unjust-enrichment count to recover from Hedrick on a theory of wrongdoing he never pleaded against him.

What Plaintiff has not, and cannot, proffer, is any expert testimony or other competent evidence establishing that the work performed by Hedrick was inappropriate, fell outside applicable industry standards, or that Hedrick failed to properly lead, manage, and develop the project. To the contrary, Hedrick communicated directly with Plaintiff throughout the Project, and Plaintiff repeatedly reviewed, approved, and promised to pay for the work.

Nor has Plaintiff presented any expert opinion or other competent testimony or evidence establishing that Hedrick's daily rate or invoices were unreasonable or outside the customary rates and practices applicable to theme-park design consultants. An assertion that the work "cost too much," without supporting evidence, does not create a genuine dispute of material fact.

A party's unsupported assertion is not evidence. To defeat summary judgment, the record must contain competent evidence that Hedrick's work was improper, unreasonable, or outside industry standards. Plaintiff has offered none.

## CONCLUSION

For the foregoing reasons, Defendant Stephen D. Hedrick respectfully requests that the Court grant his Motion for Summary Judgment and enter judgment in his favor dismissing Count VIII (Unjust Enrichment) of the Complaint as to Hedrick, together with such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s Lysbeth L. George
Lysbeth George, OBA #30562
Jennifer E. Jackson, OBA #19492
LIZ GEORGE & ASSOCIATES
8101 S. Walker, Suite F
Oklahoma City, OK 73139
Telephone: (405) 689-5502
Facsimile: (405) 689-5502
liz@georgelawok.com
jennifer@georgelawok.com
**ATTORNEYS FOR DEFENDANT STEPHEN D. HEDRICK**

**CERTIFICATE OF MAILING**

The undersigned hereby certifies that on the 7th day of October 2026, a true and correct copy of the above and foregoing was served, upon the individuals registered on the ECF system and via U.S. Mail, postage pre-paid, upon the following:

Richard M. Silanskas Jr.
1338 Peace in Valley Rd.
Blue Eye, MO 65611

/s Lysbeth L. George