BEACON

# Wetland and Waterway Investigation

## *S/2 Section 21 Township 25 North Range 21 East*
## *Approximately 320 Acre Tract*
## *Craig County, Oklahoma*

Prepared for: KLH Environmental and Geological Consulting
3309 West Gary Street
Broken Arrow, Oklahoma 74012

May 2023

Prepared by:
***BEACON***
*Environmental Assistance Corporation*
*225 Lilac Drive Suite 120*
*Edmond, Oklahoma 73034*
*(405) 834-4483*

#39

# Assessment Site:

## Approximately 320 Acres
## Undeveloped Property
## Craig County, Oklahoma

## S/2 Section 21 Township 25 North Range 21 East

Prepared By:
BEACON Environmental Assistance Corporation

225 Lilac Drive Suite 120

Edmond, Oklahoma 73034

(405) 834-4483

Project# X754

Prepared by:

Andy Middick

Andy Middick, Project Manager

5/26/2022
Date

## DISCLAIMER

This evaluation was performed by BEACON Environmental Assistance Corporation (BEACON) staff for use by KLH Environmental and the developing company utilizing skill and practices ordinarily exercised by professional consultants operating under similar circumstances and localities. BEACON is not responsible for any incorrect or incomplete information provided by agencies or organizations that were used in the formulation of this evaluation. Use of the information supplied within this evaluation by parties other than the client this document was developed for is done so solely at the risk of the user.

# TABLE OF CONTENTS


| Section | Page |
|---|---|
| Executive Summary | 1 |
| 1.0 Introduction and Background | 3 |
| 2.0 Technical Guidance | 4 |
| 3.0 Preliminary Assessment | 6 |
| 4.0 Field Inspection Results | 7 |
| 5.0 Summary | 15 |

Appendices

Appendix A – Maps

Appendix B – WOTUS Criteria Fact Sheet

Appendix C – NWI Maps

Appendix D – NHD Map

Appendix E – NRCS Hydric Soil Report

Appendix F – Wetland Determination Data Sheets

## Executive Summary

BEACON has investigated the surface waters in the South/2 of Section 22 Township 25 North Range 21 East in Craig County, Oklahoma to make recommendations on the jurisdictional status of identified waters. This investigation was both desktop and field based. The opinions on jurisdictional status in this report are only recommendations made by BEACON, the final determination of jurisdictional status would be made by the United States Army Corps of Engineers, and this report is intended to supply the agency with the information needed to prepare a formal Jurisdictional Determination for the property.

Three types of surface waters were investigated for jurisdictional status- Linear Waterways, Wetlands, and Impoundments. One other feature was found and is noted in this report that does not fall into these categories, an artesian well.

A total of eleven (11) linear waterways were identified, a total of four (4) wetlands were identified, and one (1) impoundment.

Linear waterway investigated would be creeks, streams, swales, and the more defined drainage patterns that may constitute jurisdictional waters. Below is a table summarizing the linear waterways.

| Waterway Identifier | Length of Feature (Feet) | Jurisdictional Opinion |
|---|---|---|
| WW-1 | 6,356 | Jurisdictional |
| WW-2 | 485 | Not Jurisdictional |
| WW-3 | 2,853 | Jurisdictional |
| WW-4 | 605 | Not Jurisdictional |
| WW-5 | 755 | Not Jurisdictional |
| WW-6 | 970 | Not Jurisdictional |
| WW-7 | 330 | Not Jurisdictional |
| WW-8 | 400 | Not Jurisdictional |
| WW-9 | 505 | Not Jurisdictional |
| WW-10 | 975 | Not Jurisdictional |
| WW-11 | 83 | Not Jurisdictional |

A total of thirty-two (32) wetland determination data points were installed. Many of these were in upland areas to document the conditions, however, four (4) wetlands were identified. The below table summarizes the status of the wetlands identified within the assessed area.

| Identifier | Area of Wetland ($ft^2$) | NWI Classification | Jurisdictional Opinion |
|---|---|---|---|
| Wetland 1 | 500 | PEM1A | Not Jurisdictional |
| Wetland 2 | 850 | PEM1A | Jurisdictional |
| Wetland 3 | 1,040 | PEM1A | Not Jurisdictional |
| Wetland 4 | 430 | PEM1A | Jurisdictional |

One (1) impoundment was identified within the assessed area. The table summarizes the impoundment.

| Identifier | Area of Impoundment (Acres) | Jurisdictional Opinion |
|---|---|---|
| Impoundment 1 | 0.48 | Not Jurisdictional |

Detailed maps of the identified features are included in Appendix A. The below image delineates the jurisdictional and non-jurisdictional waters described in this report, with the jurisdictional waters in blue and non-jurisdictional waters in yellow.



## 1.0 Introduction and Background

Based on project site information provided by KLH, a wetland/waterway investigation was performed by BEACON Environmental Assistance Corporation (BEACON) personnel for an approximately 320-acre parcel of land. Located in Appendix A are USGS 7.5-minute series topographic map and an aerial map exhibiting the location of the project site area.

The assessed area is the south half of Section 21 Township 25 North Range 21 East, Craig County, Oklahoma. The tract is approximately 4 miles east of Vinita, Oklahoma along Highway 60.

The assessed area is undeveloped, currently used as livestock pasture. The property is described in more detail in Section 4.0.

Specific project details were not provided to BEACON prior to the investigation, BEACON was only tasked with investigating and documenting the features within the bounds of the tract without consideration of development activities.

The purpose of the investigation was to determine if any potentially jurisdictional wetlands/waterways are located within the surveyed corridor. All areas identified as "waters of the United States" will be considered jurisdictional and subject to regulation under section 404 of the *Clean Water Act (CWA)*. If the identified areas are expected to be disturbed, authorization from the U.S. Army Corps of Engineers (USACE) would be required prior to construction. The proposed project area was investigated to determine the location and extent for the identified wetlands and waterways.

This report is not intended to make a definitive determination of jurisdictional waters; that would come from USACE. This report is intended to provide USACE with the information necessary to make the formal determination of each feature. BEACON does provide an opinion on jurisdictional status of each evaluated feature, however, that opinion is not an official determination.

## 2.0 Waters of the United States

Field methodologies were executed by a trained BEACON wetlands specialist in accordance with the 1987 USACE Wetlands Delineation Manual (Manual) and the Midwest Regional Supplement. In addition to the visual assessment, this evaluation was completed based on comprehensive data acquired from the following resources:

- Aerial photographs & topographic maps
- National Wetland Inventory (NWI) maps
- Natural Resources Conservation Service (NRCS) website for Hydric Soil Descriptions
- United States Department of Agriculture (USDA) Web Soil Survey

By definition, wetlands are a subset of "waters of the United States" and thus subject to Section 404 of the CWA. The term "waters of the United States" will also include other surface waters, such as waterways, impoundments, and coastal areas.

On March 20, 2023, new definitions of the Waters of the United States took effect. The opinions developed by BEACON on jurisdictional status of features identified during this investigation are based on the criteria established by this rule issued by EPA and USACE. A fact sheet summarizing these criteria is included in Appendix B.

On May 25, 2023, the Supreme Court of the United States ruled in *Sackett vs. Environmental Protection Agency* that CWA jurisdiction extends only to "wetlands with a continuous surface connection to bodies of water that are 'waters of the United States' in their own right."

Conditions of the property were assessed for wetlands using guidance by the USACE Wetland Delineation Manual, and findings recorded on the Wetland Determination Data Form for the Regional Supplement relevant to the assessment location.

Waterways found on the assessed area are inspected for an OHWM, and the width and length of the OHWM is recorded, if present. A determination of flow (perennial, intermittent, ephemeral) is derived through field observations as well as resources.

Impoundments are inspected for area, and inlet/outlets sources. The impoundment of a jurisdictional waterway is also jurisdictional, while upland or "catch ponds" may not be jurisdictional. BEACON inspects the conditions contributing to identified impoundments, and if a waterway is found to be supplying flow into or out of the impoundment, that waterway is evaluated for eligibility for jurisdiction. The waterway will be described as a separate feature in this report, but the determination of the waterway may have an impact of the determination of the impoundment as well.

## 3.0 Preliminary Assessment

Prior to mobilizing to the site, BEACON reviewed available data resources that would indicate the potential for WOTUS. Also reviewed were recent and historical (past 20 years) aerial photography and topographical maps.

The NWI maps indicated two (2) potential wetlands, three (3) linear waterways, and one (1) impoundment within the tract. NWI maps are included in Appendix C.

Topographical maps of the tract indicated one (1) impoundment and two (2) linear waterways. No wetlands were indicated on the topographical maps.

National Hydrography Dataset (NHD) map of the tract indicated one (1) impoundment and two (2) linear waterways. No wetlands were indicated on the NHD. A sample of the NHD is included in Appendix D.

The NRCS soil survey listed ten (10) soils within the assessment area, listed below with the hydric ratings for each. A copy of the soil report is included in Appendix E.

Past aerial photography of the site available on Google Earth was reviewed. The available aerials were dated from 1995 to present.

No changes to the landscape were noted in the past aerial photographs. It appears that conditions within the tract have been very stable.

Topographic maps did not indicate any buildings or structures within the tract.

Accompanying this narrative report is an electronic photographic log, with photos linked to location pins on Google Earth.

The general direction of drainage of the area is to the northwest. The waterbodies within the tract drain to Cornatzar Creek (OK121300010140_00).

The property is in the Lower Neosho Watershed (HUC 11070209).

## 4.0 Field Inspection Results

The field inspection by BEACON was conducted in late April 2023. A pedestrian survey of the entire area was conducted to compare the property to the information found through the resources, and to investigate for any features or conditions that were not indicated.

The described features in this section are shown on the maps in Appendix A and on kmz Google Earth files include with this narrative report.

### 4.1 Property Conditions

No developments or structures were present within the assessment area at the time of the field investigation. No conditions or features within the tract that were not reflected on recent aerials were noted.

The tract overall drains to the northwest, with the tract being divided east to west with slopes from the north and south. The tract is comprised of native vegetation, no cultivated areas are found. Many surface rock outcrops are present, notably along the slopes near the main waterway in the middle of the tract identified as WW-1.

No large wooded areas are present, there are a few small wooded areas along the waterways, the largest of which is approximately 0.7 acres.

The tract is used as livestock pasture, currently grazing approximately 40 head of cattle.

### 4.2 Waterways

During the field inspection by BEACON, several features were noted that warranted evaluation that were not indicated on the resources reviewed but were indicated on aerial photography.

The evaluated linear waterways are identified on the maps in Appendix A and on the accompanying kmz files as WW features.

WW-1 is an unnamed intermittent stream that flows from the southeast to the northwest.

The feature had defined OHWM for most of its length. In some places, the OHWM becomes difficult to discern, as it flattens out with the surrounding surface rock. The OWHM varies in width, but averages 12 feet in width along the length of approximately 6,356 within the tract. The OHWM of WW-1 within the tract would occupy approximately 1.75 acres.

WW-1 enters the property from the north ditch of Highway 60. While BEACON did not have access to neighboring tracts, from the public roadways and aerial photography it appears the OHWM does not extend southward (upstream) from the subject tract.

WW-1 exits the tract near the northwest corner of the tract, and continues in a northern direction, joining with Cornatzar Creek approximately 0.85 miles north of the exit point.

WW-1 is shown on the NWI, NHD, and topographical maps as an intermittent blue line. WW-1 is not named and is not reported as being an assessed water by the State of Oklahoma.

It is BEACON's opinion that WW-1 is a jurisdictional "Water of the United States".

**WW-2** is an unnamed ephemeral stream that flows from the south to north.

WW-2 starts at Highway 60 and is fed by a culvert under Highway 60. No apparent streambed is south of Highway 60.

WW-2 exhibits an inconsistent OHWM along its length. Where the OHWM is not evident, a drainage pattern is evident in the form of a swale. The depiction of WW-2 on the maps in Appendix A and on the included kmz file represents the extent of the feature.

The drainage pattern of WW-2 fades out and ends approximately 50 feet from WW-1. No connection with WW-1 is made via OHWM or drainage channel, any water flow from WW-2 to WW-1 would be via sheet flow.

WW-2 does not show a consistent defined bed and bank along its length.

WW-2 is not indicated on NWI, NHD, or topographic maps.

It is BEACON's opinion that WW-2 is not a jurisdictional "Water of the United States".

**WW-3** is an unnamed intermittent stream that flows from east to west.

WW-3 has a defined OHWM for its length. BEACON did not have access to the property to the north, but aerial and topographical maps show that WW-3 starts at a pond on the neighboring property at a mining facility.

WW-3 crosses back onto the property to the north and joins with WW-1 on a separate tract of land.

WW-3 has an OHWM length of 2,853 feet in the subject tract, with a width of 8 feet. Approximately 0.52 acres of OWHM are within the tract.

WW-3 shows a bed and bank along its length through the tract, and on the segments that could be seen on neighboring properties without accessing them.

WW-3 is shown on the NWI, NHD, and topographical maps as an intermittent blue line. WW-3 is not named and is not reported as being an assessed water by the State of Oklahoma.

It is BEACON's opinion that WW-3 is a jurisdictional "Water of the United States".

**WW-4** is an unnamed ephemeral stream that flows from north to south.

WW-4 begins abruptly in the field.

WW-4 exhibits an inconsistent OHWM and bed/bank along its length. Where the OHWM is not evident, a drainage pattern is evident in the form of a swale. The depiction of WW-4 on the maps in Appendix A and on the included kmz file represents the extent of the feature.

WW-4 has a total length of 605 feet. The OHWM is broken into several segments, unconnected.

WW-4 is not indicated on NWI, NHD, or topographic maps.

It is BEACON's opinion that WW-4 is not a jurisdictional "Water of the United States".

**WW-5** is an unnamed ephemeral stream that flows from north to south, feeding WW-1 directly.

WW-5 begins abruptly in the field.

WW-5 exhibits an inconsistent OHWM along its length. Where the OHWM is not evident, a drainage pattern is evident in the form of a swale. The depiction of WW-5 on the maps in Appendix A and on the included kmz file represents the extent of the feature.

WW-5 does exhibit bed and bank along its length.

WW-5 has a total length of 605 feet. The OHWM is broken into several segments, unconnected.

WW-5 is not indicated on NWI, NHD, or topographic maps.

It is BEACON's opinion that WW-5 is not a jurisdictional "Water of the United States".

**WW-6** is an unnamed ephemeral stream that flows from northeast to southwest.

WW-6 is at the base of sharp rise in the property and has an inconsistent OHWM. At the confluence with WW-7, the OHWM disappears as does the defined channel.

WW-6 ends abruptly at the most southwest point shown on the maps and included kmz file. WW-6 does not make a connection to any other waterbody.

WW-6 has a total length of 970 feet.

WW-6 is not indicated on NWI, NHD, or topographic maps.

It is BEACON's opinion that WW-6 is not a jurisdictional "Water of the United States".

**WW-7** is an unnamed, ephemeral erosional feature that flows from north to south, feeding WW-6.

WW-7 is at the base of sharp rise in the property and has an inconsistent bed and bank along its length of 325 feet. WW-7 averages 5 feet in width.

WW-7 is not indicated on NWI, NHD, or topographic maps.

It is BEACON's opinion that WW-7 is not a jurisdictional "Water of the United States".

**WW-8** is an unnamed swale flowing from north to south.

WW-8 appears to be a channelized swale, being very straight in its orientation and consistent, smooth contours. No OHWM is present along its length of 400 feet, and the bed of the swale is vegetated by the same upland plants as the surrounding area.

WW-8 ends abruptly at the most southeast point shown on the maps and included kmz file. WW-8 does not make a direct connection to any other waterbody.

WW-8 is not indicated on NWI, NHD, or topographic maps.

It is BEACON's opinion that WW-8 is not a jurisdictional "Water of the United States".

**WW-9** is an ephemeral waterway flowing south to north.

WW-9 shows an inconsistent OHWM and bed/bank. The extent of WW-9 is shown on the maps and kmz file, with WW-9 ending approximately 90 feet south of WW-1.

WW-9 does not connect with any other waterbody.

WW-9 is not indicated on NWI, NHD, or topographic maps.

It is BEACON's opinion that WW-9 is not a jurisdictional "Water of the United States".

**WW-10** is an unnamed swale flowing from northeast to southwest.

No OHWM is present along its length of 975 feet, and the bed of the swale is vegetated by the same upland plants as the surrounding area.

WW-10 ends abruptly at the most southeast point shown on the maps and included kmz file. WW-10 does not make a direct connection to any other waterbody.

WW-10 is not indicated on NWI, NHD, or topographic maps.

It is BEACON's opinion that WW-10 is not a jurisdictional "Water of the United States".

**WW-11** is an ephemeral feature that leads to Wetland 2, and ultimately to WW-1. The defined features (OHWM, bed/bank) of WW-11 end where Wetland 2 begins.

WW-11 has a length of 90 feet, and OWHM of 2 feet.

WW-11 is not indicated on NWI, NHD, or topographic maps.

It is BEACON's opinion that WW-11 is not a jurisdictional "Water of the United States".

### 4.4 Wetlands

BEACON inspected the area for conditions that would likely exhibit wetland conditions. Wetland delineation data points were installed in the identified areas, as well as along the waterways to document the conditions. Additional wetland data points were installed in the upland areas to document the conditions and provide data to compare conditions in obvious upland areas and along the waterways.

Wetland Data Points #30 and #31 were placed within the wetland areas indicated on the NWI map. Neither of these areas were wetlands.

A total of thirty-two (32) wetland data points were installed within the tract to document the conditions. Four (4) areas that were found to be wetlands were documented and are discussed below.

Copies of the Wetland Determination Data Forms are included in Appendix F.

Locations of all Wetland Data Points are depicted on the maps in Appendix A and on the kmz files included with this report.

**Wetland 1** is an emergent freshwater wetland occupying 500 square feet. This wetland is completely isolated and not connected to any other waterbody.

Wetland 1 is not indicated on NWI, NHD, or topographic maps.

It is BEACON's opinion that Wetland 1 is not a jurisdictional "Water of the United States".

**Wetland 2** is an emergent freshwater wetland occupying 1,200 square feet.

Wetland 2 is fed into by WW-11 and serves as a connection between WW-1 and WW-11. Wetland 2 is directly adjacent and connected to WW-1.

Wetland 2 is not indicated on NWI, NHD, or topographic maps.

Wetland 2 is directly connected with WW-1, with WW-1 being, in BEACON's opinion, a jurisdictional WOTUS. Therefore, it is BEACON's opinion that Wetland 2 is a jurisdictional "Water of the United States".

**Wetland 3** is an emergent freshwater wetland occupying 1,040 square feet. This wetland receives flow from the north ditch of Highway 60. No jurisdictional waterways feed or drain Wetland 3.

Wetland 3 is not directly connected to any other waterbody.

Wetland 3 is not indicated on NWI, NHD, or topographic maps.

It is BEACON's opinion that Wetland 3 is not a jurisdictional "Water of the United States".

**Wetland 4** is an emergent freshwater wetland occupying 2,340 square feet.

Wetland 4 is fed into by an artesian well and flows directly into WW-1. Wetland 4 is more of a linear wetland, no OHWM is evident within the bounds of the wetland.

Wetland 4 is not indicated on NWI, NHD, or topographic maps.

Wetland 4 is directly connected with WW-1, with WW-1 being, in BEACON's opinion, a jurisdictional WOTUS. Therefore, it is BEACON's opinion that Wetland 4 is a jurisdictional "Water of the United States".

### 4.5 Impoundments

One (1) impoundment is present within the tract, located in the extreme southeast corner of the tract. This impoundment is an upland "catch pond", with no waterway feeding into or draining out of the impoundment.

The impoundment is approximately 0.48 acres in size.

It is BEACON's opinion that the impoundment is not a jurisdictional "Water of the United States".

### 4.6 Other Aquatic Features

An artesian well was identified within the bounds and source of water for Wetland 4.
As shown in the photographic log, a concrete and stone structure is present at the well and has fallen into disrepair. The structure is 10 feet by 6 feet.

The water produced to the surface by the artesian well flows in a northwestern direction, inundating the area and creating Wetland 4.

## 5.0 Summary

Based on the results of the reviewed resources and the field inspection, it is BEACON's opinion that jurisdictional Waters of the United States are present within the assessed 320 acre tract.

This is BEACON's opinion and has not been presented to the Tulsa USACE District for a Jurisdictional Determination. BEACON assembled this report and data to support a formal Jurisdictional Determination of being not jurisdictional for the features by USACE, if opted to do so by the client.

BEACON recommends submittal of this report to the Tulsa USACE District for a formal, official determination of jurisdictional status of the identified water bodies, as well as a determination of need for permitting of planned activities that may impact these features.

## Appendix A

## Maps




McComb_002084

McComb_002085






=WETLANDS

=IMPOUNDMENT

=TRACT BOUNDARY

| TOPOGRAPHICAL MAP | | | |
|---|---|---|---|
| WETLAND, IMPOUNDMENT, AND OTHER FEATURES<br>S/2 SECTION 21<br>TOWNSHIP 25 NORTH RANGE 21 EAST<br>CRAIG COUNTY, OKLAHOMA | | | |
| Prepared For:<br>KLH ENVIRONMENTAL AND<br>GEOLOGICAL CONSULTING | | BEACON Environmental Assistance Corporation | |
| Drawn By: AM | Project # X754 | Date: 4/2023 | FIGURE 2 |

McComb_002086




McComb_002087




=WETLAND DATA POINTS

=TRACT BOUNDARY

| AERIAL PHOTOGRAPH | | | |
|---|---|---|---|
| WETLAND DATA POINTS<br>S/2 SECTION 21<br>TOWNSHIP 25 NORTH RANGE 21 EAST<br>CRAIG COUNTY, OKLAHOMA | | | |
| Prepared For:<br>KLH ENVIRONMENTAL AND GEOLOGICAL CONSULTING | | BEACON Environmental Assistance Corporation | |
| Drawn By: AM | Project # X754 | Date: 4/2023 | FIGURE 6 |

McComb_002088




=WETLANDS
=IMPOUNDMENT
=TRACT BOUNDARY

| AERIAL PHOTOGRAPH | | | |
|---|---|---|---|
| WETLAND, IMPOUNDMENT, AND OTHER FEATURES<br>S/2 SECTION 21<br>TOWNSHIP 25 NORTH RANGE 21 EAST<br>CRAIG COUNTY, OKLAHOMA | | | |
| Prepared For:<br>KLH ENVIRONMENTAL AND GEOLOGICAL CONSULTING | | BEACON Environmental Assistance Corporation | |
| Drawn By: AM | Project # X754 | Date: 4/2023 | FIGURE 5 |

McComb_002089

## Appendix B

## WOTUS Criteria Fact Sheet

# Final Rule: Revised Definition of "Waters of the United States" Fact Sheet

December 2022

## Overview

On Dec. 30, 2022, the U.S. Environmental Protection Agency (EPA) and Department of the Army (the agencies) announced a final rule founded upon the pre-2015 definition of "waters of the United States," updated to reflect consideration of Supreme Court decisions, the science, and the agencies' technical expertise.

The agencies chose the familiar, pre-2015 definition as a foundation because it has supported decades of clean water progress and has been implemented by every administration in the last 45 years. Changing regulatory definitions due to court decisions and final rules issued by the agencies in 2015, 2019, and 2020 have caused uncertainty that harmed communities and our nation's waters. The rule restores fundamental protections so that the nation will be closer to achieving Congress' direction in the Clean Water Act that our waters be fishable and swimmable. It will also ensure that our waters support recreation and wildlife.

This action provides clear rules of the road that will help advance infrastructure projects, economic investments, and agricultural activities—all while protecting water quality. EPA and Army are prioritizing and enhancing practical, on-the-ground implementation by providing tools and resources to support timely and consistent jurisdictional determinations under this definition of "waters of the United States."

## Categories of "Waters of the United States" [1]

The agencies' definition of "waters of the United States" provides jurisdiction over waterbodies that Congress intended to protect under the Clean Water Act, including traditional navigable waters (e.g., certain large rivers and lakes), territorial seas, and interstate waters. For upstream waters that may significantly affect the integrity of downstream waters that Congress intended to protect, the rule provides a reasonable approach that recognizes regional and geographic differences. The rule accounts for regional differences in waters because regionally tailored implementation tools as well as local and regional conditions help determine whether waters are covered under this rule.

[1] This table is provided for informational purposes; the rule establishes the requirements defining "waters of the United States."

| Types of Waters | Features | Examples of Waters Likely to Be Jurisdictional Under the Final Rule | Regulatory Text Paragraph |
|---|---|---|---|
| **Traditional Navigable Waters** | Large rivers and lakes that could be used in interstate or foreign commerce, as well as waterbodies affected by tides. | Mississippi River, Erie Canal, Great Lakes | (a)(1) |
| **Territorial Seas** | Territorial seas that extend three miles out to sea from the coast. | Atlantic Ocean, Pacific Ocean | (a)(1) |
| **Interstate Waters** | Includes waters like streams, lakes, or wetlands that cross or form part of state boundaries. | Lake Tahoe, portions of the Columbia River, portions of Savannah River | (a)(1) |
| **Impoundments** | Impounded bodies of water created in or from "waters of the United States," like reservoirs and beaver ponds. | Bear Gulch Reservoir in California | (a)(2) |
| **Tributaries** | Branches of creeks, streams, rivers, lakes, ponds, ditches, and impoundments that ultimately flow into traditional navigable waters, the territorial seas, interstate waters, or impoundments of jurisdictional waters. Tributaries are jurisdictional if they meet either the relatively permanent standard or significant nexus standard. | Wolftrap Run in Virginia, Puppy Creek in Arkansas | (a)(3) |
| **Adjacent Wetlands** | These wetlands can be next to, abutting, or near other jurisdictional waters or behind certain natural or constructed features. They are most often within a few hundred feet of jurisdictional waters.<br><br>Adjacent wetlands are jurisdictional if they meet either the relatively permanent standard or the significant nexus standard, or where the wetland is adjacent to a traditional navigable water, the territorial seas, or an interstate water. | Parts of the Florida Everglades, Horicon Marsh in Wisconsin | (a)(4) |
| **Additional Waters** | These lakes, ponds, streams, or wetlands do not fit into the above categories. They are jurisdictional if they meet either the relatively permanent standard or the significant nexus standard. | Certain local lakes, streams, wetlands, etc. | (a)(5) |

## Standards for Determining Jurisdiction

To determine jurisdiction for tributaries, adjacent wetlands, and additional waters, the final rule relies on the longstanding approach of applying two standards. Certain types of waters are jurisdictional under the final rule if they meet either the relatively permanent standard or significant nexus standard.

- **Relatively Permanent is a test that** provides important efficiencies and clarity for regulators and the public by readily identifying a subset of waters that will virtually always significantly affect paragraph (a)(1) waters. To meet the relatively permanent standard, the waterbodies must be relatively permanent, standing, or continuously flowing waters connected to paragraph (a)(1) waters or waters with a continuous surface connection to such relatively permanent waters or to paragraph (a)(1) waters.
- **Significant Nexus is a test that** clarifies if certain waterbodies, such as tributaries and wetlands, are subject to the Clean Water Act based on their connection to and effect on larger downstream waters that Congress fundamentally sought to protect. A significant nexus exists if the waterbody (alone or in combination) significantly affects the chemical, physical, or biological integrity of traditional navigable waters, the territorial seas, or interstate waters.

## Exclusions from "Waters of the United States"

The agencies' definition of "waters of the United States" does not affect the longstanding activity-based permitting exemptions provided to the agricultural community by the Clean Water Act. Additionally, the final rule codifies eight exclusions from the definition of "waters of the United States" in the regulatory text to provide clarity, consistency, and certainty to a broad range of stakeholders. **The exclusions are:**

- **Prior converted cropland**, adopting USDA's definition and generally excluding wetlands that were converted to cropland prior to December 23, 1985.
- **Waste treatment systems**, including treatment ponds or lagoons that are designed to meet the requirements of the Clean Water Act.
- **Ditches** (including roadside ditches), excavated wholly in and draining only dry land, and that do not carry a relatively permanent flow of water.
- **Artificially irrigated areas,** that would revert to dry land if the irrigation ceased.
- **Artificial lakes or ponds,** created by excavating or diking dry land that are used exclusively for such purposes as stock watering, irrigation, settling basins, or rice growing.
- **Artificial reflecting pools or swimming pools,** and other small ornamental bodies of water created by excavating or diking dry land.
- **Waterfilled depressions,** created in dry land incidental to construction activity and pits excavated in dry land for the purpose of obtaining fill, sand, or gravel unless and until the construction operation is abandoned and the resulting body of water meets the definition of "waters of the United States."
- **Swales and erosional features** (*e.g.*, gullies, small washes), that are characterized by low volume, infrequent, or short duration flow.