Message

**From**: Larry wilhite [lwilhite@themansiontheatre.com]
**Sent**: 12/11/2023 3:36:32 PM
**To**: Accounting [accounting@themansiontheatre.com]
**Subject**: contracts
**Attachments**: Completed: Complete with DocuSign: Technifex SD Special Effects - Letter of Agreement (09-29-2023).pdf; Completed: Complete with DocuSign: ADG Blatt - G802-2017 Amendment No. 01 (Staff Housing) - 10 12 2023 - F...

Please file these....thank you

EXHIBIT
9

Message

**From**: Kimberly Endy via DocuSign [dse@docusign.net]
**Sent**: 12/11/2023 3:19:22 PM
**To**: O Gene Bicknell [lwilhite@themansiontheatre.com]
**Subject**: Completed: Complete with DocuSign: Technifex SD Special Effects - Letter of Agreement (09-29-2023).pdf
**Attachments**: Technifex SD Special Effects - Letter of Agreement (09-29-2023).pdf; Summary.pdf

CUMMING

Your document has been completed

VIEW COMPLETED DOCUMENT

**Kimberly Endy**
kendy@lehrercumming.com

All parties have completed Complete with DocuSign: Technifex SD Special Effects - Letter of Agreement (09-29-2023).pdf.

Hi Larry,

Attached please find Technifex Letter of Agreement for execution.

Let me know if you have any questions.

Regards,
Kim Endy

Powered by DocuSign

**Do Not Share This Email**
This email contains a secure link to DocuSign. Please do not share this email, link, or access code with others.

**Alternate Signing Method**
Visit DocuSign.com, click 'Access Documents', and enter the security code:
6C67FED1C66B4EE086719FF890DE2C1E1

**About DocuSign**
Sign documents electronically in just minutes. It's safe, secure, and legally binding. Whether you're in an office, at home, on-the-go -- or even across the globe -- DocuSign provides a professional trusted solution for Digital Transaction Management™.

**Questions about the Document?**
If you need to modify the document or have questions about the details in the document, please reach out to the sender by emailing them directly.

**Stop receiving this email**
Report this email or read more about Declining to sign and Managing notifications.

If you are having trouble signing the document, please visit the Help with Signing page on our Support Center.

Download the DocuSign App

This message was sent to you by Kimberly Endy who is using the DocuSign Electronic Signature Service. If you would rather not receive email from this sender you may contact the sender with your request.

**Memorandum**

To: Gene Bicknell, Owner,
Steve Hedrick, MEG Vice President
From: Pamela McKown
Date: 29 September 2023
Subject: Execution of Technifex Agreement

Attached is the signed Technifex Letter of Agreement for an award value of $116,904 USD. This value represents evaluation, guidance and design for SD special effects, BIM management, Hologauze Mock-up and facility impact information Including ROMS for the following venues:

- Nighttime Spectacular
  - Water features and fountains
  - Water screens
  - Flame effects
- Boardwalk Amphitheatre
  - Water features and fountains
- Land Ho
  - Water effects (cannon blasts, bullet hits, etc)
  - Steam effects
  - Flame effect
- First Stories
  - Campfire with steam
  - Other steam effects
  - Hologauze Illusions
- Will Rodgers
  - Hologauze Illusions

Vendor, specifically the services of Senior Vice President John Polk, has provided similar services for other venues since January 2023.

1) Scope has been reviewed and approved by Andy Burden, Show Project Manager and Steve Hedrick. Scheduling has reviewed and approved Vendor's schedule.

2) Negotiation of terms and conditions are as follows:

   a) **Opening paragraph:** refined to include language reference to "Party" and "Parties". Currently reads in Definitions: "8. Parties are Owner and Vendor and the plural and singular are one on the same".

   b) **Paragraph 1 Scope of Work:** modified to include the specific project name as opposed to project or generally services of the agreement.

   c) **Paragraph 3 Ownership of the Work:** Language modify to read Vendor must notify Owner in writing of pre-existing technology/works.

3) Payment is monthly Net 30 upon submission of an invoice.

Many Thanks,

Pamela McKown

Pamela McKown

**LETTER OF AGREEMENT**
**American Heartland Themepark**
**Technifex, Inc.**

This Letter of Agreement "LOA" is entered into by and between Mansion Entertainment Group, LLC (MEG) located at 189 Expressway Lane, Branson, Missouri 65616 and hereinafter referred to as the "Owner" and Technifex, Inc. located at 25261 Rye Canyon Road, Valencia USA 91355 hereinafter referred to as "Vendor". (Owner and Vendor individually shall be referred to as a "Party" and collectively as the "Parties"). Cumming Management Group, Inc. has been hired by Owner to facilitate the procurement of the work of this LOA and Owner shall manage the performance of any and all work under this LOA.

**1. Scope of Work.**
Under this LOA, Vendor shall provide their services to complete the Scope of Work of schematic design for special effects including a Hologauze screen Mockup, BIM management, engineering provided by licensed P.E.'s as appropriate, drawings for special effects, facility impact information and ROM estimates in accordance with Exhibit "A" (collectively referred to either as the "Work" or the "Scope of Work" as appropriate). The Work will be performed in conjunction with the project commonly known as American Heartland Themepark & Three Ponies RV Park and Resort (the "Project") All work performed by Vendor under this LOA shall be considered a work for hire and shall be considered Confidential and all rights, including proceeds, now and in perpetuity throughout the universe shall belong to Owner whether this Agreement is terminated prior to the completion of the scope of services. This LOA shall supersede in its entirety Vendor's proposal terms and conditions dated September 5 2023, R1, 5 pages unless stated otherwise herein. Vendor shall perform the work of this LOA to prevailing industry standards and in compliance with all codes and laws having jurisdiction over the Project.

Owner's Representative: Andy Burden may be reached at+1 (407) 504-8436 and email andyb@megdevteam.com with a copy of any written correspondence and notice(s) to Steve Hedrick at steveh@megdevteam.com and Pamela.mckown@cumming-group.com.

Vendor's Representative: John Polk may be reached at+1 (661) 294-3800 and email johnp@technifex.com .

**2. Compensation.**
Payment shall be rendered upon an Owner approved invoice submitted on Vendor's letterhead for all completed undisputed work in accordance with milestone payments established in Exhibit "B". The amount(s) payable to Vendor constitutes the entire consideration including any taxes which Vendor is obligated to pay any governing body having authority over Vendors' business jurisdiction for all work performed pursuant or related to this LOA. Vendor shall submit an invoice on Vendor letterhead including address, fees due and relevant progress payment. With the exception of startup payments, payment shall be rendered for approved work, Net 30 from receipt of an accurate invoice. It is hereby understood and agreed that Cumming Management Group, Inc shall not be liable for the Owner's payment obligation. If wire transfers are desired, a one-time letter on bank letterhead matching invoice wire transfer instructions must be provided to Owner and will be kept on file by Mansion Accounting Group.

Vendor shall submit their invoice(s) to accounting@themansiontheatre.com with a copy to pamela.mckown@yahoo.com.

Vendor shall obtain a signed agreement with each Subconsultant or Third Party hired to perform any portion of the work. If applicable, Subconsultant(s) shall provide all discipline required licenses for their respective services to be performed as required by governing law including but not limited to the provision of Architectural and Engineering services. Vendor shall include a requirement to submit an unconditional waiver of lien for final payment in every Subconsultant and or Third-Party agreement it enters related to or resulting from this LOA.

**PROVIDED THE OWNER HAS FULFILLED ITS PAYMENT OBLIGATIONS UNDER THE AGREEMENT AND PAID ALL UNDISPUTED AMOUNTS, VENDOR SHALL DEFEND AND INDEMNIFY OWNER FROM ALL LOSS, LIABILITY, DAMAGE, OR EXPENSE, INCLUDING REASONABLE ATTORNEY'S FEES ARISING OUT OF ANY LIEN CLAIM OR OTHER CLAIM FOR PAYMENT BY ANY SUBCONSULTANT, SUBOWNER, OR MATERIAL SUPPLIER, AND SHALL PAY OR REIMBURSE TO OWNER ALL REASONABLE COSTS AND EXPENSES THAT OWNER INCURS IN DISCHARGING ANY SUCH LIEN CLAIM OR OTHER CLAIM. UPON RECEIPT OF NOTICE OF A LIEN CLAIM OR OTHER CLAIM FOR PAYMENT, THE OWNER SHALL NOTIFY VENDOR. VENDOR SHALL, WITHIN TEN (10) DAYS AFTER NOTICE FROM OWNER, RESOLVE THE CLAIM AND PROVIDE PROOF TO OWNER OF RESOLUTION OR FURNISH OWNER A BOND SUFFICIENT TO DISCHARGE THE LIEN CLAIM OR OTHER CLAIM.**

**3. Ownership of the Work.**

Vendor acknowledges and grants to Owner, exhaustive and complete ownership rights of the work now and for perpetuity and in any medium in the universe and the sole right to any beneficial proceeds therein. With regard to any Third Party license, royalty rights, pre-existing proprietary rights, artistic works considered a Moral Artistic Right, or other limitations, Vendor grants a royalty free right of use for perpetuity. Vendor assigns to Owner all rights, whether vested or not, to all designs, creations, improvements, original works of authorship, formulas, processes, know-how, techniques, inventions, and all other information or items created by Vendor during the term of this LOA. Rights assigned include but are not limited to: title and interest in all patent, copyright, trade secret, trademark, and other proprietary rights. Vendor shall reasonably help prepare any documents that Owner considers necessary to secure any patents, copyrights, trademarks, or other proprietary rights at no charge to Owner. Notwithstanding the above, ownership of the work shall not be construed to include ownership of Vendor's or Vendor's Subconsultant's unique or pre-existing technology. Vendor shall notify Owner, in writing, whether and the extent to which the Work includes Pre-Existing Technology.

It is the express intention of the Parties that Vendor is at all times an independent contractor and not an employee, joint venturer, or partner of Owner. Nothing in this LOA should be interpreted or construed as creating or establishing the relationship of employer and employee between Owner and Vendor Both Parties acknowledge that Vendor is not an employee for state or federal tax purposes.

**4. Insurance.**

Commercial General Liability with policy limits of not less than one million dollars [$1,000,000] for each occurrence and two million dollars [$2,000,000] in the aggregate for bodily injury and property damage. Commercial General Liability policies must cover, but is not limited to, bodily injury and property damage, premises and operations, products and completed operations (for the entire period of the applicable statutes of repose and limitation); independent contractors; Owner's and Vendor's protective liability; blanket contractual; personal injury and advertising injury; liability assumed under an insured contract (including the tort liability of another assumed in a business contract); employers' contingent liability. The policies shall include the General Aggregate per Project Endorsement. Such aggregate shall apply separately to the Services being performed under the Agreement.

Vendor shall procure Professional Liability insurance covering performance of the professional services, with policy limits of not less than one million dollars [$1,000,000] USD per claim, and one million dollars [$1,000,000] USD in the aggregate.

Automobile Liability covering vehicles owned by the Vendor's business and non-owned vehicles used by the Vendor during the course of their performance under this Agreement, with policy limits of not less than one million dollars [$1,000,000] USD per accident, for bodily injury, death of any person, and property damage arising out of the ownership, maintenance, and use of those motor vehicles along with any other statutorily required automobile coverage.

Workers' Compensation at statutory limits. Vendor will maintain Workers' Compensation insurance in accordance with the statutory requirements of the place where their business operation is registered.

Employers' Liability with policy limits not less than one million dollars [$1,000,000] USD each accident, one million dollars [$1,000,000] USD each employee, and one million dollars [$1,000,000] USD policy limit.

(Waiver of Subrogation) Owner and Vendor waive all rights against (i) each other and any of their agents, and employees, each of the other; and (ii) separate Third Party Subconsultants or sub Owners, if any, agents, and employees, for damages caused by fire, or other causes of loss, to the extent those losses are covered by property insurance required by this Agreement or other property insurance applicable to the Project, except such rights as they have to proceeds of such insurance. The policies of insurance purchased and maintained by each person or entity agreeing to waive claims pursuant to this Paragraph 4 shall not prohibit this waiver of subrogation. This waiver of subrogation shall be effective as to a person or entity (i) even though that person or entity would otherwise have a duty of indemnification, contractual, or otherwise, (ii) even though that person or entity did not pay the insurance premium directly or indirectly, or (iii) whether or not the person or entity had an insurable interest in the damaged property.

Vendor shall orally report promptly to Owner and promptly confirm to Owner in writing, upon Vendor becoming aware of any injury, loss, or damage incurred by Vendor or its Subconsultants and or sub Owners in connection with the Project, or upon Vendor's receipt of such claim by a Third Party, or upon Vendor becoming aware of any occurrence that they believe may give rise to such claim. Vendor shall disclose to Owner any deductible or self-insured retentions applicable to any insurance required to be provided by the Vendor.

If applicable, Vendor shall cause each of its subconsultants of every tier to purchase and maintain insurance of the type specified above and to otherwise comply with the insurance requirements set forth herein, except that Commercial General Liability insurance shall be at least One Million Dollars [$1,000,000] each occurrence and general aggregate, and Professional Liability Insurance shall be at least One Million Dollars [$1,000,000] USD.

Vendor will furnish evidence of insurance to Owner prior to the Initial down payment as described in Exhibit "B". Evidence should be in the form of a Certificate of Insurance, which shall name Owner as Additional Insured. The certificate should contain a clause indicating that a thirty (30) day notice of cancellation will be provided to Owner in writing. Vendor shall keep such insurance in effect for at least two (2) years after the date of first public operation.

**5. Dispute Resolution.**

In the event of any disagreement or Claim arising out of or related to this LOA or breach of this LOA, Owner and Vendor agree to attempt in good faith, to resolve the dispute first by direct negotiations between the Owner and Vendor. Claims, disputes, or other matters in controversy arising out of or related to the Contract shall be subject to mediation as a condition precedent to binding arbitration.

Both Owner and Vendor shall then endeavor to resolve their claims and disputes by mediation which, unless the Parties mutually agree otherwise, shall be administered in accordance with the rules of the American Arbitration Association (AAA) for commercial contracts which were in effect on the date of execution of this LOA. Any request for mediation shall be made in writing, delivered to the other Party to this LOA, and filed with the person or entity administering the mediation. Persons with authority to resolve the dispute shall be present at the mediation. Mediation attempts shall be exhausted prior to the commencement of binding arbitration proceedings. Owner and Vendor shall share the mediator's fee and any filing fees equally. Mediation shall be held in the place where the

Project is located unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having valid jurisdiction.

If mediation is not successful, within a reasonable amount of time, both Parties agree to seek resolution through binding Arbitration. Arbitration shall commence within sixty (60) days of any such disagreement or Claim arising out of or the breach thereof, or its termination that has not been resolved through negotiation(s) and for which both Owner and Vendor conclude resolution through mediation is not a viable remedy. Arbitration shall be conducted in accordance with the Rules of Arbitration of the AAA provided that the provisions of this Agreement will supersede any conflicting AAA rules where permissible under law. Owner and Vendor agree that proceedings will be conducted in English and held in the venue of the State of Oklahoma.

All disputes shall be initiated by service of a written Notice to the other party in accordance with Paragraph 11 herein, of its intent to arbitrate and must state the basis of the Claim and such written Notice must be filed with the AAA. Any arbitration Notice shall be made prior to the date when the institution of legal or equitable proceedings based on the Claim would be barred by the applicable statute of limitations. For statute of limitations purposes, receipt of a written demand for arbitration by the AAA respectively shall constitute the commencement of legal or equitable proceedings.

It is hereby agreed that Vendor shall not stop or suspend the work as a result of a dispute and or during the Arbitration process. Such a work stoppage shall be considered a breach of this LOA unless Vendor is required to do so as a matter of law. Schedule relief shall not be granted for any such stoppage unless so ordered by the Arbitrator. No costs associated with regaining schedule or performance of the remaining work including will be paid by Owner.

The costs of the arbitration proceeding shall be borne equally by Owner and Vendor except that Owner and Vendor shall be responsible for their own expert and or witness fees, and the costs of complying with discovery requests. Judgment upon the award rendered in any Arbitration shall be considered final and such judgement may be entered in any court of competent jurisdiction, or application may be made to such court for a judicial acceptance of the award and enforcement, as applicable law may require or allow.

The award of the Arbitrator shall be final and binding and subject only to such rights of appeal as are provided by the AAA. In the event that an appeal would result in a trial, both Owner and Vendor agree to waive a trial by jury. Under no circumstance including any claim negotiations or Arbitration proceedings, shall work be stopped or suspended during the performance of this Agreement unless both Parties agree in writing.

**6. Delays and Correction.**
Should Vendor for any reason excepting those set forth in this Paragraph 6 and Paragraph 7 Changes cause a delay of the work or prove to be behind the agreed upon Contract Milestone Schedule, then Vendor will within forty-eight (48) hours provide Owner with a recovery plan that will demonstrate Vendor's ability to recover lost time at no cost to Owner. Schedule relief shall be granted at Owner's discretion. Owner will allow Vendor reasonable time to correct any work found deficient to the extent that Owner's other Project obligations are not irreversibly affected, and the Agreement shall then upon correction of the delay, to Owner's satisfaction, return to its original terms and conditions. However, should Vendor, in Owner's reasonable view, not be capable of correcting the delay, Owner reserves the right to offset costs and seek corrective performance from a Third Party of Owner's choice and such costs shall be deducted from Vendor's remaining contract value. If remaining money in Vendor's contract is not sufficient to cover the offset of costs, then Vendor shall reimburse Owner to make Owner whole upon submission of invoice with appropriate documentation of costs.

Owner agrees that Vendor shall not be responsible for delays caused by factors beyond Vendor's reasonable control and for which Vendor or their hires had no reasonable means of anticipating including delays due to strikes, lockouts, work slowdowns or stoppages, accidents, acts of God, failure of any government or other regulatory authority having jurisdiction over the work of this LOA to act in a timely manner, the failure of Owner to approve or disapprove Vendor's work which impacts schedule, or delays caused by Owner which negatively impacts

Vendor's ability to meet schedule or perform the work. Should Owner cause a delay in providing or approving services or product needed for Vendor or their hires to perform in compliance with Exhibit "B", Vendor shall be granted an extension of time directly attributable to the delay and shall be entitled to cost relief if warranted. Any such cost relief will be at direct cost without mark-up. Notwithstanding the above, Vendor shall make every reasonable effort to mitigate any time or cost impact due to unforeseen delays.

**7. Changes.**

Should Owner or Vendor wish to make changes to the Scope of Work, then the party requesting such change(s) shall notify the other party promptly in writing on Company Letterhead and both Owner and Vendor shall work together in good faith to reach agreement on the change(s) and cost related thereto. Such agreed upon changes shall be made part of this Agreement by way of an Amendment and signed by both Owner and Vendor. Unless otherwise agreed to in writing by both Owner and Vendor, should Vendor proceed with change to the Work, Vendor proceeds at Vendor's sole financial and schedule risk. Owner may elect to price and or agree to additional compensation for a Change Order as a lump sum, Time & Material based on established industry rates or as a Not-to-Exceed sum as deemed in the most beneficial interest of Owner. Owner's reserves the right to instruct Vendor to proceed with the change(s) and negotiate in "good faith" pricing and or schedule relief at a later time. Under no circumstances may Vendor cease any work. Should Vendor require an advance payment to commence the change(s), with Owner's consent, then Vendor may invoice for such payment upon approval of Owner.

**8. Confidential Information.**

Vendor acknowledges that during the performance of Services hereunder, Vendor may come into contact with and gain knowledge relating to confidential and proprietary information relating to the Owner/Project. Vendor hereby acknowledges and agrees that during the Term of this LOA and thereafter as appropriate, Vendor shall not disclose or use any Confidential Information which Vendor gained knowledge of by reason of its association with Owner or in relationship to Owner's Project. Vendor acknowledges and agrees that (a) the Confidential Information is and shall remain the property of Owner during and after termination of this LOA; (b) Vendor will hold such Confidential Information in strict confidence throughout the term of the LOA, (c) Vendor will use such Confidential Information only as necessary to perform Exhibit "A" under this LOA; and (d) upon termination of this LOA Vendor will return, if applicable, all tangible Confidential Information to Owner. This provision does not include any Confidential information regarding Exhibit "A" which is owned by Vendor.

**9. Indemnification.**

**TO THE FULLEST EXTENT PERMITTED BY LAW, VENDOR SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS OWNER, AND ITS AFFILIATES, AND THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, SUCCESSORS AND ASSIGNS, FROM AND AGAINST ALL CLAIMS, DAMAGES, LOSSES, LIABILITIES, JUDGMENTS, SETTLEMENTS AND EXPENSES, INCLUDING BUT NOT LIMITED TO ATTORNEYS' FEES, PROFESSIONAL FEES AND RELATED COSTS, INCURRED BY OWNER, RELATING TO THE WORK PURCHASED BY OWNER AS WELL AS VENDOR'S PERFORMANCE UNDER THIS LOA. VENDOR SHALL NOT ENTER INTO ANY SETTLEMENT WITHOUT OWNER'S WRITTEN CONSENT. TO THE FULLEST EXTENT PERMITTED BY LAW, VENDOR SHALL INDEMNIFY, DEFEND, AND HOLD HARMLESS OWNER, AND ITS AFFILIATES, AND THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, SUCCESSORS AND ASSIGNS, FROM AND AGAINST ALL CLAIMS, DAMAGES, LOSSES, LIABILITIES, JUDGMENTS, SETTLEMENTS AND EXPENSES, INCLUDING BUT NOT LIMITED TO ATTORNEYS' FEES AND RELATED COSTS, ARISING OUT OF OR RESULTING FROM CLAIMS THAT THE WORK, OR ANY PART THEREOF, INFRINGES ON THE INTELLECTUAL PROPERTY OF A THIRD PARTY, OR CONSTITUTES AN UNAUTHORIZED USE OF TRADE SECRETS OR ANY OTHER PROPRIETARY RIGHTS IN CONNECTION WITH THE PERFORMANCE OF THIS AGREEMENT.**

Owner and or Vendor seeking indemnification hereunder shall promptly give Notice in reasonable detail to the party obligated to provide indemnification of its receipt or knowledge of a claim, demand or suit for which it asserts it is entitled to indemnification hereunder. The party obligated to provide indemnification shall at its expense promptly conduct the defense of such claims, demands or causes of action, including any litigation or other proceeding related thereto; provided, however, that such party shall not settle any such litigation or arbitration without the consent of the party seeking indemnification unless the settlement involves only the payment of money to be made by the party obligated to provide indemnification or in the case of Owner, its ability to commercially

use the work. The party seeking indemnification may be represented by and actively participate through its own Counsel (at its own expense) in any such litigation if it so desires. The party seeking indemnification shall cooperate with the party obligated to provide indemnification in its defense by providing access to its records and employees as may reasonably be requested.

**10. Termination.**
Notwithstanding anything to the contrary herein, either party, to this LOA upon thirty (30) USA business days may terminate this LOA by providing notice to the other party. Owner shall pay for services rendered only to the date of notice and shall not be responsible for any lost business opportunities, profit loss or business operation loss of Vendor, severance, or termination fees for labor, equipment rentals, or other subconsultant and or Third Party agreements, restocking charges, and or termination of any lease agreements or other agreements necessary to comply with a Notice of Termination.

**11. Assignment.**
All of the terms and conditions of this LOA shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and permitted assigns. This LOA, and the rights and obligations hereunder, may not be assigned or delegated to any other person or entity by the Vendor without the express written consent of the Owner. Owner may, with or without prejudice, assign this LOA.

**12. Notice.**

All Notices or other communications required under this LOA shall be served in writing and shall be deemed duly delivered when sent by a recognized and legally acceptable method of delivery service. All Notices shall be sent to the respective addresses of the Parties herein. Vendor shall direct all communications to Owner's representative identified herein. All communication between Owner and Vendor shall be through Owner's Representative Andy Burden.

**13. Order of Precedence.**
In case of a difference in information provided to Vendor between drawings and specifications, the specifications shall govern. In case of a discrepancy either in the figures, in the drawings, or in the specifications, the matter shall be promptly submitted to the Owner's Representative, who shall make a determination in writing as to order of precedence. Any adjustment by Vendor without such a determination shall be at Vendor's risk and expense.

**14. Books and Records.**
Vendor shall keep accurate records and utilize standard professional accounting procedures to perform and or manage Owner's Agreement and shall maintain said records for five (5) year from the expiration or termination of this Agreement.

**15. Term & Governing Law.**
The term of this Agreement shall commence upon signature of both Parties below and shall continue in full force until approved completion of Exhibit "A". This LOA shall be interpreted in accordance with the laws of the State of Oklahoma and Vendor hereby grants personal jurisdiction, forgoing any claims of hardship and venue to the State of Oklahoma for all purposes hereunder. If any provision of this LOA shall be determined to be invalid, void, or unenforceable, the remaining provisions of this LOA shall remain in full force.

**16. Definitions.**
The following definitions shall govern this Letter of Agreement:

1. Change Order is a written document (Request for Quotation and Request for Information) codifying deletion, modification or additional Work and which shall include any schedule or monetary relief and shall be incorporated into and governed by this LOA through the issuance from time to time of an Amendment.

2. Compensation is any value, monetary and otherwise, that Owner agrees to give to Vendor to perform the "Work".

3. Contract Milestone Schedule is Vendor's schedule of the performance of the "Work".

4. Letter of Agreement "LOA" also known as Agreement is the binding contract between Vendor and Mansion Entertainment Group, LLC to perform the Work including all governing documents referenced herein.

5. Notice is a written notification transmitted to the designated address and recipient identified in this LOA.

6. Owner is Mansion Entertainment Group, LLC whose office is located at 189 Expressway Lane, Branson, Missouri, USA 65616.

7. Owner's Designated Representative is an individual chosen to represent Owner during the performance of certain specific tasks under this LOA.

8. Parties are Owner and Vendor and the plural and singular are one on the same.

9. Project is the American Heartland Themepark in Vinita, Oklahoma USA.

10. Scope of Work is the "Work" or "work" to be performed by Vendor under this LOA and all attachments herein.

11. Schedule of Values is the approved compensation for approved portions of the Work.

12. Vendor is Technifex, Inc. as the primary independent contractor hired to perform the Work of this LOA and to bear sole responsibility for all Subconsultants hired by Vendor to perform all work performed under this LOA.

13. Vendor's Designated Person is an individual chosen to represent Vendor during the performance of certain specific tasks under this LOA.

14. Subconsultant is any Third Party hired by Vendor to perform a portion of the work.

15. Work (also known as work or Scope of Work) is all Vendor's obligations including but not limited to Scope of Work, Attachments, Exhibits, Definitions, Contract Milestone Schedule, Compensation, Schedule of Values, Change Orders, RFI's, Specifications, drawings, charts, analysis, reports etc. necessary to complete the Project.

**17. Entire Agreement.**

This LOA represents the entire agreement between the Owner and Vendor and supersedes any prior understandings, promises, negotiations, discussions whether oral or written. This LOA may be modified only in writing and when signed by both Parties. The individual signing below acknowledges their legal capacity to enter this LOA.

**Mansion Entertainment Group, LLC**

DocuSigned by:
Gene Bicknell

Name: Gene Bicknell,

Title: Owner

Date: 12/11/2023

**Technifex, Inc.**

[signature]

Name: John Polk

Title: Sr. Vice President – Executive Producer

Date: 9-27-23

**Letter of Agreement**

**Technifex, Inc.**
**EXHIBIT "A"**
**SCOPE OF WORK**
**Schematic Design Special Effects and Mock Up**
**SCOPE OF WORK**

Technifix will provide schematic design for special effects including a Hologauze screen mock-up, BIM management, engineering provided by licensed P.E.'s as appropriate, drawings for special effects, facility impact information and ROM estimates.

Vendor shall provide the following Deliverables in accordance with the Contract Milestone Schedule herein.

**SD Phase**
Vendor will support the project with Facility Impact information, space allocations and creative support for the Special Effects in the entertainment venues. We will set up a curved screen for a rear-projected mockup of the Hologauze scrim material.

**Key Project Assumptions**

- Design, Engineering and Mockup will take place at TFX's Valencia, CA facility.
- Meetings will be virtual with occasional travel to Pasadena for in-person meetings.
- Any other Domestic or International Travel will be funded separately.
- TFX will provide deliverables to be integrated by MEG.
- BIM management is provided by MEG.
- All deliverables will be electronic.

**Venues and Scope of Work**

- Nighttime Spectacular
  - Water features and fountains
  - Water screens
  - Flame effects
- Boardwalk Amphitheatre
  - Water features and fountains
- Land Ho
  - Water effects (cannon blasts, bullet hits, etc)
  - Steam effects
  - Flame effect
- First Stories
  - Campfire with steam
  - Other steam effects
  - Hologauze Illusions
- Will Rodgers
  - Hologauze Illusions

  - Possibility of other effects

**Schematic Design Deliverables**

- Preliminary equipment list
- Rough 3D Models (as required)
- Facility Impact Matrix
- Space allocations
- Preliminary pump room layouts
- Attend weekly meetings
- Attend Design Charrettes
- ROM Equipment Estimate

**Mockup Deliverables**

- Assembly and rigging of curved tube frame
- Lashing and tensioning of 10' x 20' Hologauze fabric
- Rigging of up to (2) projectors and cabling

**Schematic Design Exclusions**

- Anything not listed in the above
- Analyses Including: HA, FEA, FMEA.
- Facility engineering
  - Mechanical
  - Electrical
  - Structural
- BIM Management
- Travel and Expenses

**Mockup Exclusions**

- Projector rental
- Media
- Travel and Expenses

**-END-**

Letter of Agreement

**Technifex**

**EXHIBIT "B"**
**COMPENSATION & SCHEDULE**

**Agreement Price:**

Vendor shall provide all labor, services, materials, and resources necessary to complete Exhibit "A" and Exhibit "B" for the Not-to-Exceed sum of **One Hundred Sixteen Thousand Nine Hundred Four Dollars** inclusive of any and all taxes **($116,904 USD)** exclusive of approved reimbursables in accordance with the guidelines herein. Vendor's proposal FX-Schematic Design Proposal R1 dated **September 5**, 2023, 5 pages, as modified herein, is incorporated and binding upon Vendor for complete performance of Exhibit "A". Vendor's quote is superseded in its entirety by this LOA.

| Compensation | Fees USD |
|---|---|
| Design & Engineering | **79,070** |
| Mockup | **37,834** |
| **Total** | **116,904** |

| Payment Schedule | Monthly |
|---|---|
| August | **14,613** |
| September | **14,613** |
| October | **29,226** |
| November | **58,452** |

**Rates:**

| Title | Hourly USD |
|---|---|
| Project Administration | **Varies** |
| Draftsman | **135** |
| V.P. of Engineering | **210** |
| Sr. Vice President | **225** |

Vendor shall bill bimonthly in accordance with Paragraph 2 of this LOA. Payment shall be Net 30 upon receipt by Owner's Designated Representative of a correctly rendered invoice and timesheet. Timesheet shall include name, title, rate and hours per individual. Project Administration staff shall be identified by rate and title on each invoice as appropriate. This agreement is retroactive to August 1, 2023.

**Change Order, Travel & Reimbursable Expenses:**
If change orders for additional work are priced as Time and Material, the base rates above shall apply. Additionally, airfare for approved Project site visits within the contiguous United States is unrestricted economy class. Per Diem shall be based upon established IRS rates per applicable city. Travel time shall not be reimbursed. All travel shall be billed at direct cost(s). Original receipts are required.

**Reimbursable Guidelines for Change Orders billed as T&M:**
Owner shall reimburse Vendor for any expenses of Vendor, at direct cost, associated with the Project including, but not limited to: mileage, local ground and air transportation, hotel and per diem expenses, airport taxi, airport parking, and applicable departure taxes, communications, postage, long distance telephone, teleconferencing service charges, photocopying, printing reproductions, and reprographic

DocuSign Envelope ID: 5C08B047-8348-47DA-BEDB-4303B1179836

charges if hard copy drawings are not provided by Owner as required to produce required documentation. Invoices must include original receipts for all reimbursables. All reimbursable expenses including travel must be pre-approved by Owner in writing. For change orders priced as fixed fee, no reimbursables shall be allowed and hourly rates shall not apply.

| Contract Milestone Schedule | Due Date |
|---|---|
| Commence | Aug. 1, 2023 |
| SD Commence | Sept. 1, 2023 |
| Facility Impact Inputs 100% | Oct. 13, 2023 |
| SD Deliverable as Complete | Nov. 10, 2023 |
| *This is a follow-on MEG contract. Vendor has been paid for all services performed through July 31, 2023. If any additional fees are due prior to Aug 1, 2023, Vendor shall bill separately under prior agreement. | |

**-END-**

DocuSign

## Certificate Of Completion

Envelope Id: 5C08B047834847DABEDB4303B1179836 | Status: Completed

Subject: Complete with DocuSign: Technifex SD Special Effects - Letter of Agreement (09-29-2023).pdf

Source Envelope:

| | | |
|---|---|---|
| Document Pages: 12 | Signatures: 1 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | Kimberly Endy |
| AutoNav: Enabled | | 25220 Hancock Ave |
| EnvelopeId Stamping: Enabled | | Suite 440 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | Murrieta, CA 92562 |
| | | kendy@lehrercumming.com |
| | | IP Address: 99.98.211.135 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original<br>11/8/2023 11:10:21 AM | Holder: Kimberly Endy<br>kendy@lehrercumming.com | Location: DocuSign |

| Signer Events | Signature | Timestamp |
|---|---|---|
| O Gene Bicknell<br>lwilhite@themansiontheatre.com<br>Security Level: Email, Account Authentication (None) | DocuSigned by:<br>O Gene Bicknell<br>C851FC49DD334CA...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 4.35.179.46 | Sent: 11/8/2023 11:16:16 AM<br>Resent: 11/8/2023 1:59:52 PM<br>Resent: 12/7/2023 12:15:53 PM<br>Viewed: 12/11/2023 1:18:49 PM<br>Signed: 12/11/2023 1:19:18 PM |

**Electronic Record and Signature Disclosure:**
Accepted: 11/2/2023 10:57:31 AM
ID: 68a8a454-8e67-46d2-8158-6561ba830447

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Kristen Pyle<br>kpyle@cumming-group.com<br>Vice President<br>Security Level: Email, Account Authentication (None) | COPIED | Sent: 12/11/2023 1:19:19 PM |

**Electronic Record and Signature Disclosure:**
Not Offered via DocuSign

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 11/8/2023 11:16:16 AM |
| Envelope Updated | Security Checked | 11/8/2023 1:59:52 PM |
| Certified Delivered | Security Checked | 12/11/2023 1:18:49 PM |
| Signing Complete | Security Checked | 12/11/2023 1:19:18 PM |

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Completed | Security Checked | 12/11/2023 1:19:19 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Cumming Management Group (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Cumming Management Group:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: ADaniel@fortpointpm.com

**To advise Cumming Management Group of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at ADaniel@fortpointpm.com and in the body of such request you must state: your previous email address, your new email address. We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Cumming Management Group**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to ADaniel@fortpointpm.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Cumming Management Group**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to ADaniel@fortpointpm.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Cumming Management Group as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Cumming Management Group during the course of your relationship with Cumming Management Group.

Message

**From**: Kimberly Endy via DocuSign [dse@docusign.net]
**Sent**: 12/11/2023 3:16:18 PM
**To**: O Gene Bicknell [lwilhite@themansiontheatre.com]
**Subject**: Completed: Complete with DocuSign: ADG Blatt - G802-2017 Amendment No. 01 (Staff Housing) - 10 12 2023 - F...
**Attachments**: ADG Blatt - G802-2017 Amendment No. 01 (Staff Housing) - 10 12 2023 - Final.pdf; Attachment F - Hourly Billing Rates.pdf; Summary.pdf

CUMMING

Your document has been completed

VIEW COMPLETED DOCUMENTS

**Kimberly Endy**
kendy@lehrercumming.com

All parties have completed Complete with DocuSign: ADG Blatt - G802-2017 Amendment No. 01 (Staff Housing) - 10 12 2023 - F....

Hi Larry,

Attached please find ADG Blatt Amendment No. 1 for execution.

Let me know if you have any questions.

Regards,
Kim Endy

Powered by DocuSign

**Do Not Share This Email**
This email contains a secure link to DocuSign. Please do not share this email, link, or access code with others.

**Alternate Signing Method**
Visit DocuSign.com, click 'Access Documents', and enter the security code:
9F185BC2E6334C6DBB97A63745A7C6FF1

**About DocuSign**
Sign documents electronically in just minutes. It's safe, secure, and legally binding. Whether you're in an office, at home, on-the-go -- or even across the globe -- DocuSign provides a professional trusted solution for Digital Transaction Management™.

**Questions about the Document?**
If you need to modify the document or have questions about the details in the document, please reach out to the sender by emailing them directly.

**Stop receiving this email**
Report this email or read more about Declining to sign and Managing notifications.

If you are having trouble signing the document, please visit the Help with Signing page on our Support Center.

Download the DocuSign App

This message was sent to you by Kimberly Endy who is using the DocuSign Electronic Signature Service. If you would rather not receive email from this sender you may contact the sender with your request.

# AIA® Document G802® – 2017

## Amendment to the Professional Services Agreement

**PROJECT:** *(name and address)*
Lazy Hawk RV Park and Campground
Vinita, Oklahoma

**AGREEMENT INFORMATION:**
Date: August 29, 2023

**AMENDMENT INFORMATION:**
Amendment Number: 1

Date: October 12, 2023

**OWNER:** *(name and address)*
Mansion Entertainment Group,LLC
189 Expressway Lane,
Branson, Missouri 65616

**ARCHITECT:** *(name and address)*
ADG, PC
920 West Main Street
Oaklahoma City, Oklahoma 73106

The Owner and Architect amend the Agreement as follows:

To add the Services specified below to the existing Scope of Services.

1. Design Charette to discuss and explore planning and design concepts.
2. Provide Master Planning documents showing staff housing to accommodate the following:
   a. 2000 staff members served in 1000 two-bedroom units.
   b. Parking to support the staff members, the quantity of parking to be confirmed with Owner during the Master Planning effort.
   c. Identify and document amenities which will support the staff housing complex. Amenities may include but not be limited to the following:
      i. Centralized mail service / distribution location.
      ii. Exterior green space for use by the residents of the staff housing.
      iii. Walking paths and circulation
      iv. Considerations where appropriate for flood plain activation
   d. Master plan of the area development within and immediately adjacent to the staff housing complex.
   e. New multi-purpose building including but not limited to the following:
      i. Preview Center prior to park opening.
      ii. Support building with flexible use.
      iii. Temporary Office Space for Staff Housing administration.
      iv. Dance rehearsal space for Theme Park entertainment.

The Architect's compensation and schedule shall be adjusted as follows:

Compensation Adjustment:
The Architect shall be compensated on an hourly basis per Attachment F of the original Agreement (Hourly Billing Rates), attached hereto, up to a not to exceed amount of $24,000.00.

Schedule Adjustment:
N/A.

AIA Document G802 – 2017. Copyright © 2000, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 02:41:59 ET on 10/12/2023 under Order No.2114463019 which expires on 09/02/2024, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:** (3B9ADA42)

DocuSign Envelope ID: D41C965C-F08A-469A-A60C-6AAAD4FE698A

**SIGNATURES:**

| | |
|---|---|
| ADG, PC | Mansion Entertainmment Group,LLC |
| ARCHITECT *(Firm name)* | OWNER *(Firm name)* |
| | DocuSigned by: Gene Bicknell |
| SIGNATURE | SIGNATURE |
| ANTHONY J. BLATT V.P. ~~Gene Bicknell, Founder~~ #3765 | Gene Bicknell, Owner |
| PRINTED NAME AND TITLE | PRINTED NAME AND TITLE |
| 10.12.2023 | 12/11/2023 |
| DATE | DATE |

AIA Document G802 – 2017. Copyright © 2000, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 02:41:59 ET on 10/12/2023 under Order No.2114463019 which expires on 09/02/2024, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (3B9ADA42)

DocuSign Envelope ID: D41C965C-F08A-469A-A60C-6AAAD4FE698A

ADG | BLATT architects

# 2023 Rate Sheet

| Group | Description | Billing Rate ($/hr) | |
|---|---|---|---|
| Architecture | Architectural BIM Specialist | $ | 90.00 |
| | Intern Architect I | $ | 100.00 |
| | Intern Architect II | $ | 105.00 |
| | Intern Architect III | $ | 115.00 |
| | Architect I | $ | 130.00 |
| | Architect II | $ | 135.00 |
| | Architect III | $ | 150.00 |
| | Project Manager | $ | 155.00 |
| | Senior Project Manager | $ | 190.00 |
| | Director of Architecture | $ | 245.00 |
| Construction Administration | Construction Administrator I | $ | 85.00 |
| | Construction Administrator II | $ | 95.00 |
| | Construction Administrator III | $ | 110.00 |
| | Director of Construction Administration Services | $ | 135.00 |
| Design | Building Designer | $ | 125.00 |
| | Director of Design | $ | 290.00 |
| Urban Design / Planning | Landscape Architect | $ | 145.00 |
| | Planner | $ | 160.00 |
| Interiors | Interior Designer I | $ | 90.00 |
| | Interior Designer II | $ | 115.00 |
| | Interior Designer III | $ | 135.00 |
| | Director of Interior Design | $ | 160.00 |
| Engineering | Civil BIM Specialist | $ | 100.00 |
| | Mechanical Designer I | $ | 100.00 |
| | Mechanical Designer II | $ | 125.00 |
| | Mechanical Designer III | $ | 150.00 |
| | Mechanical Engineer I | $ | 125.00 |
| | Mechanical Engineer II | $ | 150.00 |
| | Mechanical Engineer III | $ | 175.00 |
| | Civil Engineering Manager | $ | 175.00 |
| | Director of Engineering | $ | 240.00 |
| Program Management | Construction Observer I | $ | 100.00 |
| | Construction Observer II | $ | 105.00 |
| | Construction Observer III | $ | 140.00 |
| | Project Manager I | $ | 90.00 |
| | Project Manager II | $ | 125.00 |
| | Project Manager III | $ | 160.00 |
| | Project Manager IV | $ | 185.00 |
| | Director of Program Management | $ | 215.00 |
| Specifications | Specification Writer I | $ | 100.00 |
| | Specification Writer II | $ | 110.00 |
| Support | Office Coordinator | $ | 70.00 |
| | Student Intern | $ | 70.00 |
| | Business Manager | $ | 100.00 |
| | Project Coordinator | $ | 105.00 |
| | Marketing Coordinator | $ | 110.00 |
| | Project Controller | $ | 120.00 |
| | Marketing Manager | $ | 130.00 |
| | Project Resource Specialist | $ | 145.00 |
| | Director of Marketing | $ | 160.00 |
| | Director of Finance & Administration | $ | 165.00 |
| | Managing Partner | $ | 250.00 |
| | President/CEO | $ | 300.00 |
| | Expert Testimony | $ | 370.00 |

* Rates subject to change at beginning of new calendar year

DocuSign

## Certificate Of Completion

Envelope Id: D41C965CF08A469AA60C6AAAD4FE698A
Status: Completed
Subject: Complete with DocuSign: ADG Blatt - G802-2017 Amendment No. 01 (Staff Housing) - 10 12 2023 - F...
Source Envelope:

| | | |
|---|---|---|
| Document Pages: 3 | Signatures: 1 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | Kimberly Endy |
| AutoNav: Enabled | | 25220 Hancock Ave |
| EnvelopeId Stamping: Enabled | | Suite 440 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | Murrieta, CA 92562 |
| | | kendy@lehrercumming.com |
| | | IP Address: 99.98.211.135 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original<br>11/8/2023 1:50:27 PM | Holder: Kimberly Endy<br>kendy@lehrercumming.com | Location: DocuSign |

| Signer Events | Signature | Timestamp |
|---|---|---|
| O Gene Bicknell<br>lwilhite@themansiontheatre.com<br>Security Level: Email, Account Authentication (None) | DocuSigned by:<br>O Gene Bicknell<br>C851FC49DD334CA...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 4.35.179.46 | Sent: 11/8/2023 1:52:37 PM<br>Resent: 12/7/2023 11:58:35 AM<br>Viewed: 12/11/2023 1:14:12 PM<br>Signed: 12/11/2023 1:16:12 PM |

**Electronic Record and Signature Disclosure:**
Accepted: 11/2/2023 10:57:31 AM
ID: 68a8a454-8e67-46d2-8158-6561ba830447

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Kristen Pyle<br>kpyle@cumming-group.com<br>Vice President<br>Security Level: Email, Account Authentication (None) | COPIED | Sent: 12/11/2023 1:16:14 PM |

**Electronic Record and Signature Disclosure:**
Not Offered via DocuSign

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 11/8/2023 1:52:37 PM |
| Certified Delivered | Security Checked | 12/11/2023 1:14:12 PM |
| Signing Complete | Security Checked | 12/11/2023 1:16:12 PM |
| Completed | Security Checked | 12/11/2023 1:16:14 PM |

| Payment Events | Status | Timestamps |
| --- | --- | --- |

**Electronic Record and Signature Disclosure**

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Cumming Management Group (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Cumming Management Group:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: ADaniel@fortpointpm.com

**To advise Cumming Management Group of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at ADaniel@fortpointpm.com and in the body of such request you must state: your previous email address, your new email address. We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Cumming Management Group**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to ADaniel@fortpointpm.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Cumming Management Group**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to ADaniel@fortpointpm.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Cumming Management Group as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Cumming Management Group during the course of your relationship with Cumming Management Group.