IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OKLAHOMA

O. GENE BICKNELL,

Plaintiff,

-vs- Case No. 25-cv-383-SH

RICHARD M. SILANSKAS, JR.,
LARRY K. WILHITE and
STEPHEN D. HEDRICK,

Defendants.

VIDEO DEPOSITION OF JEFF WATTS

TAKEN ON BEHALF OF THE DEFENDANTS

ON AUGUST 12, 2026, AT 9:06 A.M.

IN TULSA, OKLAHOMA

EXHIBIT
Q

REPORTED BY: Karen Dauphin Albert, CSR, RPR

APPEARANCES

On behalf of the PLAINTIFF

Sagar K. Ravi
Rachel Peltzer
Michael Nadel (Via Zoom)
Theresa Babendreier (Via Zoom)
McDERMOTT WILL & SCHULTE
500 North Capitol Street, N.W.
Washington, D.C. 20001
205.756.8000
mnadel@mcdermottlaw.com
sravi@mcdermottlaw.com
rpeltzer@mcdermottlaw.com

On behalf of the DEFENDANT LARRY K. WILHITE

Deric J. McClellan
CROWE DUNLEVY
222 North Detroit Avenue, Suite 600
Tulsa, Oklahoma 74120
918.592.9800
chris.davis@crowedunlevy.com
deric.mcclellan@crowedunlevy.com

Galen N. Thorp
CROWE DUNLEVY
Braniff Building
324 North Robinson Avenue, Suite 100
Oklahoma City, Oklahoma 73102
galen.thorp@crowedunlevy.com

On behalf of the DEFENDANT STEPHEN K. HEDRICK

Jennifer Jackson
LAW OFFICE OF LIZ GEORGE
8101 South Walker, Suite F
Oklahoma City, Oklahoma 73139
405.689.5502
jennifer@georgelawok.com

Also present: Benedict Ovel, Videographer

A Good morning.

**Q Please state your name.**

A Jeff Watts.

**Q You are being offered as an expert witness in this case. Have you ever served as an expert witness before?**

A I have not.

**Q What is your relevant field of expertise?**

A Law enforcement, investigations, leadership, training, and private investigations.

**Q And which of those expertises are you using for purposes of this case?**

A All of them.

**Q Please state the opinions that you have formed and intend to offer as an expert witness at trial.**

A I will need to see my expert report, please.

**Q We'll get to the report in a minute. I would just like you to state your general understanding of the opinions you're offering as an expert in this case.**

MR. RAVI: Objection. I think the witness has requested his report.

MR. THORP: We'll get to it.

that I was retained as an expert.

**Q Did you serve in another role before being retained as a testifying expert?**

A Yes.

**Q What was that role?**

A As an investigator.

**Q When were you retained as an investigator?**

A January of this year, 2026.

**Q And at some point in the process, your role changed to being a testifying expert? Is that what you're explaining to me?**

A Yes.

**Q What were you asked to do that led to you forming the opinions contained in your expert report?**

MR. RAVI: Objection.

THE WITNESS: I was asked to investigate the American Heartland Project involving Mr. Bicknell, Mr. Silanskas, Mr. Wilhite, and Mr. Hedrick and to form an opinion on that investigation.

**Q (By Mr. Thorp) The lawsuit had already been filed at this point; right?**

A It had.

**Q So you knew the facts and narratives that**

A Well, I'm thinking how to best answer the question. I'm sorry for the delay.

**Q No problem.**

A But I don't want to be inaccurate. It was as I was coming to conclusions that the discussion of me providing my expert opinion began to emerge. I can't give you an exact timeline.

**Q Separate from being offered as an expert witness, are you also expecting to offer testimony as a fact witness in this case?**

A If called to do so, I will.

**Q Are you familiar with the distinction between a fact and expert witness?**

A To some extent, yes.

**Q What's your understanding of the distinction?**

MR. RAVI: Objection.

THE WITNESS: That an expert witness is testifying to their opinions based on their training and experience and background, where a fact witness is testifying to the facts that they uncovered during the investigation.

**Q (By Mr. Thorp) If I further explained that a fact witness is generally limited to their personal knowledge and observations, does that fit**

question. Are you asking if I was involved in investigating the --
**Q The American Heartland Project.**
A Prior to --
**Q For any entity before January of 2026.**
A Okay. Thank you. No, I was not.
**Q And you were retained by McDermott, Will & Schulte on behalf of the Plaintiff in this case; correct?**
A Correct.
(Exhibit 106 marked for identification)
**Q (By Mr. Thorp) I'll introduce an exhibit as Wilhite Exhibit 106. Do you recognize this document?**
A I do.
**Q Does this document list all of the documents that you reviewed to form your opinions stated in your report?**
A It does.
**Q Did you review any documents other than those listed here?**
A I don't recall if there were other documents that I reviewed related to this investigation. These are documents that I know I reviewed for sure.

A Okay.
**Q Is that right?**
A Yes.
**Q But the second half seems to go farther. You say, "That's consistent with a pattern of leveraging a position of trust to gain advantage."**
**Did you consider the alternative that Wilhite made statements reinforcing Bicknell's belief in the messages because Wilhite, too, believed the messages?**
MR. RAVI: Objection.
THE WITNESS: Yes.
**Q (By Mr. Thorp) Did you discount that alternative possibility?**
MR. RAVI: Objection.
THE WITNESS: I -- yeah. I guess I did.
**Q (By Mr. Thorp) On what basis did you discount that possibility?**
A That it was the totality of every -- everything that went into the investigation, not just that particular statement in a box by itself.
**Q So sitting here today, you disbelieve -- you do not believe that Larry Wilhite believed the Today's Word messages?**
MR. RAVI: Objection.

THE WITNESS: I don't know what he believed.

**Q (By Mr. Thorp) But you discount the possibility that he believed the messages as not credible?**

MR. RAVI: Objection.

THE WITNESS: Correct.

**Q (By Mr. Thorp) The second half of this sentence here, "Consistent with a pattern of leveraging a position of trust," depends on Larry Wilhite not believing the Today's Word messages; right?**

MR. RAVI: Objection.

**Q (By Mr. Thorp) Because if he believed the messages, then reinforcing them, it just flows from his belief, not leveraging a position of trust to take advantage.**

**Right?**

MR. RAVI: Objection.

THE WITNESS: If that were the case, then it would be different, yes.

**Q (By Mr. Thorp) Does your report explain your consideration of the possibility that Larry Wilhite really believed the messages and explained the basis on which you rejected that alternative?**

MR. RAVI: Objection.

THE WITNESS: No.

**Q (By Mr. Thorp) If you look back on page 31 -- I'm going to jump around a little bit. Sorry -- you note that Larry Wilhite claimed to have received Today's Word messages from unknown numbers that changed frequently and appeared random.**

**Right?**

A Yes.

**Q But on page 33, at the top of the page, the second sentence, you say --**

A Top of page what -- I'm sorry?

**Q Yeah. Top of page 33.**

A Yeah.

**Q The end of the second line has a sentence that starts, "Wilhite therefore has produced no evidence of his receipt of the Today's Word messages from unknown numbers and he 'no longer has the original' that he received."**

**Isn't Wilhite's own detailed interrogatory response and testimony evidence that he received the messages from unknown numbers?**

MR. RAVI: Objection.

THE WITNESS: That's his statement, yes.

**Q (By Mr. Thorp) Is it evidence?**

**Kristy Adams that she was tasked with signing some documents, and she would call and get Gene's approval; right?**

A Right.

**Q You don't know that it wasn't Larry's practice to also call and get Gene's approval before he signed or DocuSigned for Gene; right?**

MR. RAVI: Objection.

THE WITNESS: I don't recall what Larry stated during his deposition, if that was addressed or not.

**Q (By Mr. Thorp) So you amended your report to say that Larry began to DocuSign on November 6th; correct?**

**I'm looking at Exhibit 108.**

A Uh-huh.

**Q The second -- well, the first correction.**

A Okay.

MS. PELTZER: Counsel, can we please get a copy?

MR. THORP: Yes. Sorry.

(Exhibit 117 marked for identification)

**Q (By Mr. Thorp) In making this change, were you aware that on November 6th Larry forwarded the DocuSign contract that you're talking about to**

**Gene that morning?**

A I think I've seen this.

**Q This email -- and you probably cited a document confirming that Larry Wilhite DocuSigned this document that night.**

**Isn't this email consistent with Larry getting Gene's permission expressly before signing -- DocuSigning a document?**

MR. RAVI: Objection.

THE WITNESS: Is it -- I'm sorry. Ask the question.

**Q (By Mr. Thorp) Is this document consistent with Larry seeking Gene's permission before DocuSigning on his behalf?**

A Is there a response to it from Mr. Bicknell?

**Q Not that was produced electronically.**

A Okay. I can't say whether it is or not, then.

**Q You found a lot of things consistent, saying to Gene the morning that it's signed, "Gene, here is a contract. Here is what it's for. Please review," is consistent with seeking permission from the boss before signing; right?**

MR. RAVI: Objection.

Q And Mr. Wilhite's counsel focused on asking you questions about when you acted as a lead investigator?
A Yes.
Q Now, you were also involved in supervising cases involving elder exploitation; correct?
A I was.
Q And you were also involved in supervising cases involving fraud; correct?
A I was.
Q Approximately how many elder exploitation and fraud cases were you involved in supervising?
A Elder exploitation, probably ten to 20; fraud cases, thousands.
Q Now, Mr. Wilhite's counsel asked you some questions about whether you considered whether Larry Wilhite was a victim of the fraud in this case.
Do you remember that?
A I do.
Q I think that you answered no. Is that correct?
A Correct.
Q Now, you reviewed Mr. Wilhite's motion to dismiss in this case; correct?
A I did.

CERTIFICATE

STATE OF OKLAHOMA )
) SS:
COUNTY OF OKLAHOMA )

I, Karen Dauphin Albert, Certified Shorthand Reporter within and for the State of Oklahoma, do hereby certify that the witness, JEFF WATTS, was by me first duly sworn to testify the truth, the whole truth, and nothing but the truth, in the case aforesaid; that the above and foregoing deposition was by me taken in shorthand and thereafter transcribed; and that I am not an attorney for nor relative of any of said parties or otherwise interested in the event of said action.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal this 24th day of August, 2026.



Karen Dauphin Albert, CSR, RPR