IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

---

O. GENE BICKNELL,
Plaintiff,
v. Case No.:
RICHARD M. SILANSKAS JR., LARRY 4:25-cv-00383-SEH-
K. WILHITE, and STEPHEN D. SH
HEDRICK,
Defendants.

---

VIDEOTAPED DEPOSITION OF
J. DONALD FANCHER

DATE: Wednesday, August 26, 2026
TIME: 9:05 a.m.
LOCATION: McDermott Will & Schulte LLP
500 North Capitol Street, Northwest
Washington, D.C. 20001
REPORTED BY: Islam Mohamed Abouelfadl
JOB NO.: 8396449

EXHIBIT
U

A P P E A R A N C E S

ON BEHALF OF ON BEHALF OF PLAINTIFF O. GENE BICKNELL:

THERESA M. BABENDREIER, ESQUIRE
RACHEL M. PELTZER, ESQUIRE
MICHAEL S. NADEL, ESQUIRE
McDermott Will & Schulte LLP
500 North Capitol Street, Northwest
Washington, D.C. 20001
tbabendreir@mcdermottlaw.com
rpeltzer@mcdermottlaw.com
mnadel@mcdermottlaw.com
(202) 756-8509

A P P E A R A N C E S (Cont'd)

ON BEHALF OF DEFENDANT LARRY K. WILHITE:

GALEN THORP, ESQUIRE
DERIC J. MCCLELLAN, ESQUIRE
Crowe & Dunlevy, P.C.
222 North Detroit Avenue, Suite 600
Tulsa, OK 74120
galen.thorp@crowedunlevy.com
deric.mcclellan@crowedunlevy.com
(405) 234-3241
(918) 592-9833

ON BEHALF OF DEFENDANT STEPHEN D. HEDRICK:

JENNIFER JACKSON, ESQUIRE (by videoconference)
Liz George & Associates
8101 South Walker, Suite F
Oklahoma City, OK 73139
jennifer@georgelawok.com
(405) 689-5502

provided other than those listed in the section, scope, and assumptions in your report?

A Let me just read through it real quick to make sure. Okay. I'm sorry, could you re-ask the question?

Q Yeah. Did counsel provide you any assumptions to use in forming your opinions other than those stated in paragraphs 14 to 20?

A No, I don't believe so.

Q Let's look at paragraph 17. You were asked to assume "that but for Defendants' alleged conduct, Mr. Bicknell would not have funded the project and the payments detailed in the report would not have been made"; correct?

A Correct.

Q Did you assess the reasonableness of this assumption?

MS. BABENDREIER: Objection.

THE WITNESS: Certainly, looking at the various records and the data within all the information that's been provided here, you can see a pattern, and you can see a trend, but I'm not opining

Q Yeah.
A Okay.
Q So this -- your opinion 3 includes the defendant project payments that you included in opinion 1, and the defendant non-project payments you included in opinion 2; correct?
A Any project payments that were related with the entities, yes, would be in here, as well as non-project payments. Correct.
Q And so for each, as summarized -- as organized here, you include the -- for each defendant, the defendant project payments, which would be amounts included in opinion 1; correct?
A The 2,601,323, correct.
Q And you include for -- broken out for each defendant, the non-project payments that you state in opinion 2?
A That's correct, yes.
Q So as we've already discussed by looking at another chart for opinion 3, the total for Mr. Wilhite is 412,607; correct?
A Correct.

Q And that is a very small fraction of the total paid by Mr. Bicknell that you calculated in opinion 4; correct?

MS. BABENDREIER: Objection.

THE WITNESS: That is a small fraction, yes.

BY MR. THORP:

Q It's less than 1 percent; correct?

A That would be correct, yes.

Q So I'd like to turn to schedule 3. This is your continuing eye exam. The numbers are getting -- the words are getting smaller.

A Okay.

Q So you're on schedule 3, defendant project payments?

A I am, yes.

Q For Larry Wilhite, what is included on the second line of this chart?

A For Larry Wilhite -- well, you'd need to go to 3.1 and 3.2 --

Q Yep.

A -- to see that.

Q Wait -- so for the individual items which are not legible in printed form, so we'll have to come to that in a moment. But from your knowledge of working on this, can you tell me what primarily makes up the payments in -- to Larry Wilhite in schedule 3?

MS. BABENDREIER: Objection.

BY MR. THORP:

Q Is this primarily his salary?

MS. BABENDREIER: Objection.

THE WITNESS: Yeah, it would be helpful if we had this in a different format that we could actually look at.

BY MR. THORP:

Q Okay. I'll -- I think I can put it on the screen for you in a moment, but do you recall off the top of your head what it's primarily made up of?

A It is --

MS. BABENDREIER: Objection.

THE WITNESS: -- primarily his compensation.

BY MR. THORP:

Q So his salary compensation?

A Yes, sir.

Q And that salary was paid by Big Time, and then by Mansion Entertainment Group; correct?

MS. BABENDREIER: Objection.

THE WITNESS: Those were the entities through which his salary was paid, yes.

BY MR. THORP:

Q And in addition to salary, it included some reimbursement of expenses?

A That would be correct, yes.

Q So somewhere around $5,000 sound right?

MS. BABENDREIER: Objection.

THE WITNESS: I'd have to go look at the schedule.

MR. THORP: Okay.

Schedule 3.1. Can you spin it?

(Discussion held off the record.)

MR. THORP: Okay. So for the record, I have saved a -- as a PDF, just the 3.1 excerpt of the document, because it's illegible in print. And so we just have a screen that will allow him to zoom in on schedule 3.1, if that's okay?

MS. BABENDREIER: Okay. Yeah, as long as it's the schedule that he included in his report.
THE WITNESS: Okay.
BY MR. THORP:
Q Okay. So schedule 3 -- just to make sure we're verbalizing as we as we go -- schedule 3.1 is the transaction by transaction items that you include in schedule 3.0 as a summary; correct?
MS. BABENDREIER: Objection.
THE WITNESS: 3.1 and 3.2, yes. They are details that then ultimately are summarized in 3.0.
BY MR. THORP:
Q Okay. So in 3.1, do you see anything for Larry Wilhite personally, other than salary and several thousand dollars in expense reimbursements?
A Well, I'll have to look through the whole thing, because it's quite a number of line items. There's an owner's draw amount in here for Larry on 5/17/2023 in the amount of 2500, so that is not a paycheck nor a reimbursement.
Q Okay. Yes.

A You have some of these that just say "bill payment check." So whether that's a reimbursement or for some other purpose is not clear, like, an expense reimbursement that he encouraged.

Q I think you said encouraged; did you mean incurred?

A Incurred. Thank you, yes. Maybe encouraged. I don't know.

Based upon my review of what's on your pad here, everything outside of the owner's draw for $2,500 is either a paycheck or is stated bill payment/check, or bill payment of some sort.

Q Thanks for your review. So how does Larry's payroll compensation relate to the project?

A Well, Mr. Wilhite, as we know from the depositions and other records in the case, was involved in the project. In fact, I think he was the CEO of the project, so he was involved in the project.

Q But he also remained the general manager of the Mansion Theatre throughout this time period; correct?

A That's my understanding, yes.

BY MR. THORP:

Q Is it your opinion that Mr. Wilhite's compensation was excessive for his role as general manager at the theater?

MS. BABENDREIER: Objection.

THE WITNESS: I'm not opining as to the reasonableness of his compensation.

BY MR. THORP:

Q So you're not opining as to whether Mr. Wilhite received fair compensation for the duties he performed?

MS. BABENDREIER: Objection.

THE WITNESS: I am not.

BY MR. THORP:

Q And for the reimbursement payments to Mr. Wilhite that you noted in schedule 3.1 -- and but, for that, I'm referring to everything other than his salary and the owner's draws, which I believe comes to $5,333.39, if you sum it all up. Is it normal for employees to submit expenses for reimbursements related to business rather than personal expenses?

MS. BABENDREIER: Objection.

CERTIFICATE OF TRANSCRIBER

I, MOLLY MCCOLM, do hereby certify that this transcript was prepared from the digital audio recording of the foregoing proceeding, that said transcript is a true and accurate record of the proceedings to the best of my knowledge, skills, and ability; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this was taken; and, further, that I am not a relative or employee of any counsel or attorney employed by the parties hereto, nor financially or otherwise interested in the outcome of this action.

Molly McColm

MOLLY MCCOLM

Dated: September 10, 2026