IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| O. GENE BICKNELL, | ) | |
| | ) | Case No. 25-cv-00383-SH |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RICHARD M. SILANSKAS JR., | ) | |
| LARRY K. WILHITE, and | ) | |
| STEPHEN D. HEDRICK, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT HEDRICK'S MOTION TO BIFURCATE UNDER RULE 42(b)**

Amelia A. Fogleman
Joseph W. Lang
GABLEGOTWALS
110 N. Elgin Avenue, Suite 200
Tulsa, Oklahoma 74120
(918) 595-4800

Michael S. Nadel
Sagar K. Ravi
Jennifer B. Routh
Rachel M. Peltzer
Theresa M. Babendreier
MCDERMOTT WILL & SCHULTE LLP
500 North Capitol Street, N.W.
Washington, D.C. 20001
(202) 756-8000

Attorneys for Plaintiff O. Gene Bicknell

**TABLE OF CONTENTS**


Introduction ..... 1

Procedural Background ..... 2

Legal Standard ..... 3

Argument in Opposition ..... 4

I. Bicknell is entitled to a jury trial on his unjust enrichment claim against Hedrick. ..... 4

II. Even if the Court decides the unjust enrichment claim, all claims should be tried in a single trial. ..... 9

III. Because the claims against the Defendants are inextricably linked, bifurcation would be inefficient and would prejudice Bicknell. ..... 11

A. The unjust enrichment claim against Hedrick is not easily separable from the claims against Silanskas and Wilhite. ..... 11

B. Convenience and judicial economy favor a single trial. ..... 14

C. A single trial does not risk undue prejudice or jury confusion. ..... 18

Conclusion ..... 20

**TABLE OF AUTHORITIES**

Cases

*Angelo v. Armstrong World Indus.*, 11 F.3d 957 (10th Cir. 1993) .......... 3

*Bianca v. Indep. Sch. Dist. No. 1 of Tulsa Cnty.*, No. 11-cv-636-JHP-FHM, 2012 WL 2327832 (N.D. Okla. June 19, 2012) .......... 19

*Blagg v. Line*, No. 09-cv-0703-CVE-FHM, 2012 WL 90439 (N.D. Okla. Jan. 11, 2012) .......... 16, 17, 19

*Byrd v. Blue Ridge Rural Elec. Co-op., Inc.*, 356 U.S. 525 (1958) .......... 5

*Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962) .......... 6, 7

*Dastgheib v. Genentech, Inc.*, 457 F. Supp. 2d 536 (E.D. Pa. 2006) .......... 6

*Desmond v. Ng*, 552 B.R. 781 (D. Mass. 2015) .......... 7

*Gilfus v. McNally Cap., LLC*, No. 8:18-cv-2941, 2023 WL 7986108 (M.D. Fla. Nov. 17, 2023) .......... 8

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) .......... 1, 5, 6

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) .......... 7

*Guinn v. CRST Van Expedited, Inc.*, No. 09-cv-1198, 2011 WL 2181963 (W.D. Okla. June 2, 2011) .......... 4

*Hottinger Excavating & Ready Mix, LLC v. R.E. Crawford Constr., LLC*, No. 14-cv-994-KMT, 2016 WL 9735771 (D. Colo. May 26, 2016) .......... 8

*Hughes v. Priderock Cap. Partners, LLC,* No. 9:18-CV-80110, 2019 WL 771801 (S.D. Fla. Feb. 21, 2019) .......... 8

*Hughes v. Priderock Cap. Partners, LLC*, 812 F. App'x 828 (11th Cir. 2020) .......... 8

*In re Hassan*, 376 B.R. 1 (Bankr. D. Kan. 2007) .......... 9

*Jain v. Randel Sols.,* LLC, No. 21-2126, 2022 WL 823082 (D. Kan. Mar. 18, 2022) .......... 4

*Lampton Welding Supply Co., Inc. v. Stobaugh*, No. 11-cv-319-TCK-TLW, 2012 WL 5878875 (N.D. Okla. Nov. 21, 2012) .......... 8

*McKinney v. Wulfeck*, No. 4:21-cv-205-JFH-JFJ, 2023 WL 2947546 (N.D. Okla. Apr. 14, 2023) .......... 3, 4, 11, 19

*Medtronic, Inc. v. Intermedics, Inc.*, 725 F.2d 440 (7th Cir. 1984) .......... 6

*Palace Exp. Co. v. Petroleum Dev. Co.*, 316 F.3d 1110 (10th Cir. 2003) .......... 10

*Pauwels v. Bank of N.Y. Mellon Corp.*, No. 19-cv-2313, 2025 WL 3030913 (S.D.N.Y. Oct. 30, 2025) .......... 6, 8

*Randle v. City of Tulsa*, 2024 OK 40, 556 P.3d 612 .......... 12

*Roberson v. PaineWebber, Inc.*, 2000 OK CIV APP 17, 998 P.2d 193 .......... 7, 8

*Roberts v. Sears, Roebuck & Co.*, 617 F.2d 460 (7th Cir. 1980) .......... 9

*Sarber v. Harris*, 1962 OK 4, 368 P.2d 93 .......... 8

*Scott v. City of Tulsa*, 795 F. Supp. 3d 1351 (N.D. Okla. 2025) .......... 3, 4, 11, 16, 17, 19

*SFF-TIR, LLC v. Stephenson*, 262 F. Supp. 3d 1165 (N.D. Okla. 2017) .......... 5, 6, 7, 8

*Telewizja Polska USA, Inc. v. EchoStar Satellite Corp.*, No. 02-C-3293, 2005 WL 2405797 (N.D. Ill. Sept. 28, 2005) .......... 7, 9, 20

*Tri-R Systems, Ltd. v. Friedman & Sons, Inc.*, 94 F.R.D. 726 (D. Colo. 1982) .......... 4

*Tull v. United States*, 481 U.S. 412 (1987) .......... 6

*U.S. CFTC v. Bradley*, No. 05-cv-62-JHP, 2007 WL 666588 (N.D. Okla. Feb. 27, 2007) .......... 4, 15, 17, 18, 19

*Underwood v. Kohl's Dep't Stores, Inc.*, No. 15-cv-730, 2019 WL 13075589 (E.D. Pa. Feb. 14, 2019) .......... 6, 7

*United States ex rel. Bahrani v. Conagra, Inc.*, 624 F.3d 1275 (10th Cir. 2010) .......... 4

*United States v. RaPower-3, LLC*, 294 F. Supp. 3d 1238 (D. Utah 2018) .......... 9

*WEGCO, Inc. v. Griffin Servs., Inc.*, 19 F. App'x 68 (4th Cir. 2001) .......... 5

Constitutional Provisions

U.S. Const. amend. VII .......... 4

Rules

Fed. R. Civ. P. 38 .......... 4

Fed. R. Civ. P. 39 .......... 10

Fed. R. Civ. P. 42 .......... 3

Fed. R. Civ. P. 43 advisory committee's note .......... 16

Fed. R. Civ. P. 45 .......... 15

Fed. R. Evid. 105 .......... 19

Miscellaneous

OUJI 23.10 Cmts. .......... 8

**INTRODUCTION**

The Court should deny the motion by Defendant Stephen D. Hedrick for a separate trial. The evidence against Hedrick cannot be practically separated from the evidence against Defendants Richard M. Silanskas Jr. and Larry K. Wilhite. Judicial economy favors a single trial, and multiple trials would prejudice Plaintiff O. Gene Bicknell.

Hedrick's motion rests on at least three mistaken premises. First, he presumes that because Oklahoma cases refer to unjust enrichment as an equitable claim, Bicknell is not entitled to a jury trial on the claim. But federal law governs the analysis, and the two-part test set forth in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989), dictates that Plaintiff is entitled to have a jury decide his claim against Hedrick.

Second, Hedrick presumes that if the Court were to ultimately decide the unjust enrichment claim, the claim shouldn't be tried before a jury. But the Court could rely on an advisory verdict or, even if not, could reach its decision based on the evidence presented at the jury trial, which would be most efficient.

Third, Hedrick presumes that the claim against him "turns on the compensation he received and the value of his services—not on the religious manipulation, impersonation, and fraud allegations that dominate the claims against Silanskas and Wilhite." (Dkt. No. 198 at 3.) But that is wrong. Bicknell's claim is based primarily on the fraudulent conspiracy in which Hedrick was a participant. Hedrick's work on the American Heartland Project—the reason Hedrick got Bicknell's money—was a product of the fraud scheme he helped to organize and perpetuate. The evidence that will be presented against Silanskas and Wilhite, including the facts concerning the religious messaging at the heart of this case, is also evidence of Hedrick's unjust enrichment. And the evidence of Hedrick's actions will be evidence against Silanskas and Wilhite. The claims

cannot be easily separated. Trying them separately would effectively mean trying them twice. That would thwart judicial economy and prejudice Bicknell.

This case should be decided in a single trial. The Court should deny Hedrick's motion.

## PROCEDURAL BACKGROUND

Bicknell filed this action on July 25, 2025. Bicknell asserted the following claims against Silanskas and Wilhite: Count I for civil RICO; Count II for RICO conspiracy; Count III for civil conspiracy; Count IV for fraud; Count V for deceit; Count VI for constructive fraud; and Count VII for intentional infliction of emotional distress. Bicknell asserted Count VIII for unjust enrichment against Silanskas, Wilhite, *and* Hedrick.

Silanskas answered the Complaint. (Dkt. No. 55.) All eight counts remain in the case against Silanskas. Silanskas has not moved for summary judgment, so all eight claims will go to trial.

Wilhite moved to dismiss. (Dkt. No. 44.) The Court granted the motion as to the RICO counts against Wilhite but denied it as to the remaining six counts. (Dkt. No. 146 at 35.) Thus, the counts for civil conspiracy, fraud, deceit, constructive fraud, intentional infliction of emotional distress, *and* unjust enrichment remain pending against Wilhite. Wilhite has moved for summary judgment on all counts. (Dkt. No. 211.)

Hedrick also moved to dismiss. (Dkt. No. 43.) This Court denied the motion. (Dkt. No. 146 at 31-35.) The unjust enrichment claim remains pending against Hedrick. Hedrick has moved for summary judgment. (Dkt. No. 208.)

Pretrial disclosures are set to be filed November 20, 2026. A jury trial is set for March 1, 2027. Hedrick "moves this Court for a separate trial of the only claim asserted against him." (Dkt. No. 198 at 1.) Bicknell respectfully opposes the motion.

## LEGAL STANDARD

Federal Rule of Civil Procedure 42(b) permits a district court to "order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims" "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). Rule 42(b) grants a district court "broad discretion in deciding whether to sever issues for trial." *Scott v. City of Tulsa*, 795 F. Supp. 3d 1351, 1353–54 (N.D. Okla. 2025) (quoting *Easton v. City of Boulder*, 776 F.2d 1441, 1447 (10th Cir. 1985)).

"But bifurcation should not be 'routinely ordered.'" *Id.* at 1354 (quoting Fed. R. Civ. P. 42 advisory committee's note, 1966 amendment). "[B]ifurcation is improper if the issues are not separable." *Angelo v. Armstrong World Indus.*, 11 F.3d 957, 964 (10th Cir. 1993). Moreover, "[r]egardless of efficiency and separability, … bifurcation is an abuse of discretion if it is unfair or prejudicial to a party." *Id*.

"In determining whether to grant relief, a district court must evaluate the facts and circumstances of the case to determine whether bifurcation would 'favor separation of issues and the issues are clearly separable.'" *Scott*, 795 F. Supp. 3d at 1354 (quoting *Angelo*, 11 F.3d at 964). That showing is Hedrick's to make, because "[t]he burden of establishing that these interests warrant separate trials rests solely on the party seeking bifurcation." *McKinney v. Wulfeck*, No. 4:21-cv-00205-JFH-JFJ, 2023 WL 2947546, at *1 (N.D. Okla. Apr. 14, 2023) (citing *Cox v. Swift Transp. Co. of Ariz., LLC*, No. 18-cv-0117-CVE-JFJ, 2019 WL 3719887, at *4 (N.D. Okla. Aug. 7, 2019)); *see also Scott*, 795 F. Supp. 3d at 1355 (recognizing a presumption that the plaintiff may present his case in the order he chooses).

## ARGUMENT IN OPPOSITION

Bifurcation is the exception, not the rule. *Jain v. Randel Sols.,* LLC, No. 21-2126, 2022 WL 823082, at *1 (D. Kan. Mar. 18, 2022), *quoted in Scott*, 795 F. Supp. 3d at 1354. "Separate trials of claims properly joined is not the usual course." *McKinney*, 2023 WL 2947546, at *1 (quoting *Comeau v. Rupp*, 810 F. Supp. 1127, 1167 (D. Kan. 1992)).

Perhaps for this reason, Hedrick does not cite a single case in which an opposed motion to bifurcate was granted. In *United States ex rel. Bahrani v. Conagra, Inc.*, 624 F.3d 1275 (10th Cir. 2010), the Tenth Circuit affirmed bifurcation because the plaintiff "ultimately agreed with defendants' motion and indeed urged the district court to bifurcate." *Id.* at 1284. In each of the other bifurcation decisions Hedrick cites, the court *denied* the motion to bifurcate. *See U.S. CFTC v. Bradley*, No. 05-cv-62, 2007 WL 666588, at *3-*5 (N.D. Okla. Feb. 27, 2007) (denying one defendant's motion for a separate trial); *Guinn v. CRST Van Expedited, Inc.*, No. 09-cv-1198, 2011 WL 2181963, at *3 (W.D. Okla. June 2, 2011) (denying motion to bifurcate presentation of evidence); *Tri-R Systems, Ltd. v. Friedman & Sons, Inc.*, 94 F.R.D. 726, 728-29 (D. Colo. 1982) (denying motion for separate trials for separate defendants). The same result should follow here. There should be a single trial.

### I. Bicknell is entitled to a jury trial on his unjust enrichment claim against Hedrick.

Hedrick first argues that the unjust enrichment claim against him should be tried separately because "there is no right to a jury trial on unjust enrichment." (Dkt. No. 198 at 3.) Hedrick is wrong. Bicknell *does* have a right to a jury trial on his unjust enrichment claim against Hedrick. The Seventh Amendment ensures that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII; *see also* Fed. R. Civ. P. 38(a) ("The right of trial by jury as declared by the Seventh Amendment to

the Constitution—or as provided by a federal statute—is preserved to the parties inviolate."). "[T]he function assigned to the jury 'is an essential factor in the process for which the Federal Constitution provides.'" *Byrd v. Blue Ridge Rural Elec. Co-op., Inc.*, 356 U.S. 525, 539 (1958) (quoting *Herron v. S. Pac. Co.*, 283 U.S. 91, 95 (1931)). "[T]he federal practice of jury determination of disputed factual issues" takes precedence over contrary state rules. *Id.* at 539-40.

The Seventh Amendment protects a litigant's right to a jury trial if a cause of action is legal in nature and it involves a matter of "private right." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 n.4 (1989). "The right to a jury trial is a constitutional one, so a court must exercise its discretion, wherever possible, to preserve jury trial." *SFF-TIR, LLC v. Stephenson*, 262 F. Supp. 3d 1165, 1234 (N.D. Okla. 2017) (cleaned up) (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959)).

"In diversity cases, although the substantive rights asserted in a claim arise under state law, 'the characterization of that state-created claim as legal or equitable for purposes of whether a right to jury trial is indicated must be made by recourse to federal law.'" *WEGCO, Inc. v. Griffin Servs., Inc.*, 19 F. App'x 68, 73 (4th Cir. 2001) (quoting *Simler v. Conner*, 372 U.S. 221, 222 (1963)). Federal courts view "how state courts would characterize the claims only as persuasive evidence rather than binding upon the Court, because the Seventh Amendment, like some other portions of the Bill of Rights, is not incorporated against the States." *SFF-TIR*, 262 F. Supp. 3d at 1224.

Under *Granfinanciera*, federal courts apply a two-part test to determine whether a claim is legal in nature. First, the court compares the "action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." 492 U.S. at 42 (quoting *Tull v. United States*, 481 U.S. 412, 417–418 (1987)). Second, the court "examine[s] the remedy sought and determine[s] whether it is legal or equitable in nature." *Id.* (quoting *Tull*, 481 U.S. at 417–418). "The second stage of the analysis is more important than the first," *id.*, and therefore receives

greater weight in the analysis, *see, e.g.*, *Tull*, 481 U.S. at 421 ("characterizing the relief sought is '[m]ore important' than finding a precisely analogous common-law cause of action in determining whether the Seventh Amendment guarantees a jury trial"); *SFF-TIR*, 262 F. Supp. 3d at 1199 (recognizing the second part of the *Granfinanciera* test as more important than the first).

Here, the first part of the test weighs in favor of a jury trial right. "The origins of unjust enrichment are both legal and equitable—but more the former." *Medtronic, Inc. v. Intermedics, Inc.*, 725 F.2d 440, 443 (7th Cir. 1984); *see also Pauwels v. Bank of N.Y. Mellon Corp.*, No. 19-cv-2313, 2025 WL 3030913, at *3-*6 (S.D.N.Y. Oct. 30, 2025) (finding an unjust enrichment claim legal); *Underwood v. Kohl's Dep't Stores, Inc.*, No. 15-cv-730, 2019 WL 13075589, at *1 (E.D. Pa. Feb. 14, 2019) ("The first step—comparing Plaintiff's unjust enrichment claim to 18th century actions—weighs in favor of finding this claim to be legal, rather than equitable."). In *Dastgheib v. Genentech, Inc.*, 457 F. Supp. 2d 536 (E.D. Pa. 2006), the court held an unjust enrichment claim to be "legal rather than equitable in nature" because "it is evident that [the plaintiff] is seeking a sum of money equal to the defendant's profit and thus the device of a constructive trust is surplus. [The plaintiff] has never sought to impress a lien on particular property in [the defendant's] hands. He seeks a legal remedy for a legal wrong." *Id.* at 545-46 (cleaned up). This Court should reach the same conclusion.

The second part of the test, which is "more important," also favors a jury trial. *Granfinanciera*, 492 U.S. at 42. Bicknell seeks a money judgment against Hedrick. (Dkt. No. 1 at 66.) "'[W]here an action is simply … for the recovery of a money judgment, the action is one at law.'" *Granfinanciera*, 492 U.S. at 47 n.5 (alteration in original) (quoting *Whitehead v. Shattuck*, 138 U.S. 146, 151 (1891)). Bicknell's request for a money judgment represents classic legal relief. *See id.* at 47-48 (collecting cases holding that requests for money damages are legal in nature); *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 476 (1962) ("Petitioner's contention, as set

forth in its petition for mandamus to the Court of Appeals and reiterated in its briefs before this Court, is that insofar as the complaint requests a money judgment it presents a claim which is unquestionably legal. We agree with that contention."). "[A] claim for a 'determinate sum of money' suggests legal, not equitable, relief to which a jury trial right applies." *Desmond v. Ng*, 552 B.R. 781, 789 (D. Mass. 2015); *SFF-TIR*, 262 F. Supp. 3d at 1232; *Telewizja Polska USA, Inc. v. EchoStar Satellite Corp.*, No. 02-C-3293, 2005 WL 2405797, at *4 (N.D. Ill. Sept. 28, 2005) (finding that plaintiff "has a right to a jury trial as to its unjust enrichment claim"); *Underwood*, 2019 WL 13075589, at *2 ("Applying these cases to the instant matter, the restitution sought here is legal, not equitable, in nature. There is no specifically identified fund or account from which Plaintiff seeks to draw; rather, the Plaintiff seeks recovery from Defendants' assets generally.").

Bicknell does not seek "particular funds or property in the defendant's possession" but rather "to impose personal liability on the defendant." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002). Therefore, the relief Bicknell seeks cannot be held to be equitable. *Id.*; *see also SFF-TIR*, 262 F. Supp. 3d at 1233 (finding the second prong of *Granfinanciera* favored a jury trial because "[i]n this case, the Plaintiffs do not seek, under what they term 'restitution,' a constructive trust or an equitable lien").

Whether that remedy has been characterized as "disgorgement" does not matter. The Supreme Court stated in *Dairy Queen*: "The constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings." 369 U.S. at 477-78; *see also SFF-TIR*, 262 F. Supp. 3d at 1232.

Nor is it controlling that unjust enrichment cases applying Oklahoma law refer to "equity." For one thing, under Oklahoma law, whether a defendant is unjustly enriched *as a result of "alleged fraud"* has been held to be a *jury* question. *Roberson v. PaineWebber, Inc.*, 2000 OK

CIV APP 17, ¶ 16, 998 P.2d 193, 200; *cf. Sarber v. Harris*, 1962 OK 4, ¶ 5, 368 P.2d 93, 95 (stating that an action for money had and received "lies whenever one has the money of another which he, in equity and good conscience, has no right to retain. While it is an action at law triable to a jury, its determination is controlled by principles of equity and fair dealing.").[1] For another, rather than focusing on state court word choice, "[t]he Court instead must evaluate the nature of the remedies that the Plaintiffs seek." *SFF-TIR*, 262 F. Supp. 3d at 1232. "Plaintiff's unjust enrichment claim is a legal claim seeking a legal remedy. Therefore, Plaintiff is entitled to a jury trial." *Hottinger Excavating & Ready Mix, LLC v. R.E. Crawford Constr., LLC*, No. 14-cv-00994-KMT, 2016 WL 9735771, at *5 (D. Colo. May 26, 2016); *see also Pauwels*, 2025 WL 3030913, at *10 (finding Plaintiff "has the right to try his unjust enrichment claim before a jury"); *Gilfus v. McNally Cap., LLC*, No. 8:18-cv-2941, 2023 WL 7986108, at *2 (M.D. Fla. Nov. 17, 2023) ("Given Plaintiff's clarification that the damages being sought are legal in nature, Plaintiff is entitled to a jury trial on his unjust enrichment claim."); *Hughes v. Priderock Cap. Partners, LLC,* No. 9:18-cv-80110, 2019 WL 771801, at *2 (S.D. Fla. Feb. 21, 2019) ("Under the second and most important prong of *Granfinanciera*, Plaintiff's unjust enrichment claim is a legal claim, as it seeks monetary damages, a hallmark of a legal action."), a*ff'd* 812 F. App'x 828, 836 (11th Cir. 2020) ("On part two, Hughes's requested remedy—return of the benefit he conferred on Priderock—was legal in nature.").

---

[1] In his motion for summary judgment, Hedrick appears to characterize Bicknell's claim as one for "money had and received." (Dkt. No. 208 at 17.) That is no help to his argument here. Even in Oklahoma state court, such a claim goes to the jury. *See* OUJI 23.10 Cmts. And "money had and received" has been characterized as a "theory of unjust enrichment." *Lampton Welding Supply Co., Inc. v. Stobaugh*, No. 11-cv-319-TCK-TLW, 2012 WL 5878875, at *1 (N.D. Okla. Nov. 21, 2012).

Hedrick cites three federal cases in support of his jury trial argument. First, he quotes the Seventh Circuit's statement in *Roberts v. Sears, Roebuck & Co.*, 617 F.2d 460 (7th Cir. 1980), that "[r]estitution for the disgorgement of unjust enrichment is an equitable remedy with no right to a trial by jury." (Dkt. 198 at 3.) However, subsequently "the Seventh Circuit rejected *Roberts'* proclamation as mere *obiter dictum*." *Telewizja*, 2005 WL 2405797, at *3 (citing *First National Bank of Waukesha v. Warren*, 796 F.2d 999, 1000 (7th Cir. 1986)). Second, Hedrick relies on *United States v. RaPower-3, LLC*, 294 F. Supp. 3d 1238 (D. Utah 2018), which is not an unjust enrichment case and does not even cite *Granfinanciera*, much less apply the two-part test it prescribes. Moreover, the *RaPower-3* court held that a jury trial was not required because the monetary award sought by the government in that case was "incidental to or intertwined with injunctive relief." *Id.* at 1241. Bicknell will not seek injunctive relief against Hedrick. Third, Hedrick cites *In re Hassan*, 376 B.R. 1 (Bankr. D. Kan. 2007), which *also* does not involve unjust enrichment. Notably, the *Hassan* court found a conversion claim to be a *legal* claim under *Granfinanciera* because the plaintiff "is not seeking to recover the converted property itself, but is only seeking damages for the conversion." *Id.* at 15. Bicknell likewise seeks a money judgment rather than recovery of specific property.

Ultimately *Granfinanciera* and *Great-West* compel rejecting Hedrick's position. Because Bicknell seeks to hold Hedrick personally liable for a money judgment, Bicknell has a Seventh Amendment right to a jury trial on his unjust enrichment claim.

**II. Even if the Court decides the unjust enrichment claim, all claims should be tried in a single trial.**

Even if Hedrick were correct that Bicknell doesn't have the right to have his unjust enrichment claim decided by a jury, that would not support separate trials. Hedrick asserts that "[t]rying the equitable claim against Mr. Hedrick to that same jury, in the same proceeding, would

submit to the jury a claim that belongs to the Court." (Dkt. No. 198 at 1.) That is incorrect. Even if the unjust enrichment claim were for the Court to decide, courts routinely ask juries to render advisory verdicts as to claims on which the court is the finder of fact. *See* Fed. R. Civ. P. 39(c)(1) ("In an action not triable of right by a jury, the court, on motion or on its own … may try any issue with an advisory jury."). This option would be available to the Court here.

Alternatively, the Court could simply decide the unjust enrichment claim itself based on the trial record, supplemented, if needed, by evidence presented outside the jury's presence. Hedrick cites no authority for the proposition that he would be entitled to a *wholly separate trial* if the only claim against him were a non-jury claim—the same claim *also* asserted against Silanskas and Wilhite. Instead, in that circumstance there should be a single trial:

> The strictures of the Seventh Amendment are particularly applicable in a case where, due to the presence of both equitable and legal issues, trial is both to the jury and to the court. In such a situation, when a case involves both a jury trial and a bench trial, any essential factual issues which are central to both must be first tried to the jury, so that the litigants' Seventh Amendment jury trial rights are not foreclosed on common factual issues. Moreover, the court is bound by the jury's determination of factual issues common to both the legal and equitable claims.

*Palace Exp. Co. v. Petroleum Dev. Co.*, 316 F.3d 1110, 1119 (10th Cir. 2003) (quoting *Ag Servs. of Am., Inc. v. Nielsen*, 231 F.3d 726, 730 (10th Cir. 2000)). A single trial would preserve jury trial rights while avoiding duplications in proceedings. A jury would decide the common facts with Hedrick present and participating, and the Court, if it reserves the unjust enrichment claim against Hedrick to itself, would decide that claim on the jury's findings and any additional evidence it receives.

## III. Because the claims against the Defendants are inextricably linked, bifurcation would be inefficient and would prejudice Bicknell.

When evaluating whether bifurcation is appropriate, a court considers (1) whether the issues are separable; (2) the convenience and economic benefit of bifurcation; and (3) whether bifurcation would serve the interest of fairness. *McKinney*, 2023 WL 2947546, at *2. "Each of these factors is significant to the Court's analysis, but the third factor should be afforded particular attention, as it is an abuse of discretion to order bifurcation when doing so would result in prejudice to any party." *Id.*

Regardless of whether the unjust enrichment claim against Hedrick is decided by the jury or by the Court, all claims against all Defendants should be tried and resolved in a single trial.

### A. The unjust enrichment claim against Hedrick is not easily separable from the claims against Silanskas and Wilhite.

The unjust enrichment claim against Hedrick and the claims against Silanskas and Wilhite—including the *same* unjust enrichment claim—"are not so easily separable." *Scott*, 795 F. Supp. 3d at 1354. Indeed, they are inextricably linked.

Hedrick misconstrues the unjust enrichment claim against him, suggesting that it "turns on the compensation he received and the value of his services—not on the religious manipulation, impersonation, and fraud allegations that dominate the claims against Silanskas and Wilhite." (Dkt. No. 198 at 3.) That is wrong. Bicknell has consistently contended that it would be unjust for Hedrick to retain the benefits he received *as a result of Defendants' allegedly fraudulent scheme*. (Dkt. No. 1 ¶¶ 249-251.) In opposing Hedrick's motion to dismiss, Bicknell recounted: "The Complaint details Hedrick's active and willing participation in the campaign of deception to defraud Plaintiff and coerce him into sinking more than $60 million into the design and construction of the American Heartland Theme Park." (Dkt. No. 46 at 1.) Bicknell continued:

"Rather than alert Plaintiff to the fraud or even simply refuse to be part of the scheme and walk away, Hedrick advanced the activities of the criminal enterprise and reaped its benefits, taking at least $1.5 million of Plaintiff's money for himself and his family members." *Id.*

Thus, Hedrick is mistaken when he asserts that "the proof on the unjust enrichment claim against Hedrick is narrow—his role, his compensation, and the value of his services." (Dkt. 198 at 5.) The proof on the unjust enrichment claim includes evidence of Hedrick's participation in the fraudulent conspiracy underlying this case. Hedrick's assertion that his "only alleged wrong is retaining compensation paid for his work" (Dkt. No. 198 at 6) fundamentally mischaracterizes the claim against him. The proof against Hedrick is *not* "narrow and distinct from the fraud case against his co-defendants," *id.* at 3. It is part and parcel of it. Bicknell contends, for example:

- Hedrick supplied Bicknell with false information to support and facilitate the psychological manipulation detailed in the Complaint. (Dkt. No. 1 ¶¶ 5-7, 205.)
- Hedrick knew that Bicknell was making decisions based on communications purportedly from God—i.e., that the campaign of deception was working—but said nothing to Bicknell. *Id.* ¶¶ 75, 84, 91.
- Hedrick falsely portrayed the Project as a feasible and economically sound undertaking to induce Bicknell to inject more money into the Project. *Id.* ¶¶ 68, 75, 76, 208.
- Hedrick knew the information he was providing Bicknell was false. *Id.* ¶¶ 68, 75.

Bicknell will prove these allegations at trial to show that Hedrick has money in his hands that, in equity and good conscience, he should not be allowed to retain. *See Randle v. City of Tulsa*, 2024 OK 40, ¶ 26, 556 P.3d 612, 620 ("unjust enrichment requires … some active wrongdoing on the part of the person against whom recovery is sought such as fraud, abuse of confidence, or

unconscionable conduct").[2] The evidence against Silanskas and Wilhite—which Hedrick calls "an extensive fraud, impersonation, and religious-manipulation case" (Dkt. No. 198 at 5)—will *also* be presented as evidence against Hedrick.

Additionally, the evidence against Hedrick is relevant to the claims against Silanskas and Wilhite. From the outset, Bicknell has alleged that Silanskas and Wilhite conspired with Hedrick to defraud Bicknell. *See, e.g.*, Dkt. 1 ¶ 2 ("From 2021 through 2024, Defendants Richard 'Rick' Silanskas Jr. and Larry Wilhite, assisted by Stephen 'Steve' Hedrick, operated a criminal enterprise that defrauded O. Gene Bicknell … and duped him into sinking his remaining fortune into the attempted development of the 'American Heartland Theme Park' … in Vinita."); *id.* ¶ 5 ("[Silanskas] teamed up with Wilhite. They enlisted Hedrick. And together they embarked on another theme park fraud."); *id.* ¶ 7 ("Silanskas, Wilhite, and Hedrick paid themselves handsomely and otherwise took money out of the Project for themselves and their families."); *id.* ¶ 205 ("As the principal architect of the scheme, Silanskas provided instructions to Wilhite and Hedrick and orchestrated the central fraud involving the religious messaging and the provision of fraudulent information about the Project, which was done by each of Silanskas, Wilhite, and Hedrick."); *id.* ¶ 208 ("Silanskas and Wilhite, and others acting at their direction, including Hedrick, sent Gene by email fraudulent economic forecasting and one or more feasibility studies upon which Gene relied in agreeing to provide funding."). Bicknell will prove these allegations at trial. Bicknell previously told the Court: "Plaintiff named Hedrick as a defendant only as to Plaintiff's unjust enrichment claim, but the Complaint clearly alleges that Hedrick *was* part of the conspiracy." (Dkt. No. 47 at 13 n.4.) The same evidence of Hedrick's role in the conspiracy will be relevant to the

[2] Bicknell's November 4, 2026 opposition to Hedrick's motion for summary judgment will detail some of the evidence Bicknell intends to present at trial.

conspiracy and fraud claims against Silanskas and Wilhite *and* the unjust enrichment claim against all three Defendants.

Evidence that is relevant to both (i) the unjust enrichment claim against Hedrick, and (ii) the conspiracy, fraud, intentional infliction of emotional distress, and unjust enrichment claims against Silanskas and Wilhite, will likely include evidence regarding:

(1) the American Heartland Project, including its origins, leadership, finances (with Bicknell as its sole financial backer), spending, and demise, and each Defendant's role with respect to those matters;

(2) the discovery of the fraud;

(3) the Todays Word messages, as to which Silanskas, Wilhite, and Hedrick collaborated;

(4) the feasibility studies commissioned by Hedrick that were used to defraud Bicknell;

(5) false information about the Project conveyed to Bicknell by all three Defendants; and

(6) the Dream Vision project, the prior theme park fraud on which Silanskas and Hedrick worked together.

The evidence of the conspiracy—to which Hedrick was integral—is highly relevant to the unjust enrichment claim to show that Hedrick wrongfully obtained money from Bicknell. Hedrick, who bears the burden to show that bifurcation is appropriate, makes no substantive contrary argument.

**B. Convenience and judicial economy favor a single trial.**

Hedrick also fails even to address the impact of bifurcation on the Court, third parties, and Bicknell. He asserts only that a separate trial would be more convenient *for him* and avoid "subject[ing] [Hedrick] to substantial expense and burden." (Dkt. 198 at 5.) However, bifurcation

would be far *less* convenient for all trial participants, including Hedrick, and would prejudice Bicknell.

First, while a separate trial against Hedrick might be slightly shorter in duration than a single trial, Hedrick's trial would involve most of the same evidence and witnesses as the trial of the claims against Silanskas and Wilhite. And because Hedrick has agreed to testify at the Silanskas-Wilhite trial voluntarily (Ex. 1 at 2-3), and Wilhite has stated that he would call Hedrick as a witness (Dkt. No. 204 at 1), Hedrick would be attending and testifying at *two* trials instead of one. Further, because of the overlapping evidence and claims, Hedrick's attorneys would be required to monitor the Silanskas-Wilhite trial to stay informed on issues that are also relevant to the Hedrick trial. Thus, it is possible, if not likely, that Hedrick's legal expenses would be *greater* if bifurcation occurs.

Second, two trials would subject *Bicknell* to substantial expense and burden. Not only would he and his attorneys have to attend and participate in two separate, lengthy trials, but Bicknell would also face "additional expenses associated with 'travel and lodging costs for counsel and witnesses, expert witness fees for [his four experts'] two appearances, and preparation of duplicative trial materials.'" *U.S. CFTC*, 2007 WL 666588, at *3. "[A]ny lessening of inconvenience to Defendant [Hedrick] resulting from bifurcation would be offset by an increase in inconvenience to Plaintiff." *Id.*

Third, two trials would prejudice Bicknell because, at a Hedrick-only trial, Bicknell would be unable to compel the in-person attendance in Tulsa of Silanskas and Wilhite, each of whom resides in or near Branson, Missouri, outside of the Court's subpoena power. Fed. R. Civ. P. 45(c)(1). Although both have an incentive to attend and testify at a trial determining their own liability, by the time of trial, neither may be willing to return for a separate trial concerning Hedrick

alone. Bicknell could therefore be forced to present their testimony by deposition rather than examine them in person concerning the same alleged scheme. That difference matters in a case in which the participants' credibility, knowledge, and respective roles are central disputed issues. *See* Fed. R. Civ. P. 43 advisory committee's notes (1996) ("The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition.").

Fourth, Hedrick ignores the increased burden bifurcation would place on the Court and third parties. After Hedrick filed his motion, Bicknell asked whether Hedrick would consent to the Court's consideration of the record from the Silanskas-Wilhite jury trial if there is a separate bench trial of the claim against him. Hedrick said "no." Ex. 1 at 2. Thus, in Hedrick's view, bifurcation would mean two trials with largely the same witnesses and evidence, and all the expense and burden that entails. In addition to requiring Bicknell to present the testimony of Silanskas, Wilhite, and Hedrick in both proceedings (in person or via deposition), bifurcation would require multiple third-party witnesses to testify in both trials. For example, Bicknell may present testimony at both trials from Jeff Watts (former Stillwater Chief of Police, who investigated Defendants), Kristy Adams and Kelly Holman (who worked on the Project), Emily Engle (who handled the transfers of Bicknell's funds), and others. Both Wilhite and Hedrick have identified non-parties Gene McComb and Josh Lee, the mayor of Vinita, as potential witnesses, as well as Tony Blatt, the Project's architect. *Compare* Ex. 2 (Wilhite's initial disclosures) *with* Ex. 3 (Hedrick's initial disclosures). The requirement to testify on the same subject in two separate trials "would impose an unnecessary burden on the witnesses." *Blagg v. Line*, No. 09-cv-0703-CVE-FHM, 2012 WL 90439, at *2 (N.D. Okla. Jan. 11, 2012); *see also Scott*, 795 F. Supp. 3d at 1356 ("[B]ifurcation would result in increased expenses and time consumption. After all, witnesses—including at least both Plaintiffs, both individual Defendants, the dueling police

experts, and any other witnesses with knowledge of the shooting and subsequent investigation—would have to testify at least twice.”).

Bicknell would also need to present his four expert witnesses on two different occasions. Jeff Watts, the former Stillwater Chief of Police, has disclosed opinions regarding Silanskas, Wilhite, *and Hedrick*. Digital forensics expert Joseph Pochron has disclosed opinions regarding Silanskas, Wilhite, *and Hedrick*. Forensic accountant J. Donald Fancher has disclosed opinions relevant to the calculation of damages owed by each of Silanskas, Wilhite, *and Hedrick*, including a breakdown of expenditures on the Project, which would be relevant in both proceedings. Forensic psychiatrist Regan Gill’s opinions regarding the emotional distress suffered by Bicknell are relevant to the intentional infliction of emotional distress claim against Silanskas and Wilhite, damages on all the claims against them, *and* to the unjust enrichment claim against Hedrick, because the opinions bear on whether it would be contrary to good conscience for Hedrick to retain the benefit that came to him at Bicknell’s expense.

And it is not just the witnesses who would be inconvenienced. The Court and its staff would have to hear the same evidence and witnesses in two separate trials. “Such duplication of evidence necessarily runs afoul of the Court’s interest in judicial economy, and weighs against bifurcation.” *U.S. CFTC*, 2007 WL 666588, at *3. Further, if the Court agrees that a jury trial is required on the unjust enrichment claim, then two separate juries must be empaneled to resolve many of the same issues, putting an unnecessary strain on an already heavily-utilized jury pool in this District. A second trial could also “create a risk of inconsistent verdicts as to [D]efendants’ liability” relating to their scheme. *Blagg*, 2012 WL 90439, at *2. “[T]he inefficiencies of bifurcation would abound.” *Scott*, 795 F. Supp. 3d at 1356. Any limited—though unlikely—benefit to Hedrick is greatly outweighed by the burden bifurcation would place on the Court, Bicknell, and others.

**C. A single trial does not risk undue prejudice or jury confusion.**

According to Hedrick, the "most compelling ground" for his motion "is the avoidance of prejudice and jury confusion." Dkt. No. 198 at 6. He contends his "alleged wrong is retaining compensation paid for his work" and that he would suffer from "transference of guilt" when the jury hears evidence of the fraud committed by Silanskas and Wilhite. *Id.* Of course, this argument would be moot if, as Hedrick contends is required, the unjust enrichment claim is decided by the Court instead of a jury. But even if the same jury decides all claims in this case (which it should), Hedrick's argument fails.

First, as shown above, Hedrick's alleged wrong goes far beyond "retaining compensation paid for his work." Bicknell alleges that Hedrick participated in the scheme to defraud Bicknell. Hedrick knew Bicknell was receiving the Todays Word messages relating to the Project. He knew the messages encouraged Bicknell to trust Silanskas, Wilhite, *and Hedrick* and that they were driving Bicknell's decisions. Hedrick even assisted in crafting some of the messages. And Hedrick—like his compatriots—provided Bicknell with false information throughout the Project. Bicknell has alleged from the outset that Hedrick was part of the conspiracy and will establish that fact at trial, both to support the claims against Silanskas and Wilhite and to prove the unjust enrichment claim against all three Defendants. Thus, the predicate for Hedrick's argument is false.

Moreover, the authorities Hedrick cites for his argument on jury confusion do not support it. Hedrick asserts that "[c]ourts in this District recognize the danger that, in a joint trial, a jury will 'become confused about [one defendant's] role' and improperly attribute a co-defendant's conduct to a defendant whose alleged involvement is far narrower." (Dkt. No. 198 at 6.) But in the lone case he cites from this District, *U.S. CFTC*, the court *denied* bifurcation. And the language Hedrick quotes regarding jury confusion is not the court's holding at all. It is an argument from *the defendant's brief* that the court *rejected*. 2007 WL 666588, at *4. The court held:

> Defendant Martin's "transference of guilt" theory . . . is "speculative and run[s] contrary to the well-founded presumption that jurors follow the court's instructions." The Court can discern no reason why a properly instructed jury could not distinguish between the evidence being offered against Defendant Bradley alone and the evidence being offered against Defendants Bradley and Martin together, in spite of the fact that there may be substantially more of the former than the latter. Instead, given the Court's conclusion that cautionary instructions can mitigate any prejudice likely to be incurred by Defendant Martin as a result of his being tried together with Defendant Bradley, the Court finds that the danger of unfair prejudice does not outweigh the countervailing interest of judicial efficiency.

*Id.* at *5 (quoting *King v. McKillop*, 112 F. Supp. 2d 1214, 1221 (D. Colo. 2000)) (alteration in original). As in *U.S. CFTC*, Hedrick's theory here is speculative and runs contrary to the well-founded presumption that jurors follow the court's instructions. Under Federal Rule of Evidence 105, if any evidence is admissible against Silanskas or Wilhite but not against Hedrick, the Court "on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly." Fed. R. Evid. 105. A verdict form that asks the jury to decide the unjust enrichment claim as to each Defendant separately adequately addresses the risk. *See McKinney*, 2023 WL 2947546, at *3 ("[S]uch prejudice can be mitigated through the jury instructions and verdict form." (alteration in original)); *Blagg*, 2012 WL 90439, at *2 (finding that "jury instructions will be sufficient to eliminate the risk of jury confusion"); *Scott*, 795 F. Supp. 3d at 1357 (noting that "courts routinely handle such sympathy-based concerns through a clear set of jury instructions at trial, even in the most complex of cases" (cleaned up)). And any potential for undue prejudice to Hedrick would be further "mitigated by the fact that the parties will be distinctly separate before the jury, with separate attorneys and separate argument." *Bianca v. Indep. Sch. Dist. No. 1 of Tulsa Cnty.*, No. 11-cv-636-JHP-FHM, 2012 WL 2327832, at *2 (N.D. Okla. June 19, 2012).

Instead, "[g]iven the not-so-easy separability of the issues, bifurcating the trial on the claims would then be … more prejudicial to Plaintiff[.]" *Scott*, 795 F. Supp. 3d at 1355. Bicknell

would have to bear the expense of two trials, and a second trial could require considerable delay because the Court has only scheduled one trial in this action. *See Telewizja*, 2005 WL 2405797, at *5 (holding that the possibility of obtaining "some economy in expenses and resources if separate trials were ordered does not outweigh the prejudice to [the plaintiff] from the considerable delay that will likely result if the Court orders two separate trials with two separate juries-especially in light of the Court's trial calendar"). An unnecessary delay in resolving this matter would be particularly prejudicial to Bicknell, who is 94 years old and in poor health.

## CONCLUSION

All the claims in this case should be tried in a single trial. The Court should deny Hedrick's motion.

Respectfully submitted,

/s/ *Michael S. Nadel*

Amelia A. Fogleman
Joseph W. Lang
GABLEGOTWALS
110 N. Elgin Avenue, Suite 200
Tulsa, Oklahoma 74120
(918) 595-4800

Michael S. Nadel
Sagar K. Ravi
Jennifer B. Routh
Rachel M. Peltzer
Theresa M. Babendreier
MCDERMOTT WILL & SCHULTE LLP
500 North Capitol Street, N.W.
Washington, D.C. 20001
(202) 756-8000

Attorneys for Plaintiff O. Gene Bicknell

**CERTIFICATE OF SERVICE**

I certify that on October 14, 2026, I caused a copy of the foregoing to be filed using the CM/ECF system, thereby providing notice to all counsel of record and pro se parties, including:

Counsel for Defendant Stephen D. Hedrick:

Lysbeth George, Esq.
Jennifer Jackson, Esq.
Liz George and Associates
8101 S. Walker, Suite F
Oklahoma City, Oklahoma 73139

Counsel for Defendant Larry K. Wilhite:

J. Christopher Davis, Esq.
Deric McClellan, Esq.
Crowe & Dunlevy, P.C.
222 N. Detroit Avenue, Suite 600
Tulsa, Oklahoma 74120

Evan G.E. Vincent, Esq.
Galen Thorp, Esq.
Crowe & Dunlevy, P.C.
Braniff Building
324 North Robinson Avenue, Suite 100
Oklahoma City, Oklahoma 73102

Defendant Richard M. Silanskas, Jr.:

Richard M. Silanskas, Jr.
1338 Peace in the Valley Road
Blue Eye, Missouri 65611

/s/ *Michael S. Nadel*
Michael S. Nadel